WIRT ADAMS, STATE REVENUE AGENT, *v.* COLONIAL AND UNITED STATES MORTGAGE COMPANY.

### TWO CASES.

1. TAXATION. *Loans by nonresidents. Business situs. Mortgages.*

   Loans of money by a nonresident of the state who has no business location or agent here, made on applications sent to the lender or his agent out of the state, are not taxable in this state, although negotiations for the loans are made here and they are secured by mortgages on lands here.

2. SAME. *Code* 1892, § 3757.

   Code 1892, § 3757, providing for the assessment and taxation of money loaned applies only to resident lenders of money and such nonresident lenders as have a place of business or be temporarily located in this state or whose property has a situs here.

3. SAME.

   Legislation suggested by which loans by nonresidents may be taxed.

One case, from the circuit court of, second district, Coahoma county.

HON. SAMUEL C. COOK, Judge.

The other, from the chancery court of Copiah county.

HON. HENRY C. CONN, Chancellor.

Adams, State Revenue Agent, appellant in both cases, was plaintiff in the Coahoma county suit in the court below, and complainant in the Copiah county suit; the mortgage company, appellee, was defendant in both cases.

The two cases were heard in the supreme court together.

The Coahoma case is an attachment suit brought in the circuit court of that county, by appellant against appellee, to recover

taxes for several past years on notes and mortgages belonging to appellee, as "solvent credits," and it was tried before the judge, a jury having been waived, on the following agreed statement of facts:

"The defendant is a foreign corporation organized under the laws of Great Britain, and has its domicile at Hull, England; the trustee in all of the trust deeds is a resident of Hull, England; defendant has an agency in Memphis, Tenn., but has no office or place of business in Mississippi. J. A. Glover, an attorney at Clarksdale, Miss., has been for years advertising that he was prepared to make loans, and that a considerable proportion of the loans made by defendant to borrowers in Coahoma county, and secured by deeds of trust on lands in that county, were made upon applications in writing which came to defendant's office in Memphis, Tenn., through said Glover, on forms furnished him by defendant, in which the lands offered as security were described; these forms could be obtained by any one who desired to make use of them, and some of said loans now in force in Coahoma county were made to the borrower upon applications which came from other attorneys or the borrowers direct; upon receiving the applications the lands are inspected by an inspector employed by defendant in Memphis for that purpose; if, upon the inspector's report, it is decided to make the loan, the applicant is notified that if, upon investigation, his title is good, the loan will be made; the applicant is requested to furnish an abstract of his title, and, if this is satisfactory, deeds are prepared by defendant in Memphis, Tenn., and forwarded to the applicant for execution, with notice that when they are executed, and the trust deed recorded, and the papers returned to defendant's office in Memphis, the amount of the loan will be paid, and the money is paid by sending the borrower a check or paying a sight draft attached to the papers when returned; when the trust deeds are received by defendant's agent in Memphis

they are· at once sent to defendant's home office in Hull, England, where they remain until they mature, when they are returned to the agent of defendant at Memphis, Tenn., for collection.    The notes are all signed and dated in Coahoma county, Miss., and are made payable in Memphis, Tenn.    The value of the lands upon which security is taken always exceeds the amount of money loaned.    When the loan is consummated, defendant pays Glover, or the party from whom the application came, a commission upon the amount loaned."

From a judgment for defendant, plaintiff appealed to the supreme court.

The Copiah case is an appeal from a decree of the chancery court of that county sustaining a demurrer to complainant's bill against the same defendant.    The bill alleges that defendant is a nonresident corporation, domiciled at Hull, England, and having an office and place of business in both New York and Memphis, Tenn.; that defendant owns real estate and personal property in Copiah county, Miss., which escaped taxation, to wit: the interest of defendant as mortgagee and *cestui que* trust in certain deeds of trust and mortgages set out in the bill; that defendant was properly and duly assessed; that the evidences of debts secured by· said trust deeds and mortgages are in the possession of ·defendant at its domicile beyond the state, and that they represent money loaned to said several parties by defendant through its agent at Memphis, Tenn.    The bill then states the amount of taxes claimed to be due.    Defendant demurred, setting up the following grounds: 1. The facts stated in the bill show no liability of defendant for either the state or county taxes.    2. The defendant has no interest in the mortgages or trust deeds which are the subject of taxation.    3. To sustain the assessment would deprive defendant of its property without due process of law, and in violation of article 14 of the amendments of the constitution of the United States.    The court sustained the demurrer, and dismissed the bill.    Complainant appealed to the supreme court.

*R. N. Miller,* for appellant.*

The question presented in the Copiah case is not whether the debts secured by these mortgages belonging to a nonresident are taxable, but the question here presented is whether or not the interest or estate of the mortgagee in the land in this state is taxable. The case of *Wirt Adams, Revenue Agent,* v. *Colonial & U. S. Mortgage Co., Limited,* from Coahoma county, now pending in this court, presents the question of whether the debts are taxable because of the peculiar features of the mortgages, and because they were contracted for appellee by its agent in this state.

The Copiah case presents a wholly different question: (1) Whether this estate of the mortgagee is property, separate and independent of any other interest in the land mortgaged. (2) If so, is its situs in Mississippi with the land, and therefore taxable? By sections 3755 and 3757 of the code of Mississippi of 1892, all property in this state is subject or liable to taxation, except the specific property enumerated as exempt in said section 3744. If I can demonstrate that this estate of the mortgagee is property, and that its situs is with the land in Mississippi, then I take it that I have made out my case.

The fact that the man or corporation who owns lands in Mississippi, or an interest or estate in lands in Mississippi, which is taxable, is a nonresident, makes not one particle of difference, because the situs of the land is in Mississippi, regardless of the domicile of the owner, and the land or the estate in the land must pay the taxes. For the purpose of taxation, therefore, is the estate of the mortgagee property? In the case of *State* v. *Smith,* 68 Miss., 79, 8 South., 294, this court held that a debt secured by a mortgage in this state followed the domicile of the holder, a nonresident, and was not subject to taxation here, because the evidence of the debt, following the domicile of the holder, was beyond the jurisdiction of our taxing law. I have no quarrel with that decision. It

---

* The briefs of counsel in this case are published in full by order of the court.

has no sort of application in this case, because, I repeat, we are not seeking to tax the debt; but we are seeking to tax the mortgagee's estate in the land mortgaged, through the security, the situs of which abides in the land where the mortgage is recorded. It is not a question of situs, because no one would dispute that, if this estate of the mortgagee in the land is property, then its situs must be where the land is. This estate does not, like the debt, follow the residence of the owner.

Returning, now, to the main proposition: Is the estate of the mortgagee in the land property? "Because of the fact that a mortgage is regarded as of a dual character, a conveyance of an estate in land and a security for a debt, bearing one character in a court of law and another in a court of equity, a mortgage at the present day, in the absence of statutes providing otherwise, vests the legal title to the mortgaged property in the mortgagee, at any rate after condition broken." 20 Am. & Eng. Enc. Law, p. 900; Code Miss., 1892, sec. 2449. The mortgagee has at least an equitable estate, if not a legal estate, in the land; and it must be property, because it may be sold under execution. It is liable for debts. *Leigh* v. *Harrison,* 69 Miss., 923; 11 South., 604; 18 L. R. A., 49.

"For most purposes the interest of a mortgagee in the property mortgaged is looked upon as a chattel interest only, and upon his death his interest in the property passes to his representative, and not to his heirs. But the personal representative does not take it in his own right, and simply holds it in the fiduciary capacity, and in trust for the heir, who is in equity, in the absence of creditors, entitled to it. His interest, however, is considered real, in that it enables him to maintain ejectment for the possession of the land mortgaged, notwithstanding that in every other point of view it is personal property." 20 Am. & Eng. Enc. Law, p. 974; 3 Pom. Eq. Jur., p. 1187, note; *Harmon* v. *Short,* 8 Smedes, & M., 433; *Hill* v. *Robertson,* 24 Miss., 368; *Buckley* v. *Daley,* 45 Miss., 338,

345; *Carpenter* v. *Bowen,* 42 Miss., 28, 49; *Buck* v. *Raines,* 52 Miss., 271. "The interest of the mortgagee [in land] is a chattel, and is devolved on the holder of the note, passed on delivery or indorsement." *Clark* v. *Wilson,* 53 Miss., 129.

"The above authorities will show that sometimes it is called real estate, and sometimes a chattel. The equity of redemption is a distinct estate from that vested in the mortgagee before or after condition broken. It is devisable and alienable, like other interests in real property." *Clark* v. *Reyburn,* 8 Wall, 322, 19 L. Ed., 354; *Beverly* v. *Barnitz,* 55 Kan., 482, 42 Pac., 725, 31 L. R. A., 74, 49 Am. St. Rep., 269. "For the purposes of taxation, the mortgagee's interest in the land is realty, and may be taxed where the lands lie, regardless of the domicile of the owner." *Savings and Loan Society* v. *Multnomah County,* 169 U. S., 429, 18 Sup. Ct., 392, 42 L. Ed., 803; *New Orleans* v. *Stemple,* 175 U. S., 321, 20 Sup. Ct., 110, 44 L. Ed., 174; *Walker* v. *Jack,* 88 Fed., 578, 31 C. C. A., 462; *Colbert* v. *Board,* 60 Miss., 142.

In the case of *Edward M. Allen, Treasurer,* v. *National State Bank,* reported in 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517, the supreme court of Maryland held as follows:

"The questions to be considered are, first, whether section 146a of Acts 1896, p. 160, ch. 120 (Poe's Supp. Code Pub. Gen. Laws, p. 551, art. 81, sec. 146a), so far as it taxes the interest covenanted to be paid in mortgages on land in Maryland held or owned by nonresident mortgagees, citizens of other states, is a valid and constitutional exercise of the taxing power of the Legislature; and, second, if the Legislature has such power, did it intend to exercise it by the passing of the act above mentioned? No question is made as to the amount of tax levied in this case, but the question is whether any such tax can be levied. The provisions of section 146a are as follows: 'All mortgagees or assignees holding mortgages of record in

this state shall annually pay a tax of eight per centum upon the gross amount of interest covenanted to be paid each year to said mortgagee, to be collected by the proper authorities as other taxes for county and state purposes in the several counties, . . . . and the tax hereby levied shall each year be paid in the county . . . . where the greater portion of the property covered by the mortgage is located.' In the first place, this court has already held that the act in question is valid in respect to mortgagees residing in this state; the lands mortgaged being also located here. In the case of *Faust* v. *Building Association,* 84 Md., 186, 35 Atl., 890, we held 'that the power of the legislature to tax mortgage debts has been frequently exercised, and it has been recognized by the decisions of this court. . . . . If any doubts,' continues the court, 'have hitherto existed, they are set at rest by sec. 51, art. 3, of the constitution, as amended by Acts 1890, p. 458, ch. 426.' The amendment is in these words: 'But the general assembly may by law provide for the taxation of mortgages upon property in this state and the debts secured thereby in the county or city where such property is situated.' The method of carrying out this constitutional provision was also approved in the same case. 'The tax levied,' said Bryan, J., delivering the opinion of the court, 'cannot be considered as excessive or unjust. Eight per centum on the interest, even if it should be 6 per centum, would be 48 cents on the $100 of principal. . . . . The adjustment shows on its face a studious effort to discharge a public duty in a spirit of justice or moderation. The assessment and levy were made in the legitimate exercise of the powers of the Legislature in relation to subjects confined to its discretion, and it is our duty to declare them valid.' It is true that the tax is levied upon the interest, and not upon the mortgage debt; but this method which we approved in Faust's Cause, *supra,* is only another method of taxing the latter, and the rate of taxation is determined by the percentage of the interest. Having, therefore,

determined that the act in question is valid so far as it applies
to resident mortgagees holding mortgages on land in Maryland,
is it valid as to nonresident mortgagees owning mortgages of
the same character? Upon general principles, it would seem
that there ought to be no difficulty in answering this question
in the affirmative. It is one of the axioms of the law of taxa-
tion that the state has the right to tax all persons and all prop-
erties of every kind within its jurisdiction. *McCulloch* v.
*Maryland,* 4 Wheat., 316, 4 L. Ed., 579. But it is contended
that the interest of a mortgagee is in the nature of a chose in
action, and that according to the well-settled law, here and else-
where, such property must be assessed and taxed to the owner
where he has his domicile. The case of *Appeal Tax Court* v.
*Patterson,* 50 Md., 366, is cited to sustain this proposition. It
is there said that property of a nonresident cannot be taxed,
unless it has an actual situs within this state, so as to be under
the protection of its laws. But what has been actually decided
in that case was that a resident of Maryland, owning stock,
bonds, and other certificate of public debt, issued by other sov-
ereign states or by municipalities created by them, which are
exempted by the states issuing them, may be taxed in this state.
Conceding, for the present, that the interest of the mortgagee
is in the nature of a chose in action, the general rule that its
situs for taxation is the residence of the owner is a mere fiction
of law, and 'yields whenever it is necessary, for the purpose of
justice, that the actual situs of the thing should be examined,
and whenever the legislative intent is manifest, that this legal
fiction should not operate.' *Green* v. *Van Buskirk,* 7 Wall.,
139, 19 L. Ed., 109; *Bristol* v. *Washington Co.,* 177 U. S.,
141, 20 Sup. Ct., 585, 44 L. Ed., 701; *Hervey* v. *Rhode Island
Works,* 93 U. S., 664, 23 L. Ed., 1003; *St. Louis* v. *Ferry Co.,*
11 Wall., 428, 20 L. Ed., 192. In *Patterson's Case, supra,* it
is said: 'The general rule, *"Mobilia sequuntur personam,"*
relied on by appellant, is far from being of universal applica-

tion, and has been qualified by numerous exceptions in cases of taxation.' The act we are considering expressly provides that the interest of the mortgagee shall be taxed, not where he resides, but in the county or city where the mortgaged land is located. So that the case of *Latrobe* v. *Baltimore City,* 19 Md., 13, and that of *Baltimore City* v. *Stirling,* 29 Md., 49, cited to maintain the proposition that a mortgage debt is taxable at the residence of the creditor, are not applicable here. And so there are many instances that can be cited where the express provisions of the tax laws take the place of this fiction. Thus, in this and many other states, shares of the capital stock and corporations, which are choses in action, and which are owned by nonresidents, are taxed by express provisions of statutes where the corporation is located, and not where the owner resides. · In the case of *Savings Society* v. *Multnomah Co.,* 169 U. S. 421, 18 Supt. Ct. 392, 42 L. Ed. 803, this very question appears to have been disposed of. Justice Gray, in delivering the opinion of the court, said : 'By the law of Oregon, as of some other states of the Union, a mortgage of real property does not convey the legal title to the mortgagee, but creates a lien or incumbrance as security for the debt. The right of possession, as well as the legal title, remains in the mortgagor, both before and after conditions broken, until foreclosure. Notwithstanding this, it has been held, both by the Supreme Court of Oregon and by the Circuit Court of the United States for the District of Oregon, that that State has the power to tax mortgages of land there, though owned and held by citizens and residents of other States.' The conclusion reached by the Supreme Court of the United States in the case just cited is that 'although the right which the mortgage transfers in the land covered thereby is not the legal title, but only an equitable interest, and by way of security for the debt, it appears to us to be clear upon principle, and in accordance with the weight of authority, that this interest, like any other interest, legal or equitable, may be

taxed to its owner, whether resident or nonresident, in the State where the land is located, without contravening any provision of the Constitution of the United States.' In meeting the objection here relied on, it is said in *Mumford* v. *Sewall,* 11 Or. 67, 4 Pac. 585, 50 Am. Rep. 462, one of the cases cited by Justice Gray in *Savings Society* v. *Multnomah Co., supra:* 'Concede that the debt accompanies the respondent's person, and is without the jurisdiction of the state; but the security she holds is Oregon security. It cannot be enforced in any other jurisdiction. It is local in Oregon as absolutely as the land it binds. Since the power of the state over the mortgage is as exclusive and complete as over the land mortgaged, the mortgage is subject to taxation by the state, unless there is constitutional limitation to the contrary.'

"It is suggested by the defendant that the decision of the supreme court of the United States, based upon the Oregon statute, has no analogy to the question before us, first, because that statute in express terms 'forbids any taxation of the promissory note or other evidence of debt secured by the mortgage, and with equal distinctness provides for the taxation, as real estate, of the mortgagee's interest in the land;' second, because that state authorizes the amount of the mortgage debt to be deducted from any assessment upon the mortgagor. Nor does our statute, the validity of which is here challenged, tax the evidence of debt secured by the mortgage; for in this case there is none. The thing taxed is the interest, which, as we have said, is as much a part of the mortgage as the debt itself. Nor do we think that the fact that our statute does not in express terms tax the mortgagee's interest in the real estate as land affects its validity; for personal property, as the Supreme court of the United States 'has declared again and again, may be taxed at the place where the property is situated, even if the owner is neither a citizen nor resident.' *Savings Society* v. *Multnomah Co., supra.* The situs of the mortgagee's interest

for the purpose of taxation is fixed in our act in Harford county, where the land is located. Again, the fact that our statute makes no provision for deducting the mortgage debt from any assessment upon the mortgagor is rather an objection to its justice and fairness than to its validity. Statutes taxing the land to the mortgagor and the mortgage debts to the mortgagee have been frequently declared valid in Maryland and in other states. *Appeal Tax Court of Baltimore City* v. *Rice,* 50 Md., 319; *Baltimore City* v. *Canton Co., 63* Md., 237; *The Tax Cases,* 12 Gill & J., 117; *Allen* v. *County Commissioners Harford County,* 74 Md. 294, 22 Atl. 398; *Augusta Bank* v. *Augusta,* 36 Me. 259; *Ala. Ins. Co. v. Lott,* 54 Ala. 499; *Goldgart* v. *People,* 106 Ill. 25. The case of *Bristol* v. *Washington County,* 177 U. S. 139 Sup. Ct. 585, 44 L. Ed. 701, also fully sustains and affirms *Savings Society* v. *Multnomah County, supra.* The attempt to distinguish *Bristol* v. *Washington County* from the case at bar is not successful; for in our opinion the provisions of our act fix the situs of the mortgage here taxed as clearly and as fully as did the act of the parties there, by placing the mortgage notes in the hand of the agent for collection and reloaning. In delivering the opinion of the court, Fuller, C. J., said that the withdrawal of the notes from the hands of an agent and the revocation of his power of attorney did not change the situs of the mortgagee's interest for taxation. 'Persons are not permitted,' he said, 'to avail themselves for their own benefit of the laws of a state in the conduct of business within its limits, and then to escape from their due contribution to the public needs through taxation of this sort, whether taken for convenience or by design.'

"(2) We have thus far assumed that the interest of a mortgagee is a chose in action, or something less than an interest in the land. In this state, however, it has long been held that a mortgagee takes something more than a mere lien. Thus, in *Cahoon* v. *Miers,* 67 Md. 576, 11 Atl. 278, Judge Miller, re-

ferring to the opinion of our predecessors in the case of *Evans & Inglehart* v. *Merriken,* 8 Gill & J. 39, said 'that a mortgage does something more than merely create a lien for the debt; that upon its execution the legal estate becomes immediately vested in the mortgagee, and the right of possession follows as a consequence; . . . that the legal estate is defeasible at law upon the payment of the mortgage debt at the time stipulated, but if this is not done it becomes indefeasible at law and only defeasible in equity, . . . . but at law the title all the while is in the mortgagee. That decision,' continues Judge Miller, 'has been acquiesced in and recognized as the law of the state for more than half a century, and we see no good reason for overruling it now.' In commenting upon *Cahoon* v. *Miers,* in *Duval* v. *Becker,* 81 Md. 547, 32 Atl. 308, Chief Justice McSherry said: 'As between the mortgagor and the mortgagee, therefore, the doctrine that the mortgagor is regarded as the real owner does not, and in view of the quality of the estate conveyed by the mortgage cannot, obtain to the extent of permitting the mortgagor by his own act to exempt from the lien and operation of the mortgage any part of the mortgaged property. It will thus be seen that the interest of the mortgagee is treated by the courts of law as real estate only so far as it may be necessary for the protection of the mortgagee and to give him the full benefit of his security.' *Hutchins* v. *King,* 1 Wall. 58, 17 L. Ed. 544. 'But,' as was remarked by Justice Gray in *Savings Society Case, supra,* 'if the law treats the mortgagee's interest in the land as real estate, for his protection, it is not easy to see why the law should forbid it to be treated as real estate for the purpose of taxation.' As we have already seen, our decisions, for his protection, do so treat it, and our act gives a fixed situs in Hartford county, where it was taxed. But in this state the mortgagee at law becomes vested with the legal estate, and therefore he may maintain an action of ejectment. *Ahern* v. *White,* 39 Md. 422,

423.  If this be so, then at law the mortgagor has a title to the interest in the land, and therefore has property in the state subject to taxation.  The tax imposed by the act of 1896 we are considering does not impose the tax on a nonresident, but the money due on the mortgage is taxed.  *Tax Cases,* 12 Gill & J., 117; *Allen* v. *Commissioners of Hartford County, supra; Bank Tax Case,* 2 Wall. 200, 17 L. Ed. 793.  Therefore, whether the interest of a mortgagee be held to be merely a chose in action, or lien, or an interest and estate in the mortgaged land, it would seem to be clear that it is taxable in the state where the land is located.  A different view was expressed in the case of *State Tax,* etc., 15 Wall. 300, 21 L. Ed. 179; but Justice Gray says of that case in the *Savings Society Case, supra:* 'The remarks in the opinion  .  .  .  .  went beyond what was required for the decision of the case, and cannot be reconciled with other decisions of the supreme court of the United States.'

"(3)  The only remaining question to be considered is, assuming that the Legislature has the power, did it intend by Acts 1896, p. 160, c. 120, § 146a, to levy a tax upon the property of nonresident mortgagees?  Certainly nothing can be found in the language of the act to indicate that any exception or exemption was intended.  The language is comprehensive and general, and includes nonresident as well as resident mortgagees.  In the construction of revenue laws it is well settled that every presumption is to be made in favor of the state, and, if freedom of taxation or an exemption is claimed, the burden is on the taxpayer to show clearly that either the one or the other exists.  Inasmuch as we have held that it is in the power of the legislature to tax the interest of nonresident mortgagees, we think it follows, both from general and comprehensive terms of the statute, as well as from the result that would follow if we should hold otherwise; that all mortgages are included; for it is apparent that if we hold that only resident

mortgagees and their resident assigns can be taxed under our present law, the law itself would be rendered nugatory by the assignment of all mortgages to nonresidents."

In the case of *Savings & Loan Society* v. *Multnomah County,* decided by the supreme court of the United States, it was held as follows (Mr. Justice Gray delivering the opinion of the court) :

"This was a bill in equity, filed in the circuit court of the United States for the district of Oregon by the savings and loan society against Multnomah county, a public corporation in the state of Oregon, and one Kelly, the sheriff and *ex officio* tax collector of that county, and a citizen of that state, showing in 1891 and 1892 various persons, all citizens of Oregon, severally made their promissory notes to secure the payment of various sums of money, with interest, to the plaintiff, at its office, in the city of San Francisco and state of California, amounting in all to the sum of $531,000, and to further secure the same debts executed to the plaintiff mortgages of divers parcels of land owned by them in Multnomah county; that the mortgages were duly recorded in the office of the recorder of conveyances of that county; that the notes and mortgages were immediately delivered to the plaintiff, and had ever since been without the state of Oregon, and in the possession of the plaintiff at San Francisco; that afterwards, in accordance with the statute of Oregon of October 26, 1882 (Laws 1882, p. 64), taxes were imposed upon all the taxable property in Multnomah county, including the debts and mortgages aforesaid; that, the taxes upon these debts and mortgages not having been paid, a list thereof was placed in the hands of the sheriff, with a warrant directing him to collect same upon execution, and he advertised for sale all the mortgages aforesaid; and that the statute was in violation of the fourteenth amendment of the constitution of the United States, as depriving the plaintiff of its property without due process of law, and

denying to it the equal protection of the laws.    The bill prayed for an injunction against the sale, and for a decree declaring that the statute was contrary to the provisions of the constitution of the United States, and therefore of no effect, and that all the proceedings before set out were null and void, and for further relief.    The defendant demurred generally, and the court sustained the demurrer and dismissed the bill.    *Savings & Loan Soc.* v. *Multnomah County* (*C. C.*), 60 Fed., 31.    The plaintiff appealed to this court.

"The ground upon which the plaintiff seeks to maintain this suit is that the tax act of the state of Oregon of 1882 (Laws 1882, p. 64), as applied to the mortgages owned and held by plaintiff in California of lands in Oregon, is contrary to the fourteenth amendment of the constitution of the United States, as depriving the plaintiff of its property without due process of law and denying to it the equal protection of the laws.    The statute in question makes the following provisions for the taxation of mortgages:  By section 1 'a mortgage, deed of trust, contract or obligation whereby land or real property, situated in no more than one county in this state, is made security for the payment of a debt, together with such debt, shall, for the purpose of assessment and taxation, be deemed and treated as real property.'    By section 2 'the mortgage, together with such debt, shall be taxed to the owner of such security and debt in the county, city or district in which the land or real property affected by such security is situated,' and may be sold, like other real property, for the payment of taxes thereon.    By section 3 that person is to be deemed the owner who appears to be such on the record of the mortgage, either as the original mortgagee or as the assignee by transfer made in writing upon the margin of the record.    By section 4 no payment on the debt so secured is to be taken into consideration in assessing the tax, unless likewise stated upon the record; and the debt and mortgage are to be assessed for the full amount appearing by the record to be

owing, unless· in the judgment of the assessor the land is not worth so much, in which case they are to be assessed at their real cash value. By sections 5, 6 and 7 it is made the duty of each county clerk to record, on the margin of the record of any mortgage, when requested so to do by the mortgagee or owner of the mortgage, all assignments thereof or payments thereon, and to deliver annually to the assessor abstracts containing the requisite information as to unsatisfied mortgages recorded in this office. By section 8 a debt secured by a mortgage of land in a county of this state 'shall, for the purpose of taxation, be deemed and considered as indebtedness within this state, and the person or persons owing such debt shall be entitled to deduct the same from his or their assessments in the same manner as other indebtedness within the state is deducted.' And by section 9 'no promissory note or other instrument in writing, which is the evidence of a debt that is wholly or partly secured by land or real property situated in no more than one county in this state, shall be taxed for any purpose in this state; but the debt evidenced thereby and' the instrument by which it is secured shall, for the purpose of assessment and taxation, be deemed and considered as land or real property, and together be assessed and taxed as hereinbefore provided.' Laws Or., 1882, pp. 64-67. All these sections are embodied in Hill's Ann. Code Or., secs. 2730, 2735, 2738, 2753, 2756.

"The statute applies only to mortgages of land in not more than one county. By the last clause of section 3 all mortgages 'hereafter executed, whereby land situated in more than one county in this state is made security for the payment of a debt, shall be void.' The mortgages now in question were all made since the statute, and were of land in a single county; and it is not suggested in the bill that there existed any untaxed mortgage of lands in more than one county. The statute in terms provides that 'no promissory note or other instrument in writing, which is the evidence of' the debt secured by the mortgage,

'shall be taxed for any purpose within this state'; but the debts and mortgages 'shall, for the purpose of assessment and taxation, be deemed and treated as land or real property' in the county in which the land is situated, and be there taxed, not beyond their real cash value, to the person appearing of the record to be the owner of the mortgage. The same statute authorizes the amount of the mortgage debt to be deducted from any assessment upon the mortgage, and does not provide for both taxing to the mortgagee the money secured by the mortgage and also taxing to the mortgagor the whole mortgaged property, as did the statutes of other states, the validity of which was affirmed in *Augusta Bank* v. *Augusta,* 36 Me., 255, 259; *Ala. Ins. Co.* v. *Lott,* 54 Ala., 499; *Appeal Tax Court* v. *Rice,* 50 Md., 302, and *Goldgart* v. *People,* 106 Ill., 25. The right to deduct from his assessment any debts due from him within the state is secured as well to the mortgagee as to the mortgagor by a provision of the statute of Oregon of October 25, 1880 (unrepealed by the statute of 1882, and evidently assumed by section 8 of the statute to be in force), by which it shall be the duty of the assessor to deduct the amount of the indebtedness, within the state, or any person assessed from the amount of his or her taxable property.' Laws Or., 1880, p. 52; Hill's Ann. Code Or., sec. 2752.

"Taking all the provisions of the statute into consideration, its clear intent and effect are as follows: The personal obligation of the mortgagor to the mortgagee is not taxed at all. The mortgage and the debt secured thereby are taxed as real estate to the mortgagee, not beyond their real cash value, and only so far as they represent an interest in the real estate mortgaged. The debt is not taxed separately, but only together with the mortgage, and is considered as indebtedness within the state for no other purpose than to enable the mortgagor to deduct the amount thereof from the assessment upon him, in the same manner as other indebtedness within the state is deducted; and

the mortgagee, as well as the mortgagor, is entitled to have deducted from his own assessment the amount of his indebtedness within the state. The result is that nothing is taxed but real estate mortgaged; the interest of the mortgagee therein being taxed to him, and the rest to the mortgagor. There is no double taxation. Nor is any such discrimination made between the mortgagors and mortgagees, or between resident and non-resident mortgagees, as to deny to the latter the equal protection of the laws. No question between the mortgagor and the mortgagee, arising out of the contract between them, in regard to the payment of taxes or otherwise, is presented or can be decided upon this record.

"The case, then, reduces itself to the question whether this tax act, as applied to the mortgages owned by citizens of the other states and in their possession outside of the state of Oregon, deprives them of their property without the due process of law. By the law of Oregon, indeed, as of some other states of the Union, a mortgage of real property does not convey the title to the mortgagee, but creates only a lien or incumbrance as security for the mortgage debt; and the right of possession, as well as the legal title, remains in the mortgagor, both before and after condition broken, until foreclosure. Gen. Laws Or., 1843-1872, p. 177, sec. 323; Hill's Ann. Code Or., sec. 326; *Anderson* v. *Baxter,* 4 Or., 105, 110; *Semple* v. *Bank of British Columbia,* 5 Sawy., 88, Fed. Cas. No. 12659; *Id.,* 5 Sawy., 394, Fed. Cas. No. 12660; *Teal* v. *Walker,* 111 U. S., 242, 4 Sup. Ct., 420, 28 L. Ed., 415; *Sellwood* v. *Gray,* 11 Or., 534, 5 Pac., 196; *Watson* v. *Dundee Mortgage Co.,* 12 Or., 474, 8 Pac., 548; *Thompson* v. *Marshall,* 21 Or., 171, 27 Pac., 957; *Adair* v. *Adair,* 22 Or., 115, 29 Pac., 193. Notwithstanding this, it has been held, both by the supreme court of the state and the circuit court of the United States for the district of Oregon, that the state has the power to tax mortgages, though owned and held by citizens of· other states, of

lands in Oregon. *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462; *Dundee Mortgage Trust Inv. Co.* v. *School District No.* 1 *of Multnomah County,* 10 Sawy., 52, 19 Fed., 359; *Crawford* v. *Linn County,* 11 Or., 482, 5 Pac., 738; *Dundee Mortgage Trust Inv. Co.* v. *Parrish,* 11 Sawy., 92, 24 Fed., 197; *Poppleton* v. *Yamhill County,* 18 Or., 377, 383, 23 Pac., 253, 7 L. R. A., 449; *Savings & Loan Society* v. *Multnomah County (C. C.),* 60 Fed., 31. In *Mumford* v. *Sewall,* Judge Waldo, delivering the opinion of the court, said: 'All subjects, things as well as persons, over which the power of the state extends, may be taxed. A mortgage, as such, is incorporeal property. It may be the subject of taxation. Concede that the debt accompanies the respondent's person and is without the jurisdiction of the state. But the security she holds is Oregon security. It cannot be enforced in any other jurisdiction. It is local in Oregon as absolutely as the land it binds. Since the power of the state over the mortgage is as exclusive and complete as the land mortgaged, the mortgage is subject to taxation by the state, unless there is a constitutional limitation to the contrary.' 11 Or., 68, 69, 4 Pac., 585, 50 Am. Rep., 462. 'In *Mumford* v. *Sewall,*' said Judge Deady, in *Dundee Mortgage Co.* v. *School District,* 'the court held that a mortgage upon real property in this state is taxable by the state, without reference to the domicile of the owner or the situs of the debt or note secured thereby. And this conclusion is accepted by the court as the law of this case. Nor do I wish to be understood as having any doubt about the soundness of the decision. A mortgage upon real property in this state, whether considered as a conveyance of the same, or merely a contract giving him lien thereon for his debt and the power to enforce the payment thereof by the sale of the premises, is a contract affecting real property in the state, and dependent for its existence, maintenance, and enforcement upon the laws and tribunals thereof, and may be taxed here as any other interest in, right to, or

power over land; and the mere fact that the instrument has been sent out of the state for the time being, for the purpose of avoiding taxation thereon or otherwise, is immaterial.' 10 Sawy., 63, 64, 19 Fed., 359.

"The authority of every state to tax all property, real and personal, within its jurisdiction, is unquestionable. *McCulloch* v. *Maryland,* 4 Wheat., 316, 429, 4 L. Ed., 579. Personal property, as the court has declared again and again, may be taxed, either at the domicile of the owner or at the place where the property is situated, even if the owner is neither a citizen nor a resident of the state which imposes the tax. *Tappan* v. *Merchants' Bank,* 19 Wall., 490, 499, 22 L. Ed., 189; *State R. R. Tax Cases,* 92 U. S., 575, 607, 23 L. Ed., 663; *Coe* v. *Town of Errol,* 116 U. S., 517, 524, 6 Sup. Ct., 475, 29 L. Ed., 715; *Pullman Car Co.* v. *Pennsylvania,* 141 U. S., 18, 22, 27, 11 Sup. Ct., 876, 35 L. Ed., 613. The state may tax real estate mortgaged, as it may all other property within its jurisdiction, at its full value. It may do this, either by taxing the whole to the mortgagor, or by taxing to the mortgagee the interest therein represented by the mortgage, and to the mortgagor the remaining interest in the land. And it may, for the purpose of taxation, either treat the mortgage debt as personal property, to be taxed, like other choses in action, to the creditor at his domicile, or treat the mortgagee's interest in the land as real estate, to be taxed to him, like other real property, at its situs. *Firemen's Ins. Co.* v. *Commonwealth,* 137 Mass., 80, 81; *State* v. *Runyon,* 41 N. J. Law, 98, 105; *Darcy* v. *Darcy,* 51 N. J. Law, 140, 145, 16 Atl., 160, 2 L. R. A., 350; *Peeple* v. *Smith,* 88 N. Y., 576, 585; *Common Council* v. *Assessors,* 91 Mich., 78, 92, 51 N. W., 787, 16 L. R. A. 59.

"The plaintiff much relied on the opinion delivered by Justice Field in *Cleveland, Painesville & Ashtabula R. R.* v. *Pennsylvania,* reported under the name of *'Case of State Tax on Foreign-Held Bonds,'* 15 Wall., 300, 323, 21 L. Ed., 179.

It becomes important, therefore, to notice exactly what was there decided. In that case, a railroad company, incorporated both in Ohio and in Pennsylvania, had issued bonds secured by a mortgage of its entire road in both states; and the tax imposed by the state of Pennslyvania, which was held by a majority of this court to be valid, was a tax upon the railroad, or upon the bondholders, solely by reason of their interest in that mortgage. The remarks in the opinion, supported by quotations from opinions of the supreme court of Pennsylvania, that a mortgage, being a mere security for the debt, confers upon the holder of the mortgage no interest in the land, and when held by a nonresident is as much beyond the jurisdiction of the state as the person of the owner, went beyond what was required for the decision of the case, and cannot be reconciled with other decisions of this court and the supreme court of Pennsylvania. The court has always held that a mortgage of real estate, made in good faith by a debtor to secure a private debt, is a conveyance of such an interest in the land as will defeat the priority given to the United States by an act of congress in the distribution of the debtor's estate. *U. S.* v. *Hooe,* 3 Cranch, 73, 2 L. Ed., 370; *Thelusson* v. *Smith,* 2 Wheat,, 396, 426, 4 L. Ed., 271; *Conard* v. *Atlantic Ins. Co.,* 1 Pet., 386, 441, 7 L. Ed., 189. In *Hutchins* v. *King,* 1 Wall., 53, 58, 17 L. Ed. 544, Justice Field, delivering the opinion of the court, said 'that the interest of the mortgagee is now generally treated by the courts of law as real estate only so far as it may be necessary for the protection of the mortgages and to give him the full benefit of his security.' See, also, *Waterman* v. *Mackenzie,* 138 U. S., 252, 258, 11 Sup. Ct., 334, 34 L. Ed., 923. If the law treats the mortgagee's interest in the land as real estate for his protection, it is not easy to see why the law should forbid it to be treated as real estate for the purpose of taxation. The leading quotation in 15 Wall., 323, 21 L. Ed., 179, from the Pennsylvania Reports, is this general statement

of Justice Woodward: 'The mortgagee has no estate in the land, no more than the judgment creditor. Both have liens upon it, and no more than liens.' *Witmer's Appeal,* 45 Pa., 455, 463, 84 Am. Dec., 505. Yet the same judge, three years later, treated it as unquestionable that a mortgage of real estate in Pennsylvania was taxable there, without regard to the domicile of the mortgagee. *Maltby* v. *Reading & Columbia R. R.,* 52 Pa., 140, 147.

"The effect of a mortgage as a conveyance of an interest in real estate in Pennsylvania has been clearly brought out in two judgments delivered by Justice Strong, the one in the supreme court of Pennsylvania and the other in this court. Speaking for the same judges who decided *Witmer's Appeal,* above cited, and in a case decided less than two months previously, reported in the same volume, and directly presenting the question of adjudication, Justice Strong said, of mortgages of real estate: 'They are in form defeasible sales, and in substance grants of specific security, or interest in the land for the purpose of security. Ejectment may be maintained by a mortgagee, or he may hold possession on the footing of ownership, with all its incidents. And though it is often decided to be a security or lien, yet, so far as it is necessary to render it effective as a security, there is always a recognition of the fact that it is a transfer of the title.' *Britton's Appeal,* 45 Pa., 172, 177, 178. It should be remembered that in the courts of the state of Pennsylvania, for want of a court of chancery, an equitable title was held sufficient to sustain an action of ejectment. *Simpson's Lessee* v. *Ammons,* 1 Bin., 175, 2 Am. Dec., 425; *Youngman* v. *Elmira & Williamsport Ry.,* 65 Pa., 278-285, and cases there cited.

"Again, in an action of ejectment, commenced in the circuit court of the United States for the district of Pennsylvania, Justice Strong, delivering the unanimous opinion of this court, said: 'It is true that a mortgage is in substance but a security

for a debt, or an obligation, to which it is collateral.    As between the mortgagor and all others than the mortgagee, it is a lien, a security, and not an estate; but as between the parties to the instrument, or their privies, it is a grant which operates to transmit the legal title to the mortgagee, and leaves the mortgagor only a right to redeem.    Courts of law have always regarded the title to be in the mortgagee until redemption, and bills to redeem are entertained upon the principle that the mortgagee holds for the mortgagor when the debt secured by the mortgage has been paid or tendered.    And such is the law of Pennsylvania.    There, as elsewhere, the mortgagee, after breach of condition, may entertain or maintain ejectment for the land.'    Applying these principles, it was held that one applying under the mortgage, having only an equitable title, could not maintain an action of ejectment against one in possession under the mortgagee, while the mortgage remained in existence, or until there had been a redemption, because an equitable title would not sustain an action of ejectment in the courts of the United States.    *Brobst* v. *Brock,* 10 Wall., 519, 529, 530, 19 L. Ed., 1002.

"In a later case in Pennsylvania, Chief Justice Agnew, upon a full review of the authorities in that case, said: 'Ownership of the debt carries with it that of the mortgage; and its assignment, or succession in event of death, vests the right to the mortgage in the assignees or the personal representative of the deceased owner.    But there is a manifest difference between the debt, which is a mere chose in action, and the land which secures its payment.    Of the former there can be no possession, except that of the writing which evidences the obligation to pay; but of the latter, the land or pledge, there may be.    The debt is intangible; the land, tangible.    The mortgage passes to the mortgagee the title and right of possession, to hold till payment shall be made.'    *Tryon* v. *Munson,* 77 Pa., 250, 262.

"In *Kirtland* v. *Hotchkiss,* 42 Conn., 426, 19 Am. Rep., 546,

affirmed by this court in 100 U. S., 491, 25 L. Ed., 558, the point adjudged was that debts to persons residing in one state might, for the purpose of taxation, be regarded as situated at the domicile of the creditor. But the question whether the mortgage could be taxed there only was not involved in the case, and was not decided by the supreme court of Connecticut or by this court. In many other cases cited by the appellant, there was no statute expressly taxing mortgages at the situs of the land; and, although the opinion in some of them took in a wider range, the only question in judgment in any of them was one of the construction, not of the constitutionality of a statute — of the intention, not the power of the legislature. Such were *Arapahoe County* v. *Cutter,* 3 Colo., 349; *City of Davenport* v. *Miss. & Mo. R. R.,* 12 Iowa, 539; *Latrobe* v. *Baltimore,* 19 Md., 13; *People* v. *Eastman,* 25 Cal., 601; *State* v. *Earl,* 1 Nev., 394; *People* v. *Smith,* 88 N. Y., 576; *Grant* v. *Jones,* 39 Ohio St., 506; *State* v. *Smith,* 68 Miss., 79, 8 South, 294; *Holland* v. *Silver Bow Commissioners,* 15 Mont., 460, 39 Pac., 575, 27 L. R. A., 797.

"The statute of Oregon, the constitutionality of which is now drawn in question, expressly forbids any taxation of the promissory note, or other instrument of writing, which is the evidence of the debt secured by the mortgage, and with equal distinctness provides for the taxation as real estate of the mortgage in the land. Although the right which the mortgage transfers in the land covered thereby is not the legal title, but only an equitable interest and by way of security for the debt, it appears to us to be clear upon principle, and in accordance with the weight of authority, that this interest, like any other interest, legal or equitable, may be taxed to its owner (whether resident or nonresident) in the state where the land is situated, without contravening any proviso of the constitution of the United States."

See *American Refrigerator Transit Co.* v. *Hall,* 174 U. S., 74, 19 Sup. Ct., 599, 43 L. Ed., 899.

"The situs of personal property does not follow the domicile of its owner for purposes of taxation." *City of New Albany* v. *Meekin,* 3 Ind., 481, 56 Am. Dec., 522; Cooley on Taxation, secs. 14, 15; *Witherspoon* v. *Duncan,* 4 Wall., 210, 18 L. Ed., 339; *Tazewell County* v. *Davenport,* 40 Ill., 197. "There is nothing poetical about tax laws. Wherever they find property, except what is devoted to public and charitable uses, they claim a contribution for its protection, without any special respect to the owner or his occupation, and without reflecting much on generosity or courtesy." *Finley* v. *City of Philadelphia,* 32 Pa., 381. "The fiction that personal property follows the owner's domicile yields whenever it is necessary, for the purpose of justice, that the actual situs of the thing be examined." *Green* v. *Van Buskirk,* 7 Wall., 139, 150, 19 L. Ed., 109.

We admit that the authorities from Mississippi, cited *supra* in this brief, show that the interest of the mortgagee or *cestui que* trust is treated by the courts of law as chattel, and is treated as real estate only so far as it may be necessary for the protection of the mortgagee. The question, however, is put at rest that our own courts treat this interest or estate as "property." It can never be denied that I may subject, here in Mississippi, at least in a court of equity, this estate or interest of the mortgagee to the payment of his debts. If a man living in Tennessee, or elsewhere beyond the jurisdiction of Mississippi, has a mortgage on lands in Mississippi, or be indebted to a citizen of this state, certainly it cannot be denied that the citizen can at least call upon a court of equity to subject this interest of the foreign mortgagee to the payment of the debt by sale of his interest in the mortgage. *Serviss* v. *Washtenaw Circuit Judge* (Mich.), 74 N. W., 310, 72 Am. St. Rep., 507. See note to *National Bank* v. *Furtick* (Del.), 69 Am. St. Rep., 119. In none of these Mississippi cases, however — in fact, never in the history of this state — has the question been before presented of whether or not this estate or interest of the nonresident mort-

gagee is to be treated, in favor of the state, as realty, or personalty, for that matter, for the purpose of taxation, and having its situs in this state.    We are, therefore, upon new ground in this question.

'I repeat that if this interest, for the purpose of taxation, is property, its situs must be here where the mortgage is.'    For the reason given by the supreme court of the United States in the case last quoted, in speaking of a foreign mortgage, in *Mumford* v. *Sewall*, 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462: "The security she holds is Oregon security.    It cannot be enforced in any other jurisdiction.    It is local in Oregon as absolutely as the land it binds.    Since the power of the state over the mortgage is as complete as over the land mortgaged, the mortgage is subject to taxation by the state, unless there is constitutional limitation to the contrary."    And, as in the Maryland case above: "Conceding, for the present, that the interest of the mortgage is in the nature of a chose in action, the general rule that its situs for taxation is the residence of the owner is a mere fiction of the law, and yields whenever it is necessary, for the purpose of justice, that the actual situs should be examined. . . . . In *Patterson's Case*, 50 Md., 366, it is said: 'The general rule, "*Mobilia sequuntur personam,*" relied on by the appellant, is far from being of universal application, and has been qualified by the numerous exceptions in cases of taxation.' "    The case of *Savings Society* v. *Multnomah County,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803, and of *Allen* v. *National State Bank,* 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517, with the authorities there cited, we say, answer every proposition and objection of the liability of this property to taxation that could possibly be made by the appeal in this case.    Our state statute, above quoted, subjects all property to taxation.    If this estate is property, whether real or personal, it could not exist or have a situs anywhere on earth than in Mississippi, where it is recorded, and

where the lands conveyed by it lie, and where alone it can be enforced. The demurrer admits the situs is in Mississippi. It is just and right that the foreign creditor, who lends money in Mississippi, and takes securities which he is compelled to call upon our courts to enforce for him, should contribute his share to the public burden. This is bound to be true, whatever we may think of the public policy of exempting from taxation moneys loaned in the state with a view of reducing interest rates. "Taxation is the rule; exemption is the exception." This is the maxim of the law of taxation. No statute exists in this state exempting this class of property. The state taxes "solvent securities" of her own citizens, and why should she not tax the "solvent securities" of nonresidents, which securities are here within the jurisdiction of her taxing laws?

It may be urged that the land is already taxed to the owner—that is, the mortgagor—and this necessarily embraces all interest in it. This latter premise is a pure assumption. Who can say that the mortgagor, in rendering the land for taxation, did not deduct the existing mortgages on it? Again, it would not be double taxation, or, at all events, such double taxation as would be illegal taxation, to tax both, as in the case of taxing the property of corporations and also taxing the shares of the capital stock. All double taxation is not illegal. This court held, in the case of *Fox* v. *Pearl ·River Lumber Co.*, 80 Miss., 1, s. c., 31 South., 583, recently decided, that the separate interest of the timber owner in land might be separately assessed and taxed, and there can be no reason why the interests, respectively, of the mortgagor and mortgagee, should not be separately assessed and taxed. If "property," it ought to be taxed, and is expressly made liable to taxation by the provision of our statutes; and I respectfully submit that, if we have not in the past assessed and collected taxes on this property of the nonresident in our state, this is no good reason why we should not do it now.

It may be urged by appellee's counsel, but for the statute in Oregon and Maryland, that these two cases cited above would not have been so decided; but a careful reading of the two cases will show that the legislative power to pass these statutes is put upon the distinct ground that this interest of the mortgagee in the lands mortgaged, through the security, is a distinct "property." And "it is one of the maxims of the law of taxation that the state has the right to tax all persons and all property of every kind within its jurisdiction." *McCulloch* v. *Maryland,* 4 Wheat., 316, 4 L. Ed., 579. We say sections 3744, 3755 and 3757 of the code of Mississippi of 1892 make it manifest that the legislative intent is that this property shall be taxed here in Mississippi, because by it all property must be taxed. We need no other statute, therefore, than sections 3744, 3755 and 3757, *supra.*

It is conservatively estimated that there is today in the neighborhood of $75,000,000 worth of this class of property in Mississippi on which not one solitary dollar of taxes has ever been paid in this state, or any other state of this Union, or anywhere else in this world. This large proportion of the property of the state, safeguarded and made valuable by the state's constitution and laws, contributes absolutely nothing to the support of the government, without which it would be worthless. This is not right, and justice, fair play, and "equal protection of the laws" demand that it shall pay taxes. It does not lie in the mouth of the appellee to invoke the fourteenth amendment of the constitution of the United States. That question is settled against it by *Savings Society* v. *Multnomah County, supra.*

The importance of this case, I am sure, will excuse me with the court for further trespassing upon its patience in an endeavor to assist in the right solution of the question involved. A review of both sides of this question, and the authorities that may be cited, have reduced the propositions for solution, in my mind, to the following:

(1) There can be no doubt about the power of the legislature to tax the debts due to nonresidents by citizens of this state, in this state, or tax the interests of the nonresident mortgagee in the land conveyed, or to tax both the debt and the interest of the mortgagee together. The power of the legislature to localize these debts and mortgages, and tax them separately or together, cannot be questioned, I take it.

(2) I take it there can be no debate about the right of grantors and mortgagees to localize and fix by contract the situs of this property right, for the purpose of taxation.

(3) Does our scheme of taxation — do our statutes — fix the situs of these debts, or the interest of the mortgagees in the securities, in Mississippi, where they must be enforced, or has this been done by the act of the parties — the owners of these debts and securities — by their own acts?

To answer this question, let us examine our statutes. Section 112 of the constitution of the state of Mississippi provides "that taxation shall be uniform and equal throughout the state." Section 3744, Code 1892, subjects to taxation all "property" in this state, except the specific property enumerated as exempt. Section 3755, Code 1892, in the last paragraph thereof, provides: "And the assessor shall also assess the value of the (property) of all nonresident taxpayers of his county." Section 3757, Code 1892, provides: "Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks or other securities for money, or employed in any kind of trade or business shall be taxable," etc.

I maintain that here is the legislative intent of this state, to tax all property, whether owned by residents or nonresidents. Now, what is "property"? In its broadest sense and its legal sense, it necessarily means anything of value which belongs to a man, and this must include any legal right which he could

assert to anything he owns.    By section 1513 of the code of 1892, "the term 'personal property,' when used in any statute, shall include goods, chattels, effects, evidences of rights of action, and all written instruments by which any pecuniary obligation, or rights, title or instrument in real or personal estate, shall be created, acknowledged, transferred, incurred, defeated, discharged, or diminished."    Section 1514 of the code of 1892 provides: "The term 'property,' when used in any statute, includes 'personal property,' as defined in the last preceding section, and also every estate, interest and right in lands, tenements and hereditaments."    I do not care, therefore, if our supreme court has said, in *Beckett* v. *Dean*, 57 Miss., 232, that "a deed of trust to secure a debt is but a security, an incumbrance, and not an estate, legal or equitable, in the beneficiary," etc.    I admit that this interest of the beneficiary or the mortgagee may not be sold under execution, and, in all controversies between the creditors and such beneficiaries and mortgagees and themselves, that the above decision, and that line of decision, is correct; but I say, for the purpose of taxation, this right of the beneficiary or mortgagee in the security is "property," the situs of which must be here where the lands lie and the mortgages are recorded.    I further maintain that this act of taking the trust deed and mortgages on lands here, and recording them here, must necessarily localize and fix the situs here, and both the debts and the mortgagees, or at all events the interest of the mortgagees in the mortgages, is taxable here, regardless of his domicile.

To recur to our statutes: "All property must be taxed which is in this state.    Property includes evidences and rights of action, and all written instruments by which any right, title or interest or estate is created."    It is immaterial, wholly, whether you call the interest of the mortgagee or beneficiary in a deed of trust on lands here an estate, real or personal, or not, or whether you call it a mere security for the debt.    It cannot be

denied that it is some sort of interest or right in the land, and that this is all that is necessary to subject it to taxation, provided that the interest or right is in Mississippi. Where on earth could this right or interest of the mortgagee or beneficary in the deed of trust have its situs or existence or value, except where the lands which are the subject of the security lie? To ask the question is to answer it. As was said by the supreme court of Oregon in *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462: "Concede that the debt accompanies the respondent's person, and is without the jurisdiction of the state; but the security she holds is Oregon security. It cannot be enforced in any other jurisdiction. It is local in Oregon as absolutely as the land it binds. Since the power of the state over the mortgagee is as exclusive and complete as the land mortgaged, the mortgage is subject to taxation by the state (as an interest or right in the land), unless there is a constitutional limitation to the contrary." This Oregon case, and this express language in the judgment of that court, is confirmed in the case of *Edward M. Allen, Treasurer,* v. *State National Bank, etc.,* 92 Md., 509, 48 Atl. 78, 52 L .R. A., 760, 84 Am. St. Rep., 517, and the case of *Savings & Loan Society* v. *Multnomah County,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803; and on the subject of this Oregon case the supreme court of the United States say, in the case *supra,* " 'In *Mumford* v. *Sewall,'* said Judge Deady, in *Dundee Mortgage Co.* v. *School District,* 'the court held that a mortgage upon real property in this state is taxable by the state, without reference to the domicile of the owner or the situs of the debt or note secured thereby. And this conclusion is accepted by the court as the law of the case. Nor do I wish to be understood as having any doubt about the soundness of the decision. A mortgage on real property in this state, whether considered as a conveyance of the same, or merely as a contract giving him a lien thereon for his debt, and the power to enforce the payment thereof by sale of the prem-

ises, is a contract affecting real property in the state, and dependent for its existence, maintenance, and enforcement on the laws and tribunals thereof, and may be taxed here as any other interest in, right to, or power over land. And the mere fact that the instrument has been sent out of the state for the time being, for the purpose of avoiding taxation thereon or otherwise, is immaterial.' "

Many years ago the right to tax debts due by citizens of the taxing state to citizens of foreign states was denied, on the ground that the evidence of the debt followed the domicile of the creditor, and was beyond the jurisdiction of the laws of the taxing state; but the various courts are beginning to consider, from the fact the right to collect the debt is dependent upon the laws of the taxing state, where the debtor lives, and inas-much as the groundwork of the right to tax is dependent upon the protection afforded by the laws for the enforcement of the debt, that therefore the state has the right, by act of the legislature, to localize the debt and tax it where the debtor lives, rather than where the creditor lives. To support this proposition I cite from the very able brief of my associate, Mr. Scott, the case of *Blackstone* v. *Miller* (reported in the advance sheets of the United States Supreme Court Decisions of March 2, 1903) 23 Sup. Ct., 277, which case involved the construction of the statute of New York subjecting to taxation the transfer of any property that is in the state owned by a decedent who was a nonresident, and it was held that the debt due by the citizens of New York, just a simple debt, due by a firm in New York to such nonresident decedent, was subject to the tax, and I quote from the decision as follows:

"What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes; yet we are, nevertheless, subject to the criminal law, and it affords

one of the motives for our conduct. So, again, what enables any other than the very creditor in proper person to collect the debt? The law of the same place. To test it, suppose that New York should turn back the current of the legislation, and extend to debtors the rule still applied to slander, the 'actio personalis moritur cum persona,' and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain the right of the foreign creditor would be gone. 'Power over the person of the debtor confers jurisdiction, we repeat; and, this being so, we perceive no better reason for denying the right of New York to impose a succession tax on the debts owed by its citizens than upon the tangible chattels found within the state at the time of death. The maxim, *"Mobilia sequuntur personam,"* has no more truth in the one case than in the other. When logic and the policy of the state conflict with a fiction due to historical tradition, the fiction must give way.' "

From the case of reappraisal of the estate of *John F. Houdayer* (N. Y.), 44 N. E., 718, 34 L. R. A., 235, 55 Am. St. Rep., 642, from same brief, I quote as follows:

"While the distribution of the fund belongs to the state where the decedent was domiciled, such distribution cannot be made until the administrator has come into the state to get this fund, possibly after resorting to the court for aid in reducing it to possession. The fund has a situs here, because it is subject to our laws. A reasonable test in all cases, it seems to us, is this: Where the right, whatever it may be, has a money value, and can be owned and transferred, but cannot be enforced or converted into money, against the will of the person owning the right, without coming into the state, it is property within this state for the purpose of a succession tax. Thus the right in question is property, because it is capable of being owned and transferred."

And from the case of *Re Estate of Worthington Romaine*
(N. E.) 27 N. E., 759, 12 L. R. A., 401, I quote from the
same brief as follows:

"Where, however, the money of a nonresident is invested in
this state, as it was by Mr. Romaine in the bond and the mort-
gage in question, and in the deposits made by him in the sav-
ings bank, or where the property of a nonresident is habitually
kept, even for safety, in this state, we think that the statute
applies both in letter and spirit.  Such property is within the
state in every reasonable sense, receives the protection of its
laws, and has every advantage from the government, for the
support of which taxes are laid, that it would have if it be-
longed to the resident.  We think that a fair construction of
the act permits no distinction as to such property based simply
upon the residence of the deceased owner.  We have nothing
to do with the policy of the statute, as our duty is discharged
when we declare its meaning and apply it to the case in hand.
The duty we discharge in this instance by adjudging that suc-
cession to personal property in question lately belonging to
Worthington Romaine, a nonresident intestate, but invested or
habitually kept by him in this state, is taxable under the colat-
eral inheritance act, in so far as it passed to persons not ex-
cepted from its provisions."

I quote from the case in 169 U. S., 421, 18 Sup. Ct., 392,
42 L. Ed., 803, from my original brief.  Speaking of the
interest of the mortgagee under the laws of Pennsylvania, and
its liability to taxation, after the review of the decisions of
Pennsylvania, the supreme court of the United States says:
"The quotation in 15 Wall., 323, 21 L. Ed., 179, from the
Pennsylvania Reports is this general statement of Justice
Woodward:    'The mortgagee has no estate in the land, more
than the judgment creditor.  Both have liens upon it, and no
more than liens.'  *Witmer's Appeal,* 45 Pa., 455-463, 84 Am.
Dec., 505.  Yet the same judge, three years later, treated it

as unquestionable that a mortgage of real estate in Pennsylvania was taxable there, without reference to the domicile of the mortgagee." From the same case, 169 U. S., 421, 18 Sup. Ct., 392 42 L. Ed., 803, I quote as follows: "If the law treats the mortgagee's interest in the land as real estate for his protection, it is not easy to see why the law should forbid it to be treated as real estate for the purpose of taxation."

It is conceded for the counsel of appellant that under the decisions of this court the nature of the interest of the mortgagee is the same in Mississippi as in Pennsylvania. To show there is a distinction between the manner in which the courts regard the interest or estate of the mortgagee in the land by the conveyance in all controversies between the mortgagee and his creditors, and the manner in which it regards this interest or estate for the purpose of taxation, I quote from my original brief and the cases cited there: "Conceding, for the present, the interest of the mortgagee is in the nature of a chose in action, the general rule that its situs for taxation is the residence of the owner is a mere fiction of the law, and yields whenever it is necessary for the purpose of justice, the actual situs of the thing should be examined, and whenever the legislative intent is manifested this legal fiction should not operate." From my original brief, from the same case, I quote as follows: "In *Patterson's Case, supra,* it is said: 'The general rule, *"Mobilia sequuntur personam,"* relied upon by the appellant, is far from being of universal application, and has been qualified by numerous exceptions in cases of taxation.' The act we are considering expressly provides that the interest of the mortgage shall be taxed, not where he resides, but in the county or city where the mortgaged land is located. By the law of Oregon, as of some other states of the Union, a mortgage of real property does not convey the legal title to the mortgagee, but creates a lien or incumbrance as security for the debt, and the right of posession, as well as the legal title, remains in the

mortgagor, both before and after condition broken, until fore-closure. Notwithstanding this, it is held, both in the supreme court of Oregon and by the circuit court of the United States for the district of Oregon, that the state has the power to tax mortgagees of the land there, though owned and held by citizens and residents of other states." And I quote, further, from the opinion of Chief Justice Fuller in *Bristol v. Washington County,* 177 U. S., 139, 20 Sup. Ct., 585, 44 L. Ed., 701: "Persons are not permitted," he said, "to avail themselves for their own benefit of the laws of the state in the conduct of business within its limits, and then to escape their due contribution to the public needs through action of this sort, whether taken for convenience or by design."

I say, therefore, that it seems perfectly conclusive that the state of Mississippi has not only the power to tax these debts and these mortgagees here in this state, without regard to the domicile of the owner, but that she has done so for two reasons: First, because this right or interest of the mortgagee in the lands is by our statutes "property," and property which can alone have existence where the lands lie in the state; and, second, because the parties taking these securities on the land lying there, where alone these securities have value and protection by our laws, have by their own act localized and fixed the situs, not only of the mortgages, but of the debts as well, in Mississippi. It is just possible that the decision of this court in *State* v. *Smith,* 68 Miss., 79, 8 South., 294, is antiquated, obsolete, and ought to be overruled. It is in conflict with all the modern decisions cited by appellant in this case. That rule—that is, that the debt follows the domicile of the owner—is true yet, and sound in every other controversy, than for the purpose of taxation. But for this purpose — that is, for taxation — I repeat, inasmuch as the right to tax and the obligation to pay taxes is dependent upon the protection to the right or property sought to be taxed, and inasmuch as these debts are

dependent for their enforcement, and therefore for their whole
value, upon the laws of Mississippi, there is no sound reason
why they may not be treated as property in this state, and taxed
here.    But whether correct in this or not, the case of *State.* v.
*Smith* has no application whatever to the case at bar from
Copiah county, which seeks alone to tax the interest or estate
of the mortgagee in the land.    For this interest, "if property,"
does not follow the owner, and can have no other situs than in
Mississippi, where the mortgage is recorded and where the
lands lie.

*D. A. Scott,* for appellant.

The state of Mississippi has the power to tax the nonresident
grantees and owners of the notes secured by the trust deeds
sought to be taxed in this action.    This question will be dis-
cussed in its various phases, and we will consider: (1) The
inherent power of a sovereign state to tax any and all property
it can bring under its power; (2) the particular right of the
state of Mississippi to tax this character of property of non-
resident debtors by virtue of the statutes of Mississippi and the
law as announced by the court of last resort in that state; and
(3) the right of the state to levy a tax, in this particular in-
stance, as shown by the contract itself.

(1) The inherent power of a sovereign state to tax any and
all property it can bring under its power.

Chief Justice Marshall, in the case of *McCulloch* v. *State of
Maryland,* 4 Wheat., 428, 4 L. Ed., 579, said: "The power of
taxing the people and their property is essential to the very
existence of government, and may be legitimately exercised on
the objects to which it is applicable, to the utmost extent to
which the government may choose to carry it."    Justice Mar-
shall, in this case, referred to the state of Maryland.    As will
be remembered in that historical case, the question involved
was whether or not the state of Maryland could tax a national

bank.   The supreme court decided that it could not tax a
national bank, for the sole and only reason that it was a part
of the methods of the United States government for raising
revenue.   Relative to the power of the state to tax everything
save the general government, the court said: "The power of
the state may be exercised upon every object brought within
its jurisdiction.   It is obvious that it is an incident of sover-
eignty, and is coextensive with that to which it is incident.   All
subjects over which the sovereign power extends are objects of
taxation. . . . . The sovereignty of the state extends to
everything which exists by its own authority, or is introduced
by its permission.   If we measure the power of taxation resid-
ing in a state by the extent of sovereignty which the people of a
single state possess and can confer on its government, we have
an intelligible standard, applicable to every case to which the
power may be applied." *McCulloch* v. *Maryland,* 4 Wheat.,
428, 4 L. Ed., 579.

So it seems we have the best of authority for the position that
whatever property can be found in the state of Mississippi is
subject to the power of the state to tax it.   "Taxation is emphat-
ically an instance where the state has the right to throw aside all
fiction and look at things as they are.   Accordingly, states fre-
quently tax tangible personalty of nonresidents where actually
situate within their borders."   This is quoted from the recent
and well-considered work of Mr. R. C. Minor on the Conflict
of Laws or Private International Laws.

Another view of the right of the state of Mississippi to tax
this property after it has been located by its officers is the prin-
ciple of taxation as to the correlative of protection.   The prop-
erty described in the deed of trust in this record is located in
the state of Mississippi.   The grantees in that deed have an
equitable interest in real property in the state of Mississippi.
If the state of Mississippi should withdraw its protection from
that contract and from that property, the interest of the

grantees would at once become valueless. In sustaining this doctrine, Chief Justice Woodward, of the supreme court of Pennsylvania, in the case of *Maltby* v. *Reading & Columbia R. Co.*, 52 Pa., 140, said, in an opinion of the court which we will contend is authority upon almost every phase of this question, as follows: "The principle of taxation as the correlative of protection, perfectly just in itself, is as applicable to a non-resident as to the resident owner, because civil government is essential to give value to any form of property, without regard to the ownership, and taxation is indispensable to civil government. . . . . It is apparent that the intrinsic and ultimate value of the loan as an investment rests on state authority — *i. e.,* the state which made it property and preserves it as property. Then it would seem that this sort of property, more than any other, ought to contribute to the support of the state government. And I suppose it is upon this ground that the legislature discriminates between corporation loans and private debts as objects of taxation. The artificial debtor, itself a creature of the legislative power, and all its functions derived from legislative grant, is so dependent upon the government, it lives and moves and has its being so entirely by favor of the government, that not only what it owns, but what it owes, is thought fit to be taxed." In speaking further upon this inherent right of the state, the same learned court said in the same case, at page 145: "The will of the legislature is final. The power of taxation, which is the corner-stone of the government, is lodged exclusively with the legislature, and depends wholly on the discretion of that department. . . . . So long as they confine themselves to that which is the nature of a tax law, these powers are subject to no judicial review. They are responsible only to the people." *Maltby* v. *Reading & Columbia R. Co.*, 52 Pa., 140, *et seq.*

In speaking of the case of *Maltby* v. *Reading & Columbia R. Co.*, 52 Pa., 140, from which the above quotation was taken,

Justice Field, of the United States supreme court, in the case of *State Tax on Foreign-Held Bonds*, 82 U. S., 300, 21 L. Ed., 179, said, at page 321, 82 U. S., 21 L. Ed., 179: "The case of *Maltby* v. *Reading & Columbia R. Co.*, decided by the supreme court of Pennsylvania, is relied upon by counsel in support of the tax question. The decision in that case goes to the full extent claimed, and holds that bonds of a corporation held by nonresidents are taxable in that state; but it is evident, from a perusal of the opinion of the court, that the decision proceeded upon the idea that the bond of the nonresident was itself property in the state, because secured by a mortgage on property there. It is undoubtedly true," said the court, "that the legislature of Pennsylvania cannot impose a personal tax upon the citizens of another state, but the constant practice is to tax property within our jurisdiction which belongs to nonresidents." And again: "There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised; but when the property is within our jurisdiction, and enjoys the protection of our state government, it is justly taxable, and it is of no moment that the owner, who is required to pay the tax, resides elsewhere. There is no doubt of the correctness of these views."

In this case just cited, in which Justice Field approved the holding of the Pennsylvania supreme court, he went on to decide that a certain bond held by a nonresident was not taxable under a certain statute passed by the state of Pennsylvania; but his decision proceeded upon the grounds that a tax imposed in that way would impair the contract between the railroad company and the foreign holder. In so far as the Pennsylvania case of *Maltby* v. *Reading & Columbia R. Co.* is applicable to the question before this court in Mississippi, it has been approved by the supreme court; for in this case the property upon which the deed of trust was given is located in the state of Mississippi, hence the right of the state of Mississippi to tax.

All the property in the state of Mississippi, of whatever nature or kind, in whatever form or place, is subject to taxation, unless exempt by law.    Ann. Code Miss., 1892, sec. 3744.

(2) The particular right of the state of Mississippi to tax this character of property of nonresident creditors by virtue of the statutes of Mississippi and the law as announced by the courts of last resort in that state and throughout the country.

As a matter of reason, or justice, and of policy, it is difficult to perceive why the state of Mississippi should not tax a foreign corporation for lending money, taking mortgages, and transacting the same character of business for which it does impose a tax upon citizens of that state and all domestic corporations. Why should a foreign corporation be allowed that advantage over a domestic corporation?   Recurring again to that well-considered case, *Maltby* v. *Reading & Columbia R. Co.,* we wish to point out the fact that this was a suit in which a tax upon bonds issued by the defendant railroad company was imposed on nonresident holders, and the court sustained the tax as legal. "As to the nonresidence of the holder of the loan, it is undoubtedly true that the legislature of Pennsylvania cannot impose a personal tax upon the citizens of another state; but the constant practice is to tax property within our jurisdiction which belongs to nonresidents. . . . . There must be jurisdiction over either the person or the property of the owner, else the power cannot be exercised; but where the property is within our jurisdiction, and enjoys the protection of our state government, it is justly taxable, and it is of no moment that the owner, who is required to pay the tax, lives elsewhere.   The duties of sovereign and subjects are reciprocal, and any person who is protected by government in his person or property may be compelled to pay for that protection."    *Maltby* v. *Reading & Columbia R. Co.,* 52 Pa., 146; *Hood's Estate,* 21 Pa., 114; *West Chester School Dist.* v. *Darlington,* 38 Pa., 157.

In discussing the subject of nonresident creditors and their

liability to taxation, it will not be attempted to deny that certain courts have held that the situs of a debt is the domicile of its owner; but we believe that the court of appeals of New York was right, and should control this question, when it said: "The fiction or maxim, '*Mobilia sequuntur personam*,' is by no means of universal application. Like other fiction, it has its special uses. It may be resorted to when convenience and justice so require. In other circumstances, the truth, and not the fiction, affords, as it plainly ought to afford, the rule of action. The proper use of legal fictions is to prevent injustice. 'No fiction,' says Blackstone, 'shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience which might result from the general rule of law.' So Judge Story, referring to the situs of goods and chattels, observes: 'The general doctrine is not controverted, and although movables are for many purposes to be deemed to have no situs, except that of the domicile of the owner, yet, this being but a legal fiction, it yields whenever it is necessary, for the purpose of justice, that the actual situs of the thing should be examined.' He adds, quite pertinently, I think, to the present question: 'A nation within whose territory any personal property is actually situated has an entire dominion over it, while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there.' I can think of no more just and appropriate exercise of the sovereignty and jurisdiction of a state or nation over property situated within it and protected by its laws than to compel it to contribute toward the maintenance of the government and law." *Hoyt* v. *Com'rs of Taxes,* 23 N. Y., 224.

It would seem that, when Blackstone and Story are at one as to the situs of personal property and how it would be regarded, a court will not be far wrong which follows such distinguished leadership. So much for the oft-quoted and misused doctrine of the situs of personal property for the purpose of evading

taxation. The case from which the quotation above is taken decided that the personal property of a nonresident, which is situated in the state of New York, is liable to taxation. *Hoyt* v. *Com'rs of Taxes,* 23 N. Y., 224. Personal property may be taxed where it is permanently located. *Mills* v. *Thornton,* 26 Ill., 300, 79 Am. Dec., 377.

In the case of *Com.* v. *Gaines,* 80 Ky., 489, a tax levy was made upon barrels of whisky in a warehouse situated in Kentucky, which had been sold to a nonresident, but which remained in the warehouse. The court said: "Whether the whisky listed by the county court belonged to residents or nonresidents, its worth or value on the 10th of January, 1880, was subject to taxation under the equalization laws, and there is hardly any room for any sound argument on the proposition, as '*sic lex scripta est.*' The relative rights and equalities which may exist between the owner and the possessor of the whisky cannot affect the power of the state to authorize its assessment to either of them, as the legislature may deem most prudent and apt to result in securing taxes therefrom."

In the same line of thought a Michigan court held: "A mortgage of land so far partakes of the character of realty that it is competent for the legislature to provide that the mortgage of a nonresident mortgagee shall be taxed where the land is situated." *Common Council* v. *Board of Assessors,* 91 Mich., 78, 51 N. W., 787, 16 L. R. A., 59.

The state can tax all that is within its bounds, or which receives protection from its laws, unless exempt by the constitution of the United States or of the state itself. *Easton Bridge* v. *Northampton County,* 9 Pa., 418. The money of a foreign creditor, loaned to a citizen of this state, can be taxed at the residence of the debtor. *Pittsburg, Etc., R. Co.* v. *Com.,* 66 Pa., 73, 5 Am. Rep., 344. This case is based on the case of *Maltby* v. *Reading, Etc., R. Co., supra.* A tax upon bonds and mortgages and mortgages and contracts is properly assessed in

the town where the mortgagee resides.    *Redfield* v. *Genesee County,* 1 Clarke Ch., 43.

In the case of *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462, the court, in discussing the right of the state of Oregon to tax a nonresident mortgagee, or, more properly, a mortgage held by a nonresident, said: "All subjects and things, as well as persons, over which the power of a state extends, may be taxed. 'The sovereignty of the state extends to everything which exists by its own authority or is introduced by its permission.'    Marshall, C. J., in *McCulloch* v. *State,* 4 Wheat., 428, 4 L. Ed., 579.    'A mortgage, as such, is incorporeal property.    It may be the subject of taxation; for the objects and sources of taxation are in general bounded only by the jurisdiction or territorial limits of the state, and extend to and embrace all privileges and rights, property, or franchises not exempted in the organic law.'    Sneed, J., in *Harrison* v. *Willis,* 7 Heisk., 35, 19 Am. Rep., 604.    'Concede that the debt accompanies the respondent's person and is without the jurisdiction of the state. But the security she holds is Oregon security.    It cannot be enforced in any other jurisdiction.    It is local in Oregon absolutely as the land which it binds.'    The question is wholly one of power, and since the power of the state over the mortgage is as exclusive and as complete as over the land mortgaged, the mortgage is subject to taxation by the state, unless there is a constitutional limitation to the contrary."

It may or may not be urged before this court that this tax would impair the obligation of the contract.. There can be no merit in any such argument, and we will discuss it only by referring to the very pertinent remark made by the case we have just been examining, *Mumford* v. *Sewall,* 11 Or., 69, 4 Pac., 585, 50 Am. Rep., 462: "If an act taxing mortgages impairs the obligation of the contract, it impairs such obligation in every case of mortgagee, irrespective of the residence of the parties to it."    If a tax by the state of Mississippi would impair

the contract, similar taxes made within the state of Mississippi would impair the contract of every mortgage, trust deed, or other evidences of indebtedness which Mississippi has the undoubted right to tax. Resting absolutely upon the authority above stated in regard to the impairments of contracts, we will leave this part of the subject, as we consider the reasoning unanswerable.

.Returning to the question of the right of the state to tax a nonresident creditor, in accumulating authorities, we will call the court's attention to and ask its consideration of *Buck* v. *Miller, Treasurer of Tippecanoe County,* 147 Ind., 589, 45 N. E., 647, 47 N. E., 8, 37 L. R. A., 384, 62 Am. St. Rep., 436. In that case the court said, in regard to this fiction of the situs of personal property: "The situs of such personal property for the purpose of taxation does not always or necessarily follow the domicile of the owner. . . . . If, therefore, the personal property is used in this state, it will be assessed here, even though the owner may reside elsewhere; and this must be true of credits and moneys, as well as other forms of personal property. . . . . If he lived here and did business in the state, having with him his money, stocks, bonds, notes, and mortgages as the capital and means of doing such business, then it would be immaterial whether he might claim citizenship in some other state or not. . . . . The law cannot thus be evaded. His property, so used in business and so held in the state, would be subject to taxation." *Buck* v. *Miller,* 147 Ind., 589, 45 N. E., 647, 37 L. R. A., 384, 62 Am. St. Rep., 436. See, also, *Colbert* v. *Leake County,* 60 Miss., 142.

In discussing the propriety and justice of the views stated in the above case, the same court, on a rehearing of the same case, made the following pertinent remark: "The property owner, to be sure, may have certain occasional twinges of conscience that he is sponging off the community, that he is receiving the benefit of the law for the protection of his property, that the

courts are open to him for the collection of his bonds and notes, and the foreclosure of his mortgages; in a word, that all his personal property and business interests are as carefully guarded as if he were a citizen of and domiciled in the state. But all these things are done for him at the expense of his neighbors, the citizens of the state, who pay their taxes regularly from year to year." *Buck* v. *Miller,* 147 Ind., 589, 47 N. E., 8, 37 L. R. A., 384, 62 Am. St. Rep., 436.

Again, the court said, in rather picturesque language, that he might always allege, as he had done now, "that he was a citizen of and domiciled in another state, then his personal property, subject to taxation, like the youth's gold under the rainbow, will always be a little further off, and so escape taxation altogether." *Buck* v. *Miller,* 147 Ind., 589, 47 N. E., 8, 37 L. R. A., 384, 62 Am. St. Rep., 436.

A Nebraska court, holding the same doctrine of taxing property where found, whether of a nonresident creditor, says: "The power of the legislature to separate, for the purpose of taxation, the situs of personal property, whether of a taxable nature or in the form of choses in action, from the domicile of the owner, is unquestioned, and if any such property in any form is within its jurisdiction it may tax it." *Finch* v. *York County,* 19 Neb., 52, 26 N. W., 589, 56 Am. Rep., 741. The Nebraska case cited in support of its doctrine *Griffith* v. *Carter,* 8 Kan., 565, and *Hoyt* v. *Com'rs,* 23 N. Y., 224.

An Illinois court said in regard to this matter: "If the owner be resident in the state, there is jurisdiction over his person and over his credits also, which in legal contemplation, in the absence of anything showing that they have a situs elsewhere, accompany him. If the owner is absent, but the credits are in fact here, in the hands of an agent for collection, they have a situs here for the purpose of taxation, and there is jurisdiction over the thing." *Goldgart* v. *People,* 106 Ill., 25.

The only collection that is contemplated by law is the collec-

tion which it can enforce, and the only mode of enforcing a collection of this debt is not only actually in the courts of the state of Mississippi, but also by an express stipulation in the trust deed itself it is so provided.

There is another view to take of this case, which it would seem would inferentially give the right of taxation to the state of Mississippi. If a nonresident creditor, owning mortgages and holding notes secured by deeds of trust and other evidences of indebtedness, should die at his foreign domicile, his estate in Mississippi would be administered by an ancillary administrator, appointed and residing in Mississippi; and according to the laws of that jurisdiction property in the hands of such administrator in Mississippi could undoubtedly be taxed, although belonging to the estate of a foreigner. Should the corporation owning such property go into the hands of a receiver, an ancillary receiver in the state of Mississippi would be appointed, and all property in such ancillary receiver's hands would be taxed by the state of Mississippi. Minor, Conflict of Laws, sec. 105; *Reynolds* v. *Stockton,* 140 U. S., 254, 257, 11 Sup. Ct., 773, 35 L. Ed., 464; *Rockwell* v. *Bradshaw,* 67 Conn., 9, 34 Atl., 758.

So far we have seen and established by the weight of authority from the highest courts in any jurisdictions, first, that the state can tax anything within its jurisdiction and property which it protects; secondly, that it can tax this character of property, although the owners thereof are nonresidents of the state. Now it is our purpose to show that the state of Mississippi has taxed this character of property, and has sustained by its own decisions its position.

Section 3757, Ann. Code Miss. 1892, provides as follows: "Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks or other securities for

money, or employed in any kind of trade or business, shall be taxable for the same in the county in which such person shall reside, or have his place of business, or be temporarily located at the time of the assessment," etc.    The corporation lending money on the instrument in question was temporarily located, by and through its agents, where the loan was negotiated and the instrument executed.    This is shown by the instrument itself.    There must have been an agent resident here.    A loan cannot negotiate and consummate itself.    This instrument is signed, sealed, and executed in the state of Mississippi.    The agent of the grantees must have been here at its delivery, at the time the money was turned over to the grantors, and under the preceding section can be and is taxed.

The supreme court of Mississippi, in *Bank of U. S.* v. *State of Mississippi,* 12 Smedes & M., 458, said: "The object of this law appears to have been to impose a tax upon all property and all money loaned in this state, with certain exceptions, without any express reference to the residence of the owner.    The terms employed are general, and there seems to be no reason to presume a discrimination in favor of nonresidents.    Those who have property in the state look to the government for its security, and for means to enforce contracts in regard to it.    What the state thus protects and regulates, it has the right to tax.    This power has its foundation in society itself.    It is regulated by all for the benefit of all."    This doctrine was sustained in another Mississippi case, viz.: *Coulson* v. *Harris,* 43 Miss., 728, and numerous cases cited therein.

As has been stated and reiterated, courts have sustained taxation upon notes, where the paper evidences of the indebtedness happened to be, regardless of the locality of the creditor's residence.    *Redmond* v. *Com'rs,* 87 N. C., 122; *Wilcox* v. *Ellis,* 14 Kan., 588, 19 Am. Rep., 107; *Poppleton* v. *Yamhill County,* 8 Or., 337.

It may be urged that this property is liable to taxation at the

residence of the creditor. This is immaterial. Double taxation can only spring from the act of one municipality and sovereign power. An owner of property has no right to dictate to the state of Mississippi when, how, and where it shall tax property found in its jurisdiction or protected by its laws. It is a well-established doctrine that a state in which a foreign corporation does business may levy a tax on the capital stock, even though all of such stock is held by nonresidents. *Com.* v. *Gloucester Ferry Co.,* 98 Pa., 105. Thus, shares of stock in a corporation are usually taxable at the domicile of the owner, not of the corporation. *Bradley* v. *Bauder,* 36 Ohio St., 28, 38 Am. Rep., 547; *Nashville* v. *Thomas,* 5 Cold., 600; *Worth* v. *Ash County,* 90 N. C., 409. But the right of the state of the corporation's domicile also to levy a tax upon the same stock is admitted. *Tappan* v. *Bank,* 19 Wall., 490, 22 L. Ed., 189; *Faxton* v. *McCosh,* 12 Iowa, 527; *American Coal Co.* v. *Allegany Co.,* 59 Md., 185.

Another phase of the question of exemption from taxation of a foreign creditor or of a domestic is this: That all such exemptions must be affirmatively shown; otherwise, it will be assumed that the legislature intended they should be taxed. The legislative intent must be expressed in clear, unambiguous terms; and it is the province of this defendant to show that Mississippi has positively exempted this property from taxation. *Railroad Co.* v. *Thomas,* 65 Miss., 553, 5 South., 108; *Ice Co.* v. *City of Greenville,* 69 Miss., 86, 10 South., 574. And, further, the language of the statutes of taxation must be construed favorably to the state, and exemptions not clearly given or existing by necessary inference cannot be allowed. *State* v. *Simmons,* 70 Miss., 485, 12 South., 477.

(3) The right of the state of Mississippi to levy a tax in this particular instance.

This right is based on secs. 3744 and 3757, which have been quoted. Code Miss., 1880, sec. 497, was almost identically the

same in language as sec. 3757 of the Annotated Code of 1892. In construing that section — *i. e.,* 497 of the code of 1880 — the supreme court of the state of Mississippi, in the case of *State* v. *Smith,* 68 Miss., 79, 8 South., 294, construes the words to mean that money loaned or employed in the state of Mississippi, where the person resides or has his place of business or location, or any agent in the state, is taxable. This was a case in which the supervisors of Madison county placed upon the assessment roll certain loans of the American Freehold Mortgage Company, Limited, the Dundee Mortgage Company, Limited, and several other companies, who are nonresident corporations. The facts showed that the borrowers of these sums had applied to one Powell, an attorney at law in Madison county, for money, and that he acted as the agent of the borrowers and as their broker, for a commission paid by them, and secured loans for the companies above named; but Judge Campbell, speaking for the court, said: "There can be no doubt that where an agency is created in this state for the loaning of money, and the business of loaning money is carried on here, this state being the locality in which the transaction is begun and completed, and the debt acquires a situs here, from the course of dealings between the lenders and the borrowers, through the agency here, it is taxable money sent here from abroad to be loaned, and is undoubtedly subject to taxation."

There can be no doubt of what he meant, and upon this case we might almost rely. The facts in this case now before the court undoubtedly show where the loan was made. The trust deed in the record is a printed instrument. The words describing the location of the property in the state of Mississippi are printed therein. It contains the following clause: "The contract embodied in this conveyance and the notes secured hereby shall be construed according to the laws of the state of Mississippi, where the same is made." If the contract was made in Mississippi, it must have been made by an agent of the com-

pany, and that agent of the company must have had in his possession money sent him from abroad to be loaned, and according to the authority of *State* v. *Smith, supra,* it is undoubtedly subject to taxation. The court in the case also said: "This state being the locality in which the transaction is begun and completed, the debt acquires a situs here, in the course of dealings between the lender and the borrower, through the agency established here, and is taxable." *State* v. *Smith, supra.* The transaction must have been begun where the money was wanted, and must have been completed when the money was paid; and a solemnly attested and executed deed of trust shows that the transaction was consummated by an agent, who subjected the money and the instrument and the interest in the property secured thereby to the jurisdiction of the state of Mississippi.

(4) The clause contained in the written contract, conveying certain property in the state of Mississippi in trust to David Horton, for the use of the Colonial & United States Mortgage Company, Limited, in words following, to wit: "The contract embodied in this conveyance, and the notes secured thereby, shall be construed according to the laws of the state of Mississippi, wherein the same is made"— localizes and domesticates the debt therein secured, and subjects the same to taxation in this state. In determining the obligation of a contract, the maxim, *"Modus et conventio legem vincunt,"* emphatically applies. Minor's Conflict of Laws, sec. 181, p. 441; *Warren* v. *Lynch,* 5 Johns., 239; *Strawbridge* v. *Robinson,* 5 Gilman, 470, 50 Am. Dec., 420. If the parties to the contract desire their obligations to be such as the laws of a particular state would prescribe (whether their own or a foreign state), they may effect this result in several ways. They may express in their contract all the stipulations which would be implied by the laws to which they have reference, and such express stipulations will prevail over the mere implication of any system of law.

"*Modus et conventio legem vincunt.*"   Or they may accomplish
the same result merely by declaring their intention to obligate
themselves in accordance with some particular law.   The pro-
visions of that law then become as much the same express stip-
ulation of the contract as in the former case.   If we go a step
further, and suppose that the parties have made no express
stipulation at all in their contract as to what laws shall control
the obligation incurred by them in respect to matters on which
the contract itself is silent, but that the contemporaneous decla-
rations and all the surrounding circumstances show that they
actually had the law of a particular state in mind when they
entered into the contract, it is equally clear that here, also the
intention of the parties must fix the law which is to determine
the obligations incurred by them.   Minor's Conflict of Laws,
sec. 181, pp. 141, 142; *Jacobs* v. *Credit Lyonnais,* 12 Q. B.
Div., 589, 596.

The clause above referred to localizes and domesticates exec-
utory contracts. *Stevens* v. *Gregg,* 89 Ky., 461, 12 S. W., 775;
*Hibernia Nat. Bank* v. *Lacombe,* 84 N. Y., 367, 38 Am. Rep.,
518; *Baum* v. *Birchall,* 150 Pa., 164, 24 Atl., 620, 30 Am. St.
Rep., 797; *Robinson* v. *Queen,* 87 Tenn., 445, 11 S. W., 38,
3 L. R. A., 214, 10 Am. St. Rep., 690; *Odell* v. *Gray,* 15 Mo.,
337, 55 Am. Dec., 147; *Peck* v. *Mayo,* 14 Vt., 33, 39 Am.
Dec., 205; *Mason* v. *Dousay,* 35 Ill., 424, 85 Am. Dec., 368;
*Shoe & Leather Bank* v. *Wood,* 142 Mass., 563, 8 N. E., 753;
*Grunwald* v. *Freeze* (Cal.), 34 Pac., 73; *Price* v. *Indseth,*
106 U. S., 546; *Sturdivant* v. *Bank,* 60 Fed., 730, 9 C. C. A.,
256.

Having shown by the above cases that the contract was local-
ized, and subject to all the laws of the state of Mississippi, it
necessarily follows that it was subjected to the laws concerning
taxation by the clause heretofore referred to.   The clause
heretofore referred to located the situs of the debt according to
the intention of the contracting parties.   The reasoning is sus-

tained in *Stevens* v. *Gregg* and the cases following, heretofore cited.

We now confidently submit the proposition that the case of *State of Mississippi* v. *Smith, supra,* cannot and will not influence this court in arriving at a decision adverse to the appellant, for the manifest reason that the facts with which the court had to deal in that case are not such as we present for the consideration of the court on this appeal. In this connection, I refer especially to the stipulation in the contract or deed of trust, by which the debt sought to be taxed here is secured, and to which I have called the court's attention in this paragraph of my brief. On the contrary, we insist that said debt, by reason of said contract and agreement, acquired a situs here, from the course of dealings between the lender and the borrower, because of the fact that the said contract or transaction out of which the same arises, was "begun and completed" in this state, and the parties to said contract will not be permitted to dispute or deny this fact, after having admitted it to be a fact in the most solemn manner known to the law; and as the transaction was thus begun and completed in this state, unquestionably the debt thus created is as much liable to taxation as though the whole transaction had taken place or arisen between resident citizens of this state.

If, however, we are mistaken in the view, we then respectfully say that in arriving at a decision in the case of *State* v. *Smith, supra,* the court in some unaccountable way fell into error, and by adhering to the strict letter of fiction, *"Mobilia sequuntur personam,"* the court would kill the spirit of the contract entered into between the parties above mentioned. The fiction in that case, as in this, should be forced to yield to the rule of facts, and the truth and honesty of the transaction in question, and should not be resorted to by the court, because it is not required by justice, and because the circumstances and the truth of the case should now be adopted as the true rule, and

the fiction above mentioned should be discarded.    We therefore.
submit that, if the *Smith Case* stands in the way of a reversal
here, it should be overruled.    It will be noted in the *Smith
Case* that Justice Campbell quotes with approval the opinion of
this court in *Jahier* v. *Rascoe,* 62 Miss., 699, where it was said
"that whether personal property is situated in this state or not
is to be determined by referring to the intent of the owner,
which intent is to be discovered by all the surrounding circum-
stances."    It is shown clearly in the case at bar that it was the
intent of the owner of the money loaned, as well as the bor-
rower, that the property should be and was dealt with as though
it was situated in this state; and to emphasize this intention
on the part of the contracting parties they expressly stipulated
that the contract should in all respects be construed according
to the laws of this state, and to further emphasize the proposi-
tion for which we contend, said parties likewise expressly stip-
ulated and agreed that the said contract shall not only be con-
strued according to the laws of the state, but with equal positive-
ness they assert in their agreement that the transaction from
which it arose was made in the state of Mississippi, and I can-
not conceive how it is possible for the appellee to now escape
the force and effect of the written contract and admission thus
solemnly made by it.

By further reference to the deed of trust securing the debt
which we seek to tax, it will be found that the appellee evidently
apprehended that the evidence of the debt secured by that
instrument would in all probability be taxed in order to protect
itself, and it exacted of the borrower a further agreement in the
face of said deed of trust that, should the indebtedness thereby
secured be subjected to taxation, the borrower should be liable
to the lender or its assigns for the amount thereof, provided that
the sum, when added to the interest agreed upon, should not
exceed the rate of 10 per cent per annum.    It is fair to assume,
perhaps, that the appellee, when making the stipulation to the

effect that the contract should be construed according. to the laws of the state of Mississippi, etc., had the usury laws of other states in view, and intended, by exacting this agreement of the borrower, to take advantage of the liberal interest laws of this state.    They will not, however, be thus permitted to say that their contract is to be controlled in this regard by the laws of the state of Mississippi, and at the same time and in the same breath to say that the said contract shall not, for the purpose of taxation, be controlled by the laws with reference to the latter subject.

Recurring to that stipulation, in that deed of trust above mentioned, wherein and whereby the borrower is required by the lender to pay taxes on the indebtedness therein described and secured, the court will observe that the parties to that contract had in view current, and not back, taxes; and, moreover, by a fair and reasonable construction of the contract, it will be held to embrace taxes on the land described in the said deed of trust, and not an obligation upon the part of the borrower to pay any taxes that the lender may be subjected to as the owner of the indebtedness described therein.    This is clearly manifested by the insertion of the subsequent clause, wherein it is provided that the contract then made between the parties should in all respects be construed according to the law of the state of Mississippi, where the same was made; for, had the appellee at that time contemplated that it was liable for taxes, as we now claim it is, this latter clause would never have been embodied in the contract referred to.

If, however, we are incorrect in this assumption and contention, we insist that the contract in this particular is contrary to public policy, and cannot be enforced by any proceeding in the courts of this state.    "Any provisions in a mortgage, giving the mortgagee advantages not properly belonging to the contract of mortgage, will be held inoperative as against public policy."    15 Am. & Eng. Enc. of Law, p. 2; Story, Equity

Jurisprudence, sec. 1019.    The supreme court of New Jersey, in a very well considered opinion, in which numerous authorities are collated and discussed, say in part: "Whatever tends to injustice or oppression, restraining liberty, etc., when embodied or made the subject of a contract, makes the contract against public policy, and therefore void, and not susceptible of enforcement." *Brooks* v. *Cooper*, 26 Atl., 978, 21 L. R. A., 617, 35 Am. St. Rep., pp. 793-799.

(5) Appellee is liable for and in any event will be required to pay to the board of levee commissioners for the Yazoo-Mississippi Delta the amount claimed to be due said board.

The whole scheme of legislation, from the time the board of levee commissioners for the Yazoo-Mississippi Delta, above mentioned, was created, during the year 1884 (Laws 1884, p. 140, c. 168), up to and including this date, indicates beyond all question that the object and purpose of the lawmaking power in thus creating said levee board, and investing it, not only with power to collect taxes, but the fact that the taxes thus to be collected were in express terms levied and assessed by the legislature on all property of individuals or corporations, of whatsoever character or description, which was either directly or indirectly protected or to be protected by the maintenance of a line of levees along the Mississippi river front in said district, was to require them to bear their just proportion of the burdens incident to the construction and subsequent maintenance of said levees; and in furtherance of this purpose and intent the legislature of 1884, in the act which created said board, expressly levied and assessed an *ad valorem* tax against the property of individuals of 13 mills on the dollar upon the assessed value of all real estate and personal property in the front counties of Tunica, Coahoma, and a part of De Soto, and a similar tax of 9 mills upon all such property in the remaining or back counties, as will be seen by reference to section 13 of said act (*Id.* p. 151, c. 168).    And by section 14 of said act a similar

*ad valorem* tax was levied upon all the property of railroad companies and other corporations in the following language: "Said *ad valorem* tax of 13 mills or 9 mills on the dollar, according to the location, is hereby levied and assessed upon all the property of such railroad companies or other corporations, and the tax collectors of all the counties wherein the same may be situated shall collect said taxes and pay the same over to the treasurer of the levee board." Acts 1884, p. 140, *et seq.;* Const., sec. 237.

It will be noted that, when the legislature in said act dealt with or had reference to the property owned by individuals, it expressly provided in section 13 that the tax therein levied and assessed should only affect or cover the property owned by such individuals, real and personal, in the front counties; but when they came to deal with railroad companies and other corporations they emphatically levied and assessed the tax provided for in section 14 upon all property owned by said corporations, regardless of whether the same be situated in or out of the state of Mississippi. The language used in thus levying and assessing said tax is too clear and unambiguous to call for any refinement, or even construction, unless, perhaps, it may be said that the legislature in thus acting transcended its authority in its effort to thus impose taxes upon corporations, and was, therefore, *ultra vires.* To this I think the answer is that it appears from the whole act that the legislature intended that every character and species of property should be subject to the payment of taxes thereby levied, and that by the use of the language, "all the property of such corporations," the legislature unmistakably intended to tax all property owned by such corporations upon which they had the legal right to levy and impose a tax, and I cannot anticipate that the counsel for appellee will seriously contend that the legislature was not authorized to so levy and impose the tax upon such property as we seek to hold liable in this proceeding.

It may also be insisted that the language used in the first part of said section 14 of the above-mentioned act limits the tax to such property of such corporations as is situated within the limits of said levee district. It is true that at first glance it would appear that such was the case; but, when carefully considered and properly construed, we insist that the legislature, in the first part of section 14, merely intended to take away from the corporations therein enumerated any exemptions or donations of taxes, whether by charter or under special law. It cannot be said that the taxes provided for, levied, and assessed in said section were limited in any language therein used to property which was situated in the levee district. Had that been the intention, the language used would have so limited the levy and assessment of those taxes. That the property that we seek to hold liable for taxation in this case is protected by the construction and maintenance of the levee system above mentioned will not be disputed. In truth and in fact, but for the protection afforded by the levees, the land upon which the appellee holds security would inevitably be subjected to annual inundation, its value destroyed, and the security rendered worthless. It is, therefore, but right and proper, as these people derive all these benefits afforded them by the levees, that they, whether resident or nonresident, should bear their part of the burden.

We earnestly insist, contend, and reiterate that no property was exempt or is exempt from the taxes levied, assessed, and above referred to; and we again call the court's special attention to the fact that, where an exemption from taxation is claimed, it becomes the duty of the party so claiming the same to point out under what law they claim the exemption, and it is likewise their imperative duty to bring themselves by competent and irrefutable proof clearly within the exemption, and this appellee has not done and cannot do so in this instance. Equity, justice, honesty, and fair dealing as with one voice cry

out simultaneously that this appellee should be compelled to
contribute to the support and maintenance of the system of
levees by which it, equally with individuals residing in the
levee district, is protected. As above stated, remove the levees,
and the securities held by these people in enormous amounts
and for collossal sums would at once become valueless, while
with the levees intact they are considered, throughout the
length and breadth of the land, as gilt-edged paper. In sup-
port of the doctrine above announced, namely, the right of legis-
lature to tax that species of property which we seek to reach in
this proceeding, I desire to call the court's attention to the fol-
lowing authorities: *Cole* v. *Town of Errol*, 116 U. S., 517; 25
A. & E. Enc. Law (1st Ed.), p. 134, note 3; *Allen* v. *Leonard*,
16 .Gray, 202; *Mumford* v. *Sewall* (Or.), 4 Pac. 585, 50 Am.
Rep., 462; *State* v. *Branin*, 23 N. J. Law, 484, cited in note
56 Am. Dec., 524; *Battle* v. *Mobile*, 44 Am. Dec., 438.

It appears from the record that the property sought to be
reached for the purposes of taxation in this proceeding has
been assessed by the board of supervisors of Coahoma county
on the personal assessment rolls as property owned by appellant
in the state of Mississippi. This action on the part of legally
constituted authorities created a debt under the laws of our
state against the appellee, in favor of the state, Coahoma coun-
ty, and the levee board, for taxes due on the said property for
the years mentioned in the pleadings. We insist, furthermore,
that the action of the board of supervisors in thus assessing said
property for taxes is the nature of a judgment against the ap-
pellee for the debt thereby created, and, as the appellee did not
see fit to test this proceeding upon the part of the board of su-
pervisors by prosecuting an appeal, as they had the legal right
to do, they are now precluded from denying that they owe the
amount of this debt as claimed by the appellant. Moreover, we
say that after this property was assessed for taxes a lien imme-
diately arose against the property therefor, and thereafter,

when the attachment for this debt was sued out by the appellant, and garnishments served upon the parties residing within the state who were indebted to the appellee, the fiction, *"Mobilia sequuntur personam,"* must inevitably yield to the true facts. In other words, we say that this appellee owes the debt for taxes for the recovery of which this suit is instituted, and the situs of that debt, as well as the property assessed, is in the state of Mississippi, and should and must be made to respond to the demands of the state, county, and levee board, even though we admit for the sake of argument that as an ordinary rule the situs of the debt follows the person of the owner. Under the peculiar circumstances of this case, to wit, our laws creating the lien and making the taxes assessed by the proper authorities a debt against the person on whom the assessment is made, by having the assessment approved and proceeding to collect this debt by attachment and garnishment, we have clearly and unmistakably brought the property sought to be taxed within the jurisdiction of the court, and the situs of the property so assessed is located in the state of Mississippi by the action of the board of supervisors, *supra,* and by reason of the failure of appellee to avail itself of its right under the law to prosecute an appeal from the action of the board of supervisors in so assessing it with taxes on its said property.

Again, referring to the cases cited in my supplemental brief, and more particularly to the case of *Blackstone* v. *Miller,* I want to say to the court that, notwithstanding the fact that the opinion of the court in the latter case hinged upon the construction of a statute of the state of New York opposing taxes upon the transfer of property in that state, yet in our opinion no distinction can be drawn between the statute imposing such tax and the general statute of this state imposing taxes upon all property not expressly exempted from the operation thereof. If, however, I am mistaken in this contention, I still insist that the *Blackstone-Miller Case* is absolutely and positively

decisive of the case at bar, for the reason that the property referred to in that case is in all respects identical with the property with which we have to deal here; and, as the supreme court held distinctly that the debt or debts due by citizens of New York to nonresident citizens of Illinois constituted property in the state of New York, and therefore subject to taxation under its laws, so we say that the debts of solvent credits due by citizens of Mississippi to nonresident appellee likewise constitute property, and, for the reasons given by Justice Holmes in the case *supra,* it is for the purposes of taxation located and domesticated in the state of Mississippi, and, not being expressly exempt, is liable and has been subjected to taxation. It is conceded by the appellee that, if the solvent credits with which they were assessed could be considered or held to be in the state of Mississippi, then the appellee must fail and the reversal of this case follow. This being true, at the risk of being considered tedious and tautologous, I again say that the cases referred to in my supplemental brief are unanswerable on this proposition; for in each of those cases the courts held that a chose in action, although owned by a nonresident descendant at the time of his death, was not only property, but was property within the state of New York, where the debtor resided, and where the creditor, under the law, was required to go in order to enforce the payment of the debt due.

*Tim E. Cooper,* for appellant.

The appellee is a nonresident mortgage company, engaged in the business of lending money in this state. The notes given by the borrowers usually mature in a series of years and are secured by mortgages upon lands situated in this state. The mortgages are printed, and contain a stipulation that the contract of loaning shall be governed by the laws of the state of Mississippi. The question for decision is whether the debt and security are taxable under existing laws in the state.

There are four questions involved in the decision of these appeals. These questions are: *First*, Is it competent for the state to impose taxes upon the property sought to be taxed? Second, Has the state imposed such taxes, directly or by implication? Third, Is the legislative scheme for taxing such property sufficient for the imposition and collection of these taxes? Fourth, Are these proceedings within that scheme?

We concede that we must secure an affirmative answer to each question to entitle appellant to succeed. If, however, we can show that the state has power to impose the tax, that it has imposed it, that the machinery and proceedings provided by statute are sufficient for the imposition and collection of the tax, and that we are proceeding within that scheme, the appellant is entitled to a reversal of the decrees from which these appeals are taken. That the state may tax property of this character we suppose will not be denied by the appellees. The decisions of the state and federal courts are practically uniform in declaring the right of the state to tax. We shall cite and quote from these decisions, not only to show the existence of the power to tax, but also to show the principles upon which the power rests, because these principles will be found important in the consideration of the other questions involved. We concede, of course, that mortgages under our statutes do not possess all the attributes of mortgages at common law. The estate of the mortgagee does not become absolute on breach of the condition. Until breach the mortgagor remains owner, at law as in equity, and upon breach the mortgagee is entitled to the legal estate only so far as to enable him to enforce the security for the collection of the debt secured.

In *Savings & Loan Society* v. *Multnomah Co.,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803, it was expressly held that the power of the state to tax existed, and also that it was immaterial that under the laws of the state the right which the mortgagee had in the land was not the legal estate, but only an

equitable interest by way of security for his debt. In that case the court quotes with approval the language of Judge Waldo in delivering the opinion in *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462, as follows: "All subjects, things as well as persons, over which the power of the state extends, may be taxed. A mortgage, as such, is incorporeal property. It may be the subject of taxation. Concede that the debt accompanies the respondent's person, and is without the jurisdiction of the state. But the security she holds is Oregon security. It cannot be enforced in any other jurisdiction. It is local in Oregon absolutely as the land which it binds. . . . Since the power of the state over the mortgage is as exclusive and complete as over the land mortgaged, the mortgage is subject to taxation by the state, unless there is constitutional limitation to the contrary." The court also quotes from the decision of Judge Deady in *Dundee Mortgage Company* v. *School District,* 10 Sawy., 52, as follows: "In *Mumford* v. *Sewall* the court held that a mortgage upon real property in this state is taxable by the state, without reference to the domicile of the owner or the situs of the note or debt secured thereby. And this conclusion is accepted by this court as the law of the case, nor do I wish to be understood as having any doubt about the soundness of the decision. A mortgage upon real property in this state, whether evidenced as a conveyance of the same, giving the creditor an interest in or right to the same, or merely a contract giving him a lien thereon for his debt, and the power to enforce the payment thereof by sale of the premises, is a contract affecting real property in the state, and dependent for its existence, maintenance, and enforcement upon the laws and tribunals thereof, and may be taxed here as any other interest in, right to, or power over land. And the mere fact that the instrument has been sent out of the state for the time being, for the purpose of avoiding taxation therefor, or otherwise, is immaterial." In *Savings & Loan Society* v. *Multnomah Coun-*

*ty,* the court further said: "This court has always held that a
mortgage of real estate, made in good faith by a debtor to se-
cure a private debt, is a conveyance of such an interest in the
land as will defeat the priority given to the United States by
act of congress in the distribution of the debtor's estate.
*United States v. Hooe,* 3 Cranch, 73, 2 L. Ed., 370; *Thompson
v. Smith,* 2 Wheat., 396; *Conrad v. Insurance Co.,* 1 Pet., 386,
7 L. Ed., 189." In *Hutchins v. King,* 1 Wall., 53, 17 L. Ed.,
544, Mr. Justice Field, delivering the opinion of the court, said
that "the interest of the mortgagee is now generally treated by
the courts of law as real estate only so far as it may be neces-
sary for the protection of the mortgagee and to give him the full
benefit of his security. *Waterman v. McKinsey.* If the law
treats the mortgagee's interest in the land as real estate for his
protection, it is not easy to see why the law should forbid it to
be treated as real estate for the purpose of taxation." That
the taxes may be imposed see, also, *Mallby v. R. R. Co.,* 52 Pa.,
140; *Poppleton v. Yamhill County,* 18 Or., 377, 23 Pac., 253,
7 L. R. A., 449; *Allen v. National Bank* (Md.), 48 Atl., 78,
52 L. R. A., 760, 84 Am. St. Rep. 517; *Faust v. Germain Bldg.
Ass'n,* 84 Md., 186, 35 Atl., 890.

It being thus shown that the state has the power to impose
the tax, the next question is whether it has been imposed. In
determining this question we must look to the legislation of the
state. But by legislation is not meant the action of the legis-
lature, composed of the senate and the house of representatives.
We look both to the legislation by that body and legislation in
the organic law. Provisions declared by either are equally
laws, and equally binding, save in cases of conflict the consti-
tution controls. Now, if we have shown in what has heretofore
been said that the security received by the appellees is proper-
ty localized and situated in this state, it falls within that pro-
vision of our constitution which declares that "taxation shall
be uniform and equal throughout the state. Property shall be

taxed according to its value. . . . Property shall be assessed for taxes under general laws, and by uniform rules, according to its true value." This provision, like all others of the constitution, is mandatory upon the legislative and other departments of government. *Sutherland Contr.,* sec. 79; *Ex parte Wren,* 63 Miss., 512, 56 Am. Rep., 825; *Yazoo & Miss. Valley R. R. Co.* v. *Adams,* 77 Miss., 194, 24 South., 200, 317, 28 South., 956; *Brien* v. *Williamson,* 7 How., 14. In the case of *Brien* v. *Williamson,* the opinion of Chief Justice Sharkey contains a vigorous and succinct presentation of the rule for which we contend. The court will read this case with pleasure, from the first to the last syllable of the opinion. Among other things, Judge Sharkey said: "The words 'shall be,' when used by a lawmaking power, are words of enactment. They declare the law. In legislative acts this undoubtedly would be their proper meaning. When used in the constitution they have the same meaning, unless they be qualified by other words indicating the scope of their meaning." Again Judge Sharkey says that a constitution "is but the frame and shell of a government, containing the general outline, leaving the detail to be filled up in subordination and auxiliary to the essential and fundamental principles thereby established. But it is not on that account the less binding. It is from its very nature and object the supreme law of the land, fixed and unalterable, except by the power that made it. It contains only certain great principles, which are to control in all legislation and extend through the whole body politic. These principles are of themselves laws. Constitutions do not usually profess to insure obedience by prescribing penalties. They merely declare the rule or establish the principle, which, being paramount, makes void whatever is repugnant to it."

Recurring, now, to the constitutional provision which we have quoted, we find a clear declaration that all property within the state shall be taxed, that it shall be uniformly taxed,

and that it shall be taxed according to valuation. We do not contend, of course, that in furtherance of matters of public policy there may not be an exemption from taxation, where its equivalent is supposed by the legislature to be received in another form from the enterprises intended to be fostered in the interest of the public. These exemptions, however, must be uniform in their operation, and such that any member of the body politic, bringing himself within the class, may secure the benefit intended to be conferred. That would be a mere arbitrary exercise of legislative power, and violative of the constitutional provisions, which would declare that all owners of money or choses in action should hold property exempt from taxation. This has been distinctly ruled by this court, and it follows, also, as a necessary corollary from the decision in *Railroad Co. v. Adams*, 77 Miss., 194, 24 South., 200, 317, 28 South., 956. We are not contending that all property in the state must be taxed, but only that, when property of a class is taxed in the hands of one citizen, all property of the same nature, in the hands of others and subject to taxation, must also be taxed.

Assuming, for a moment, that the situs of a debt was at the domicile of the debtor, our proposition is that it would not be competent for the legislature of the state, taxing the property of its citizens to exempt from taxation property of a nonresident of precisely the same class. The rule of law that the situs of a debt is at the domicile of the creditor is a mere fiction, invented by the courts for the purpose of controlling in some degree an intangible right. It is not a rule of private international law at all, and is subject to legislative control. In truth, without legislation, the rule itself is not of uniform operation, and the opposite is sometimes asserted by the courts, and the situs of debt fixed at the domicile of the debtor. The process of attachment by garnishment rests upon the theory that, whereever the debtor may be found, there the property is, and the

court secures jurisdiction over the thing by summoning as a garnishee he who is indebted. Rood on Garnishment, secs. 237-242. The court will observe that in the case under consideration the creditors have done all they could to locate the debt in the state of Mississippi. It is expressly provided that the contract shall be construed under the laws of this state. We find the situs, therefore, of the debt sought to be taxed, localized by the conjoint action of the creditor and the debtor, and by nature of the security itself.

In *Allen* v. *Bank*, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517, the state of Maryland levied a tax of 8 per centum upon the amount of interest annually reserved on all mortgages. There was nothing in the act, so far as appears by the report, discriminating in favor of or against the holders of the mortgage, because of the fact that they were resident or nonresident. There was nothing to indicate a purpose to tax nonresident mortgagees, except the general language of the statute, that "all mortgagees or assignees holding mortgages of record in this state shall annually pay a tax of eight per centum upon the gross amount of interest covenanted to be paid," etc. The supreme court of Maryland held that mortgages owned by nonresidents upon real estate in the state of Maryland were taxable under that statute.

It is no reply to say that to tax the mortgage and the land would be double taxation. In the above noted case the supreme court of Maryland said: "Again, the fact that our statute makes no provision for deducting the mortgage debt from any assessment upon the mortgagor is rather an objection to its justness and fairness, than to its validity. Statutes taxing the land to the mortgagor, and the mortgage debt to the mortgagee, have been frequently declared valid in Maryland and other states." It is not, however, true that the interest of the mortgagee in the land is in any sense covered by an assessment of the land to the owner. The mortgage attaches to and gives

character to the debt which it secures. It localizes it in the state in which the lands are situated. The courts of the domicile of the owner can afford no sort of relief in the enforcement of the security afforded by the mortgage. It is property simply because it is recognized by the laws of this state, and to the extent only of that recognition. The creditor must rely upon the laws of the state in which the mortgaged property is situated for the security and for its enforcement. It is but just that such creditor should contribute to the support of that government which alone can recognize, maintain, and enforce his rights. As was said by Judge Field in *Hutchins* v. *King,* 1 Wall., 53, 17 L. Ed., 544: "If the law treats the mortgagee's interest in the land as real estate for his protection, it is not easy to see why the law should forbid it to be treated as real estate for the purpose of taxation." In *State* v. *Smith,* 68 Miss., 79, 8 South., 294, the attention of the court was directed primarily to the question as to whether the money loaned was taxable under section 497 of the Code of 1880, and it was held that it was not, because the person through whom the money was loaned was not the agent of the lender, and that the statute under consideration only applied where the money was loaned through a resident agent. Neither in the brief of counsel nor in the opinion of the court is there a discussion of the question now presented, nor had the case of *Yazoo & Mississippi Valley R. R. Co.* v. *Adams* then been decided by this court. We understand that decision to affirm, not only that all property in the state must remain subject to taxation, but that it must be subjected to taxation, unless exempted under some general scheme, for the purpose of state policy, in which exemptions all may participate who bring themselves within the class, and, of course, the exemption must not be an arbitrary one, giving protection to one of the class and not to another.

Our proposition is that, if the interest of the appellees here is taxable under our laws, it is because that interest is subject

to the taxing power of the state, and if it is subject to the taxing power of the state, it is because it is property situated in the state, and, being so situated, falls within the control of our constitution. In other words, if the legislature might tax the property, it must tax it, unless lawfully exempt under some scheme which it was competent for the legislature to enact, and that it is not competent for the legislature to tax property of a particular class for its own citizens, and exempt property of the same class held by nonresidents upon the ground only that it was so held. The fundamental and primary inquiry is whether the property sought to be taxed here is property in the state of Mississippi, and that it is such property is recognized in the authorities we have hitherto cited.

Proceeding to the next proposition, it may be thus stated: That all property which may be subjected to taxation must be subjected, unless under some constitutional scheme it is exempt, and that any scheme which taxed property so situated and owned by one class of people, and relieved from taxation the same sort of property owned by another class, would be unconstitutional and void. Looking to the constitution and the legislation of this state, we find that property of the class here involved has been taxed. If appellees are not to be taxed, it must be, and can only be, for the reason that somewhere in some law a constitutional exemption has been declared, or for some reason that the legislative scheme is not broad enough to include the assessment and collection of the tax sought to be recovered in this proceeding.

This brings us to the third inquiry, which is whether the legislative scheme for the taxing of property is sufficient for the imposition and collection of these taxes, and, subordinate to this, to the fourth inquiry, which may be considered with the third, as to whether the present proceedings are within that legislative scheme.

As we have heretofore said, some provisions of the constitu-

tion are self-executing, and need no aid from legislative pro-
visions. Others are dependent for their activity upon the ma-
chinery to be provided by legislative action. If, however, the
constitution is the supreme law, and of its own force nullifies
contradictory legislation, it must follow that it does not depend
upon the will of the legislature to exclude from operation con-
stitutional provisions, where efficient machinery is provided
under which they may act. To illustrate: There can be no
taxation under our constitution, except by assessment and
valuation, and assessment and valuation is not regulated and
provided for by the constitution. The machinery for assess-
ment and valuation must first be provided by legislative action,
and when so provided, the constitution takes possession, and
through the machinery provided by the legislature comes into
action. If no scheme for assessment and valuation was pro-
vided by the legislature, there could be no *ad valorem* tax, be-
cause assessment and valuation is essential; but when a scheme
for assessment and valuation is once provided by law, and re-
mains in force, it is not competent for the legislature, in oppo-
sition to the organic law, to provide that some of the property
liable to taxation shall not be subjected to taxation through
such machinery. The case of *Yazoo & Mississippi Valley Rail-
road Co.* v. *Adams* illustrates the rule for which we contend.
Of course, that railroad could not have been taxed unless there
had been legislation by which the taxes could be assessed and
collected. There was such machinery provided by legislation,
and the legislature then intended to provide that, notwith-
standing the existence of this machinery, the property of the
railroad company should not, by its use, be subjected to taxa-
tion. This court, being of opinion that the exemption provided
for was violative of the constitution, permitted the state to
avail of the machinery to impose and collect the tax, although
the legislative purpose was that it should not be brought into
action as against the railroad corporation.

We do not understand counsel for the appellees to contend that the machinery afforded by our revenue laws is not amply sufficient and fit to bring the property of the appellees within the power of the tax collector. If we are correct in what we have said, it follows (1) that the appellees are the owners of property within the state, and subject to its taxing power; (2) that the constitution of the state intends that all property so situated shall be taxed; (3) that the legislative scheme for taxing the property of the appellees is sufficient for the imposition of the taxes; and (4) that these proceedings are within this scheme. Wherefore it is respectfully submitted that the decree of the court below should be reversed, and the taxes sought to be imposed collected.

*Mayes & Harris,* for appellee.

These two cases, by agreement of counsel and consent of the court, are heard together. They involve exactly the same fundamental question, which is the liability of foreign-held mortgages for taxation in this state; the only difference between them being that the first case was brought by attachment in the circuit court of Coahoma county on assessment of the same as "solvent credits," and was tried before the court on an agreed state of facts, while the second case was brought by a bill in chancery in Copiah county on assessment made on the mortgagee's interest in certain lands, and was decided by the chancellor on a demurrer to the bill. The questions raised are intimately connected, therefore. The bill in chancery proceeds on the idea that the interest of a mortgagee is such an interest in the lands themselves as renders it liable to taxation, while the question in the attachment case in Coahoma county is whether, as "solvent credits," the mortgages have a "business situs" in that county. The statutes on which the claim of the state revenue agent must necessarily be placed are the general laws for the taxation of lands in the one case, and in the other section

3757 of the Code of 1892, which, so far as it is material, runs as follows: "Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money, or employed in any kind of trade or business, shall be taxable for the same in the county in which persons may reside, or have a place of business, or be temporarily located at the time of assessment," etc.

This statute has been in force in Mississippi since 1857, literally, with the insignificant modification which we shall point out. It appears first as article 23 on page 76 of the Code of 1857, and it was in that code a development and modification of Act Feb. 24, 1844, for which see Hutchinson's Code, p. 182. In the Code of 1857 it was put into exactly the form in which it now appears, except that it did not contain the words, "or employed in any kind of trade or business." The statute was brought forward into the Code of 1871 exactly as it appeared in the Code of 1857; and it was brought forward again in the Code of 1880, as section 497, exactly as it appeared in the previous codes, except that the words mentioned above (i. e., "or employed in any kind of trade or business") were inserted; and again it was brought forward into the Code of 1892 as section 3757, exactly as it appeared in 1880. Now the questions presented by these two suits are not open questions in this state. They were fully and exactly presented as they are now, and presented by the same counsel, Mr. Miller, in behalf of the state, so far back as the year 1890. The case of *State v. Smith,* 68 Miss., 79, 8 South., 294, decided at the October term, 1890, and under the Code of 1880, presents the exact underlying question; and the statement of the case and the opinion of the court show that the facts involved were precisely the same in all their details. This court there adjudged that money loaned by nonresidents, although secured by mortgages

located in this state, was not liable to taxation in this state under the conditions set forth. The decision of the case (*State v. Smith*) was rendered, as shown above, at the October term, 1890; and when the Code of 1892 was adopted, section 497 of the Code of 1880, with the interpretation placed upon it by this court, was re-enacted without the change of a word or a letter. And it is well settled by repeated adjudications of this court that where a statute has been construed by this court, and on a new codification of the laws it is re-enacted without material change, the construction theretofore placed on it will be controlling, even although as an original proposition the court might be inclined to hold otherwise. *Davis* v. *Holberg,* 59 Miss., 362; *Shotwell* v. *Covington,* 69 Miss., 735, 12 South., 260; *Wetherbee* v. *Roots,* 72 Miss., 355, 16 South., 902. It is to be observed that when the Code of 1892 was adopted, not only had the court construed the act now again brought into question, and held that mortgage companies were not liable to pay taxes under it, but also the decision quoted above of *Davis* v. *Holberg,* had been made by this court since the year 1882. So that the codifiers and the legislature were both thoroughly informed of the fact that such was the rule of construction announced by the supreme court in this state. Considering both of these propositions, the conclusion is irresistible that, when the legislature re-enacted the statute, it intended that it should have precisely the same effect that it had before.

The foregoing propositions and authorities would seem sufficient to settle these cases without pressing the argument any further. But out of abundance of caution we shall submit a brief argument to the court on the original merits of the controversy, in order to show to the court that the original decision in 68 Miss. was in itself perfectly sound, and was fully in accord with the later adjudications of the state and federal courts, even after a lapse of more than twelve years. The question here is not one of legislative power, but of legislative intent.

It is not a question of what the legislature might have done, if it had seen proper, but of what in fact it has done. This discrimination must be steadily kept in view in this case. The recent literature on this general subject and the recent decisions are quite extensive, and we give references here which will cover the whole field of later discussion. *Boyd* v. *Selma* (Ala.), 16 L. R. A., 729, and note; *Holland* v. *Commissioners* (Mont.), 39 Pac., 575, 27 L. R. A., 797; *Insurance Co.* v. *Assessors* (La.), 25 South., 970, 45 L. R. A., 524, 72 Am. St. Rep., 483; *Savings Soc.* v. *Multnomah County,* 167 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803; *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174; *Western Assur. Co.* v. *Halliday* (C. C.), 110 Fed., 259; *Walker* v. *Jack,* 88 Fed., 576, 31 C. C. A., 462 and notes; *Board* v. *Fidelity Co.* (Ky.), 64 S. W., 470; *Village of Howell* v. *Gordon* (Mich.), 86 N. W., 1042; *Hayward* v. *Board,* 92 Md., 509; *Trust Co.* v. *San Francisco,* 128 Cal., 589, 61 Pac., 178; *Russell* v. *Croy,* 164 Mo., 69, 63 S. W., 849.

*Not Taxable as an Interest in Lands.*— It would seem to be sufficient to say on this topic that neither is it an open question in this state. The point was necessarily involved in *State* v. *Smith,* 68 Miss., 79, 8 South., 294, and was settled by that decision. The court could not have reached the conclusion announced without holding that the mortgagee had no interest in the lands. So, also, the same point was necessarily involved in all of the cases cited above in which it was held that foreign-held mortgages are not taxable. The theory itself seems to be based on an erroneous application of certain cases in a few states, where there are special statutes controlling; and those cases shall be considered later. For many years it has been the settled law in Mississippi, and it is a rule of property, that, whatever may be the law in other states, here a mortgagee has no "interest in the land," either legal or

equitable.  *Buckley* v. *Daley,* 45 Miss., 338;  *Freeman* v. *Cunningham,* 57 Miss., 67;  *Beckett* v. *Dean,* 57 Miss., 232.

In *Buckley* v. *Daley, supra,* decided in 1871, speaking of the effect of an execution sale of the interest of one Woodman, a mortgagee, this court said: "By the adoption of principles long established in chancery, it has become well settled in courts of common law that the mortgagee, until foreclosure, has only a chattel interest; that a mortgage is but a charge upon the land; and that whatever will give the money will carry the estate in the land along with it to every purpose.  The estate in the land is the same thing as the money due upon it.  It will be liable to debts.  It will go to executors.  The assignment of the debt will draw the land after it.  From these properties of the mortgagee's estate, it appears in the strongest manner that it is not in the land, but in the security only. . . . . . If this view of the law be correct, it follows that Buckley acquired no title to or interest in the lots purchased by him under his judgment in the attachment against Woodman.  Woodman had no interest in these lots except a security for his debt.  The debt is the principal, and the land is only an incident."

In *Freeman* v. *Cunningham, supra,* decided in 1879, speaking of our statute (article 12, p. 308, of the Code of 1857; section 2295 of the Code of 1871), this court said again: "It is not the effect of the statute cited to make the mortgagee or grantee the legal owner, after breach of the condition, except so far as is necessary to make the security available.  He may assert title for that purpose, but he has no beneficial ownership.  He may maintain ejectment, but only as a means to the end of enforcing the security.  He may sell in pursuance of a power in the instrument, but he has no title which is vendible under execution against him. . . . . Under it the mortgagor, or grantor in a deed of trust, is to be considered the owner of the legal title, until a sale under the instrument, as if he had not executed it, subject only to the right of the mortgagee, or his

assigns, or the trustee, after breach of the condition; but, even after condition broken, until a sale by virtue of the instrument, as to all others, except the mortgagee or his assigns, or the trustee, the mortgagor or grantor is to be considered the owner of the legal title, unaffected by the incumbrance."

In *Beckett* v. *Dean, supra,* decided in 1879, this court said further: "A deed of trust to secure a debt is but a security, an incumbrance, and not an estate, legal or equitable, in the beneficiary, who may resort to the property conveyed as a means to the end of obtaining payment of the debt secured, but has no interest in the property, or right to it, except as an instrument to the chose in action secured by it."

Here we have, then, repeated announcements by our own supreme court to the effect that the mortgagee has no estate or interest in the land itself, either legal or equitable. The decisions are avowably constructions of our own state statutes about mortgages, and the last of them was made in 1879. The statute so construed was afterwards literally re-enacted in the Code of 1880 as section 1204, and again in the Code of 1892 as section 2449. These re-enactments, of course, and under the rule and authorities cited above, carried the construction placed on the statute by this court. It therefore has long been in this state, as a rule of property, settled in the most binding and conclusive manner, that a mortgagee has nothing of title or interest in the land itself. Nor is the rule so established and announced peculiar to Mississippi. It is the usual rule of our sister states. *Walker* v. *Jack,* 31 C. C. A., 469, note; *Latrobe* v. *Mayor,* 19 Md., 13; *Holland* v. *Commissioners* (Mont.), 39 Pac., 575, 27 L. R. A., 797; *Board* v. *Fidelity Co.* (Ky.), 64 S. W., 470.

The appellant will probably rely on *Savings Society* v. *Multnomah County,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803, as authority for a different view; but it is not such authority. It is true that Mr. Justice Gray, who delivered the opinion of the court, in criticising the case of the *State Tax on Foreign-*

*Held Bonds,* 15 Wall., 300, 21 L. Ed., 179, and in combating certain remarks in the case which he conceived to be inaccurate, himself employs some language not exactly accurate; but the decision itself, and the general tenor of the opinion, are neither of them in conflict with the Mississippi rule as announced by this court.    The *Multnomah County Case* was on a tax assessed on a special statute of Oregon, which provided for the taxation of mortgages and expressly provided that they "shall, for the purpose of assessment and taxation, be deemed and treated as land or real property."    Said Justice Gray: "The result is that nothing is taxed but the real estate mortgaged; the interest of the mortgagee therein being taxed to him, and the rest to the mortgagor.    There is no double taxation."    The question was whether the mortgagee has had such an interest in the land as would allow the legislature to enact a law which should declare that interest to be real estate, and taxable (the total single tax on the land being apportioned between him and the mortgagor), without depriving the mortgagee of his property without due process of law.    The constitutionality of the statute was sustained; but the court expressly bases its opinion on the statute, and in the clearest manner recognizes the fact that, in the absence of a statute declaring a mortgagee's interest to be real estate, the rule announced in *State* v. *Smith,* 68 Miss., 79, 8 South., 294, would be correct.    On page 431, 169 U. S., p. 392, 18 Sup. Ct., 42 L. Ed., 803, the opinion answers the society, appellant, by noting that in the numerous cases cited by it "there was no statute expressly taxing mortgages at the situs of the land."    All that the *Multnomah County Case* really holds is this: That the connection of a mortgagee with the land is a sufficient interest therein, in constitutional law, to enable the legislature by express enactment to tax it as real estate interest; but at the same time the case clearly recognizes the doctrine for which we contend — that in the absence of such statute there is no interest taxable as lands under the general law.    Else, why

such a long and labored opinion? That such is the true con-
struction of the *Multnomah County Case* is further shown by
the manner in which the same court treated the question of
foreign-held mortgages in the later case of *Bristol* v. *Washing-
ton County,* 177 U. S., 133, 20 Sup. Ct., 585, 44 L. Ed., 701.
In this case there is a long and interesting opinion by the Chief
Justice. He does not decide outright, as he manifestly would
have done, had the *Multnomah Case* so held, that mortgages, as
such, are taxable as real estate under the general laws; but, on
the contrary, he plainly recognizes that they are not, and pro-
ceeds to argue that in the case before him they were taxable as
personal property because of their "business situs."

It certainly seems clear that mortgages cannot be taxed at
one and the same time both as realty and personalty. Such is
the indubitable suggestion of the *Multnomah Case.* In this
state, from time immemorial, they have been taxable as solvent
credits; and that is surely their legal status. Even if there
were direct conflict between the *Multnomah Case* and *Beckett* v.
*Dean,* 57 Miss., 232, it would make no difference here. The
question is one, in its nature, of local law. It is a question of
our land titles, and especially of titles under our state statutes;
and on such questions the decisions of the state courts are con-
trolling, and will be followed by the supreme court of the
United States itself. *May* v. *Tenney,* 148 U. S., 60, 13 Sup.
Ct., 491, 37 L. Ed., 368. The authority of the *Multnomah
Case* would extend only to the other question of the validity
under the constitution of the United States of a statute similar
in effect to that of Oregon, which was the real question in that
case. We do not question the power of the legislature to enact
such a statute, but only affirm that it has never done so, and
that, in the absence of such a statute, a tax cannot be assessed
under the general laws taxing lands. We have already noted
the recognition of this proposition necessarily implied in the
*Multnomah Case* and the *Bristol Case* above. See, also,

*Holland* v. *Commissioners* (Mont.), 39 Pac., 575, 27 L. R. A., 797; *Board* v. *Fidelity Co.* (Ky.), 64 S. W., 470; *Walker* v. *Jack,* 31 C. C. A., 469, note; *Latrobe* v. *Mayor,* 19 Md., 13.

An examination of the statutes which in several states have been held to impose a liability to taxation on mortgages as a real estate interest, or one of that nature, will be helpful.

(1) The Oregon statute, applied in *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462, and in various Oregon cases in the state and inferior federal courts, and held to be constitutional in the *Multnomah Case, supra,* is quoted in that case. See 169 U. S., 423, 18 Sup. Ct., 392, 42 L. Ed., 803. It provides expressly that "a mortgage, deed of trust, contract, or other obligation, whereby land and real property situated in no more than one county in this state is made security for the payment of a debt, together with such debt, shall, for the purpose of assessment and taxation, be deemed and treated as land or real property"; and section 2 of the act directed the assessment to be made "in the city, county or district in which the land or real property affected by such security is situated."

(2) The constitution of California, adopted in 1879, by section 4, article 13, provided expressly that "a mortgage, deed of trust, contract or other obligation by which a debt is secured, shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the property affected thereby," and also that "the value of said security shall be assessed and taxed to the owner thereof, in the county, city or district in which the property affected thereby is situated." In *Doland* v. *Mooney,* 72 Cal., 34, 13 Pac., 71, it was held that under a sale of this interest, described as the mortgage interest, for delinquent taxes, the purchaser was entitled to recover the land itself. What an anomaly, and what a revolution in land titles such a holding would amount to in this state! See analysis of this provision and its effect in *Trust Co.* v. *San Francisco,* 128 Cal., 589, 61 Pac., 178.

(3) The third amendment to the constitution of Missouri, adopted in 1900, is taken literally from the constitution of California. The provision was held to be unconstitutional in *Russell* v. *Croy,* 164 Mo., 69, 63 S. W., 849, because of its discrimination against corporation mortgages; and in this case will be found an interesting discussion of the futility of such legislation, which the people of California had practically nullified.

(4) The statute of Michigan, adopted in 1891 (Pub. Acts 1891, p. 280, No. 200, sec. 2), provided expressly that "any real estate mortgage, deed of trust, contract, or other obligation by which a debt is secured, when land within this state is pledged, . . . . shall, for the purpose of assessment and taxation, be deemed and treated as an interest in the land so pledged." While the statute does not in express terms declare that the assessment of the mortgagee's interest must be made in the county where the lands lay, the directions generally were such that it could not be done elsewhere. For discussions of this statute, see *Common Council* v. *Assessors,* 91 Mich., 78, 51 N. W., 787, 16 L. R. A., 59.

(5) The Maryland statute of 1896 was more doubtful in its terms, and needed construction. It provided that "all mortgagees or assignees holding mortgages of record in this state shall annually pay a tax of 8 per centum upon the gross amount of interest covenanted to be paid, . . . . to be collected by the proper authorities as other taxes for county and state purposes in the several counties, . . . . and the tax hereby levied shall each year be paid in the county . . . . where the greater portion of the property covered by the mortgage is located." Laws 1896, p. 160, ch. 120, sec. 146a. In *Allen* v. *Bank,* 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517, it was held that, although the act did not in express terms tax the mortgagee's interest, the language was so fixed as to fix the situs of that interest in the county where the land was

located. Emphasis is also laid on the fact that in Maryland a mortgage is more than a mere lien, but also, immediately on execution, is an estate at law, defeasible only in equity.

(6) In Massachusetts, "chapter 11 of the public statutes provides, in substance, that, when any person has an interest as mortgagee of real estate under a duly recorded mortgage given to secure the payment of a fixed sum, the amount of his interest shall be assessed as real estate in the place where the land lies, and that, for the purpose of taxation, mortgagors and mortgagees shall be deemed joint owners until the mortgagee takes possession." *Insurance Co.* v. *Commonwealth,* 137 Mass., 80.

(7) The New Jersey state statute of 1876 also expressly provided for the taxation of mortgages in the county where the mortgaged lands were situated. *State* v. *Runyon,* 41 N. J. Law, 98. In this case, also, it was said that a mortgage in New Jersey created an estate in the land. See page 104.

It will be seen, therefore, that in all of those statutes there is either an express declaration that a mortgage shall be deemed real estate, or else an express taxation of mortgages, coupled with a direction that the tax shall be assessed and collected in the county or district in which the lands shall lie. But in Mississippi there is no such statute. The general laws in regard to the taxation of lands contain no references to mortgages; and the only statute which does deal with securities is section 3757, which expressly declares that the same shall be taxable, not where the lands affected shall lie, but where the persons holding the same shall reside or have a place of business. Clearly it is by this law left as a matter of taxation of the debt, and not of real estate interest.

*Not Taxable as Personalty Located Here.*— Coming back, now, to the question directly raised in the Coahoma county suit, we repeat that it is settled by *State* v. *Smith,* 68 Miss., 79, 8 South., 294; but we will redeem our promise

to show that the case is fully in accord with the later decisions, state and federal. The only difference between the two cases consists in the fact that in the case at bar it appears that when the loan company accepts a loan offered by the Coahoma county lawyer, who gets up the business, it pays him a commission; but the agreement further expressly recognizes that such lawyer is the attorney of the borrower, for it says that "these securities are signed and acknowledged by the borrower and delivered to his attorney with the understanding that he is to transmit them to the defendants' office at Memphis," etc. However, it would make no difference if such attorney were the agent of the company; for it is well settled that the employment, to such extent only as would be shown in this record, even then, does not give the credits a business situs.

In *Hayward* v. *Board of Review,* 189 Ill., 234, 59 N. E., 601, in a case much like the one at bar, only stronger in facts looking toward the right to tax, it was said, after referring to the rule that credits have their taxable situs at the domicile of the creditor, that "an exception to this rule may exist where the credits are kept in the limits of the state, and employed permanently in business by the owner, though a nonresident, or by an agent of the owner residing in the state and having the physical control of the papers and writings evidencing the credits. But in the case at bar the notes, etc., constituting the credits were not kept in the state. . . . . The fact that the appellant had an agent in this state to receive applications for loans and transact other business, and he came to Illinois at regular intervals, but only temporarily, for the purpose of transacting business with reference to these credits, did not constitute him a resident of the state within the meaning of that word; and in the absence of proof that the notes, mortgages, etc., which evidenced the credits were actually in Illinois, there was no ground on which to declare a separation of the situs of the credits from the domicile of the appellant."

In *Walker* v. *Jack,* 88 Fed., 576, 31 C. C. A., 462, Judge Taft, for the court, said, on page 578, 88 Fed., page 464, 31 C. C. A.: "Intangible personal property, however, like choses in action and credits, can, as a general rule, only be taxed at the residence of the owner. . . . . Certain exceptions to this rule are recognized. . . . . Another exception is where, though the beneficial interest in the debt is owned by a nonresident, yet the money is invested, the debt is contracted, and the investment is controlled by a resident agent of the owner. In such case it is held that the money and the credit in which it is invested are within the state, where the agent receives the money for his principal, and makes the loan, having the authority to collect it and reinvest it. . . . . In such cases the circumstance that the agent has in his possession the evidence of the indebtedness is regarded as of importance." See, also, the elaborate and luminous note to above case in 31 C. C. A., especially subdivision 4, on pages 469-471, as to the general subject, and subdivision 5, on page 472, as to the possession, etc., of an agent. The conclusion of the note is as follows: "But at any rate it is quite clear that, in order that the property of nonresidents should thus become amenable to the revenue laws of the state, it is necessary that the resident agent should have an actual and effective control over it. If the securities are merely in his hands for the purpose of collecting the principal and interest and remitting the same to his employer (*Myers* v. *Seaberger,* 45 Ohio St., 2332, 12 N. E., 796), or if the agent does not occupy the position of a trustee, clothed with discretion and choice as to the investments to be made, but acts merely under the specific directions of the nonresident owner of property, the state does not acquire any jurisdiction for the purposes of taxation (*Boardman* v. *Supervisors,* 85 N. Y., 359). On the same principle, promissory notes and other choses in action placed in the hands of an attorney within the state simply for collection, and municipal bonds placed tempo-

rarily on deposit in a bank in the state merely for safe-keeping, and belonging to a *bona fide* resident of another state, are not subject to taxation.  *Herron* v. *Keeran,* 59 Ind., 472, 26 Am. Rep., 87."

See, also, *Board* v. *Fidelity Trust Co.,* a Kentucky case decided in October, 1901, not yet reported officially, but found in 64 S. W., 470.   And see *Village of Howell* v. *Gordon,* a Michigan case, decided in 1901, not yet officially reported, but to be found in 86 N. W., 1042.   A pamphlet copy is filed in this case as part of this brief.   This is a noteworthy case, when compared with the previous Michigan cases.

In *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174, a resident of Louisiana died, leaving a large estate in money on deposit in New Orleans banks and in notes secured by mortgages on New Orleans lands.   His heirs were minors in New York, and Mary Stemple was their New York guardian.   The decedent's estate had been settled in the proper courts of Louisiana, and the New York guardian had been put in possession of the property.   The Louisiana statute, amongst other pertinent provisions, expressly declared that "all bills receivable, obligations, or credits arising from business done in this state, are hereby declared assessable within this state," etc.   The supreme court, after setting forth carefully the facts (1) that the property in question was clearly property arising from business done in Louisiana, being property of the deceased, a resident of New Orleans; (2) that the same had never been out of the state, but the money was still on deposit in New Orleans banks, and the notes and mortgages were still in New Orleans in the hands of an agent of the plaintiff; and (3) that "evidently the moneys were to be kept in the state for reinvestment or other use," and that the credits were in the hands of a local agent for the same purpose — holds that under those circumstances they were taxable under the Louisiana statute.   This case does not in fact announce any new rule, or

any novel application of the old rule.    It shows that the supreme court of the United States is exactly in line with the courts of the states on this subject.    The most noteworthy feature in this case is its re-establishment of the authority of the case of *State Tax on Foreign-Held Bonds,* 15 Wall., 300, 21 L. Ed., 179, which had been apparently in a measure overruled in the *Multnomah County Case;* and it is to be especially noted that in discussing that case, and explaining it, and re-establishing it in its true place, the court says of it that its language "is not to be taken as a denial of the power of the legislature to establish an independent situs for bonds and mortgages, when those properties are not in possession of the owner, but simply that the fiction of law, so often referred to, declares their situs to be that of the domicile of the owner, a declaration which the legislature has no power to disturb when in fact they are in his possession."

*Bristol* v. *Washington County,* 177 U. S., 133, 20 Sup. Ct., 585, 44 L. Ed., 701, is to the same effect.    The credits were there held taxable because, after and in continuance of a long-established course of business of lending money by a New York citizen in the town of Stillwater, Minn., the business was continued as before, except that, in order to avoid the tax laws, the notes themselves were sent to New York.    But the court said: "But these notes were payable, as before, at the office of the agents in Minnesota, the mortgages securing the notes were retained by the agents, and the notes were returned to the agents from time to time, whenever required by them, for the purpose of renewal, collection, or foreclosure of securities. The agents continued to collect the money due on the notes, and to make loans in the name of Mrs. Bristol, sometimes under her husband's direction, but generally on their own judgment," etc. (page 143, 177 U. S., page 585, 20 Sup. Ct., 44 L. Ed., 701).    The court will see this is nothing, in effect, but our own case, *Jahier* v. *Rascoe,* over again.    Of course, the business so located was taxable.

We submit that the decision of the circuit court of Coahoma county was correct, and should be affirmed.

*Deprivation of Property Without Due Process of Law.*— This question must be investigated from two points of view: (1) As to the attempt to tax loans as personalty (the Coahoma case); and (2) that attempt to tax them as an interest in the lands (the Copiah case).

First. The case of *New Orleans* v. *Stemple, supra,* settles the question, in the passage quoted above, that the taxation of credits, even in the concrete form, when the notes and lands are actually kept in the possession of the nonresident owner, is beyond the power of the state. The later case of *Bristol* v. *Washington County* modifies that doctrine to the extent of holding that the nonresident owner may retain possession of the notes, yet still localize his business in the state; but localizing must be done by the establishment and maintenance of a permanent course of business, including the making of the notes themselves payable at the place where said business is carried on, and the appointment of a regular agent, with power to renew, collect, and reinvest, and all on his own judgment. No such condition of things exists in the case at bar; and we submit that, if the statute is construed as authorizing this tax, it violates the fourteenth amendment of the constitution of the United States. Both of the cases above postulate the fact that, if the tax is unlawful, it does violate that amendment; and the *Multnomah County Case,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803, in order to avoid this difficulty, very carefully and emphatically points out the fact that the Oregon statute imposed no tax on the credits as such.

Secondly. As to the effort to tax as a real estate interest, it seems to be settled by the *Multnomah County Case* that, as a general proposition, it can be done. We have argued above that a statute authorizing such a tax is necessary, and that we have no such statute in this state. If, however, the court should

hold differently, we submit that said holding cannot be applied
in these cases, so as to give it retrospective operation.   The
loans were made under, and manifestly because of, the holding
of this court in the case of *State* v. *Smith,* 68 Miss., 79, 8
South., 294, which was a construction of the very statutes now
existing.   This is the precise point passed on by this court in
*Yazoo & Miss. Valley R. R. Co.* v. *Adams* (decided at the Octo-
ber term, 1902), 81 Miss., 90, s. c., 32 South., 937.   Judge
Cayce, for the court, said: "The property in controversy here is
liable for the taxes for the years claimed, unless relieved there-
from by the operation of the rule of property as it existed at the
time the appellants became owners of it, so operating as to create
an estoppel on the state.   A 'rule of property' is a settled legal
principle governing the ownership and devolution of property.
This principle can be settled only by the supreme court of the
state, and its utterances, in cases pending before it involving the
title to property, construing statutes or constitutional provisions,
have the effect of establishing a rule of property to the extent
only that the particular statute or constitutional provision was,
in the case, involved or necessarily considered, and determined
by the court in the case then pending before it; and such rule
of property, when so established, becomes and remains the set-
tled legal principle governing the question and title to property
to which construction is applicable, so long as such decision
remains unreversed by the supreme court giving such construc-
tion.   If such construction is given upon an issue directly
involved in the case, or, necessarily considered, necessitates the
application of the judicial mind to the precise question, then
immediately the rule of property established thereby becomes
the law for similar cases, and is upheld and continued in the
future by the doctrine of *stare decisis.*"

   In conclusion, it remains only to say that the policy of taxing
this class of credits is a political, and not a judicial, question —
a matter for the legislature, and not for the courts.   If under

the existing laws they are not taxable, no doubt the former legislatures had their reasons for putting the laws in such shape; and any succeeding legislature can alter the law if it shall see fit so to do.   Doubtless some future legislature will do so, just as soon as the public mind of this state becomes convinced that we need that additional source of revenue more than we need the comparatively cheap foreign money which immunity from local taxation brings to us.   "More taxes, more interest," is the inexorable business law.   The legislature must deal with it.

*James H. Watson,* for appellee.

By consent of counsel these two cases are to be heard together. The facts are the same in both cases, and involve but a single question, to wit: Are the debts held and owned by the appellee, secured by trust deeds and mortgages on land situated in the state of Mississippi, taxable under existing laws?

As shown by the records, the appellee is an English corporation, with an office in the city of Memphis, in the state of Tennessee.   Through this office the loans now sought to be taxed were made.   All applications for loans are submitted to Mr. N. F. Le Master, the manager of the Memphis office.   They are forwarded usually by the local attorneys of the would-be borrowers, although occasionally these applications come direct from the applicants themselves.   On receipt of an application the company has the lands mentioned therein inspected by some person whom it employs for that purpose, and if they are shown by his report to be adequate security for the amount desired, and the applicant's title is found, on examination by the company's attorney, to be good and valid, the notes and trust deed are prepared in the Memphis office and forwarded to the applicant, or his attorney, to be executed and recorded.   When this is done, the papers are returned to the Memphis office, and, if found to be in proper shape, the money is then paid over to the

borrower.    This all appears in the agreed statement of facts upon which the Coahoma county case was tried, but the details are not fully set forth by the complainant in his bill in the Copiah county case.    The applicant does allege, however, that the defendant (appellee) is an English corporation, with an agency in the city of Memphis, and the evidences of the debt secured by the trust deeds and mortgages sought to be taxed are in the defendant's possession at its domicile beyond the state, and that they represent money loaned to various parties by the defendant through its agent, Le Master, at Memphis, and that the defendant has no agent in this state to lend money.

The Coahoma county suit was a proceeding by attachment at law for the amount of taxes alleged to be due on the various trust deeds, in which the defendant is the beneficiary, on the lands situated in Coahoma county.    The plaintiff's claim, as set forth in his declaration, was for the taxes of 1898 and 1899 upon "solvent credits" owned by the defendant.    The defendant pleaded the general issue, with notice of the special matter which it expected to prove.    Upon this plea there was a verdict and judgment for the defendant.    In the Copiah county chancery suit, however, it is alleged that the defendant "owns certain real and personal property lying and being wholly in Copiah county, Miss., which escaped taxation for the year 1901, to wit: the interest of the said Colonial & United States Mortgage Company, Limited, as mortgagee and *cestui que* trust in the following mortgages and trust deeds, recorded in the record of trust deeds and mortgages of said county, held by it as security for loaned money on lands lying wholly in Copiah county, Miss."    Then follows a statement showing the amount, date, book, and page where recorded, and the names of the mortgagors in the several trust deeds recorded in Copiah county, securing debts due the defendant.    Notwithstanding the allegation, I submit that the two cases are substantially the same, and that the fact that these debts were assessed in Coahoma county as "solvent

credits," and in Copiah county as "real and personal property," makes not the slightest difference, unless the astute and learned counsel for the appellant can now make it appear to this court that a thing is what they call it, and not what it really is.

In the case appealed from Copiah county the defendant interposed a demurrer to the bill of complaint, which was sustained, and the bill dismissed. Under the authorities there could have been no other result in either case. It must be borne in mind that the defendant is a nonresident, without either office or agent in the state of Mississippi; that the loans assessed for taxation are made through its Memphis office; and that before the money is paid to the borrower his notes, together with the trust deed securing the same, duly executed and recorded, are in the hands of the defendant's agent beyond the limits of the state. In other words, the appellee's alleged liability is based solely upon the facts that the debtors reside, and the loans are secured by trust deeds upon lands lying, in the one case, in Coahoma county, and in the other, in Copiah county, Mississippi. Unquestionably the general doctrine is that debts have their situs at the domicile of the creditor, and the state has no greater power or jurisdiction to tax debts due to nonresident creditors than it has to tax any other personal property of such nonresident which is situated without the state.

"To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts, belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. . . . . . But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners." *State Tax on Foreign-Held Bonds,* 15 Wall., 300, 21 L. Ed., 179.

"Debts have their situs at the domicile of the creditor, because debts are property, and have a value which is inseparable from the creditor." *Meyer* v. *Pleasant,* 41 La. Ann., 645, 6 South., 258; *Liverpool & L. & G. Ins. Co.* v. *Board of Assessors,* 44 La. Ann., 760, 11 South., 91, 16 L. R. A., 56.

"It is an accepted principle of the law of taxation that intangible personal property, such as credits, claims, and other choses in action, follows the person of the owner, and can have no local habitation other than his. Consequently, in the absence of any statute establishing a different rule, the situs of all such intangible personal property, for purposes of taxation, is at the domicile of its owner, and nowhere else." *Grundy County* v. *Tenn. C., I. & R. R. Co.,* 94 Tenn., 295, 29 S. W., 116; *Worthington* v. *Sebastian,* 25 Ohio St., 1; *Barber* v. *Farr,* 54 Iowa, 57, 6 N. W., 134.

As declared by the supreme court of Louisiana in *Liverpool & L. & G. Co.* v. *Board of Assessors, supra,* "The state has no greater power of jurisdiction to tax debts due to nonresident creditors than it has to tax any other personal property of such nonresidents which is not situated in the state." And it will doubtless be conceded that the taxing power of a state can only be exercised upon subjects within its jurisdiction.

"The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business. Whatever form taxation may assume, whether as duties, imports, excises, or licenses, it must relate to only these subjects. It is not possible to conceive of any other, though, as applied to them, the taxation may be exercised in a great variety of ways. It may touch property in every shape — in its natural condition, in its manufactured form, and in its various transmutations. The amount of taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost

infinite form in which it is conducted — in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the federal constitution, the power of the state, as to mode, form, and extent of taxation, is unlimited where the subjects to which it applies are within her jurisdiction. Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in the debts of corporations, belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. . . . . The property mortgaged belonged entirely to the company, and, in so far as it was situated in Pennsylvania, was taxable there. If taxation is the correlative of protection, the taxes which it there paid were the correlative for the protection which it there received. . . . . The property in no sense belonged to the nonresident bondholder, nor to the mortgagee of the company. The mortgage transferred no title. It created only a lien upon the property. Though in form a conveyance, it was both at law and equity mere security for the debt. That such is the nature of a mortgage in Pennsylvania has been frequently ruled by her highest court. In *Witmer's Appeal,* 45 Pa., 463, 84 Am. Dec., 505, the court said: 'The mortgagee has no estate in the land, any more than a judgment creditor. Both have liens upon it, and no more than a lien.' . . . . Such being the character of a mortgage in Pennsylvania, it cannot be said that the nonresident holder and owner of the bonds secured by a mortgage in that state owns any real estate there. A mortgage being there a mere chose in

action, it only confers upon the holder, or the party for whose benefit the mortgage is given, a right to proceed against the property mortgaged, and, upon a given contingency, to enforce, by its sale, the payment of his demand. The right has no locality, independent of the party in whom it resides. It may undoubtedly be taxed by the state, when held by a resident therein, but when held by a nonresident it is as much beyond jurisdiction of the state as the person of the owner." *State Tax on Foreign-Held Bonds,* 15 Wall., 319, 320, 322, 21 L. Ed., 179.

Under the decisions of this court the nature of a mortgage is the same in Mississippi as it is in Pennsylvania. *Beckett* v. *Dean,* 57 Miss., 236; *Freeman* v. *Cunningham,* 57 Miss., 67; *Strickland* v. *Kirk,* 51 Miss., 799. I willingly concede that the rule of comity, *"Mobilia personam sequuntur,"* may be modified by legislative power in many respects. Movables may be taxed in the state in which they are actually located, though the owner resides elsewhere, and even debts may assume such concrete form in the evidences thereof that they may be similarly subjected, when such evidences are situated in the state.

"It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of the owner, will in many cases determine the state in which it may be taxed. The same thing is true of public securities, consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions. The former by general usage have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner. The latter are treated and pass as money wherever they are. But other general property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not

separated from the possessions of the owners." *State Tax on Foreign-Held Bonds,* 15 Wall., 323, 324, 21 L. Ed., 179.

In the later case of *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174, Mr. Justice Brewer reviewed the decisions of all the various states upon this subject, and held that notes secured by mortgages on real estate in Louisiana, and in actual possession of the owner's agent in the city of New Orleans, are there taxable, although the domicile of the owner was in the state of New York. The case arose under a statute very similar to section 3757 of the Annotated Code of 1892, under which appellant is now seeking to fix a liability upon the appellee. The Louisiana statute (sec. 7, No. 106, p. 124, Acts La., 1890), after declaring that it is made the duty of all tax assessors "to place upon the assessment list all property subject to taxation," closes with this provision: "And this shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere, the intent and purpose being that no nonresident, either by himself or through any agent, shall transact any business here without paying to the state a corresponding tax with that exacted of its own citizens, and to all bills receivable, obligations or credits arising from the business done in this state and at the business domicile of said nonresident, his agent or representative." In the case of *New Orleans* v. *Stemple, supra,* the bonds, mortgages, etc., of the defendant were held to be taxable by the state of Louisiana, solely upon the ground that the evidences of these debts were in "concrete form," and were actually situated in the state. At the same time the court distinctly declared that such property had no situs independent of the domicile of the owner, and could have none unless such concrete evidences of debt were separated from the possession of the owners. The power of the legislature to establish an independent situs for bonds and mortgages when they are not in possession of the owner was conceded; the court observing, however, that "the

fiction of law so often referred to, viz.: '*Mobilia personam sequuntur,*' declares their situs to be that of the owner — a declaration which the legislature has no power to disturb when in fact they are in his possession."

Notwithstanding the doctrine, so well settled, that the situs of notes, mortgages, etc., for purposes of taxation, is at the domicile of the owner, it has always been held subject to this modification, that wherever they are separated from the possession of the owner, and situated in some other state where the owner resides, thus enabling the owner to escape the injustice of double taxation.     And in the states of Kansas, New York, Missouri, California, South Dakota, Minnesota, Oregon, North Carolina, Nebraska, and perhaps others, it has been repeatedly held that the state has no power to tax a citizen on money due him in another state, when the evidences of indebtedness were in the hands of an agent for collection in the state of the domicile of the debtor.     Because they have an independent situs, they may be taxed where they are situated.     *Wilcox* v. *Ellis,* 14 Kan., 588, 19 Am. Rep., 107; *Fisher* v. *Rush County Com'rs,* 19 Kan., 414; *Blain* v. *Irby,* 25 Kan., 499; *People* v. *Smith,* 88 N. Y., 576; *State* v. *St. Louis County Ct.,* 47 Mo., 594-600; *People* v. *Home Ins. Co.,* 29 Cal., 533; *Billinghurst* v. *Spink County,* 5 S. D., 84, 58 N. W., 272; *In re Jefferson,* 35 Minn., 215, 28 N. W., 256; *Poppleton* v. *Yamhill County,* 18 Or., 377, 23 Pac., 253, 7 L. R. A., 449; *Redmond* v. *Rutherford Com'rs,* 87 N. C., 122; *Finch* v. *York County,* 19 Neb., 50, 26 N. W., 589, 56 Am. Rep., 741.

Although, as already shown, the general consensus of opinion is that, for the purpose of taxation, the situs of mortgages is at the domicile of the owner, and that this rule cannot be changed, even by legislative power, so long as the mortgages themselves remain in the actual possession of a nonresident owner, yet in some few of the states laws have been enacted providing for the taxation of mortgages held by nonresident creditors as an inter-

est in realty, and the courts have sustained their validity. In Oregon it has been held that a state has power to tax a mortgage, as such, in the county where it is recorded, or where the land lies, irrespective of the residence of the owner. *Ankeny* v. *Multnomah County,* 3 Or., 386. And the supreme court of the United States has affirmed the validity of the Oregon law, so far as to hold that the rule of taxation thereby introduced does not violate any rights of citizens of other states secured to them by the constitution of the United States. *Savings & Loan Society* v. *Multnomah County,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803. It was held in these cases that, conceding that the debts followed the person of the owner, and, in case of a nonresident, would be beyond the jurisdiction of the state, yet the mortgage, considered as a security, was local and within the jurisdiction, and might, therefore, be taxed as such. "The sophistry of this reasoning is very apparent, when we reflect that, on the concession here made by the court, the state where the creditor resides may be taxed upon the debt secured by the mortgage, and thus he would be liable to double taxation for the same item of property — once in his own state on the debt, and once in Oregon on the instrument which evidences and secures it. If further refutation is needed, it is sufficient to point out that a security divorced from the debt which it secures is a phantom, and can have no taxable value." It has also been held by the supreme court of Michigan that a mortgage on land so far partakes of the character of realty that it is competent for the legislature to provide that the mortgage of a nonresident mortgagee shall be taxable where the land is situated. *Common Council of City of Detroit* v. *Board of Assessors,* 91 Mich., 78, 51 N. W., 787, 16 L. R. A., 59.

In both the Oregon and Michigan cases, the courts were dealing with a statute which in terms imposed a tax upon a mortgage interest in lands. Of course, however, there must be statutory warrant for such taxation; for, if the legislature

omits any property from the list of taxables, the courts are not authorized to correct the omission and adjudge the omitted property to be subject to taxation. *New Orleans* v. *Stemple,* 175 U. S., 312, 20 Sup. Ct., 110, 44 L. Ed., 174. Hence, in the absence of any such statute in the state of Mississippi, the Oregon and Michigan cases have no application to the cases at bar. The only statutory warrant for such taxation in the state of Mississippi is to be found in section 3757 of the Annotated Code of 1892, which is as follows: "Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money loaned in this state or employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money, or employed in any kind of trade or business, shall be taxable for the same in the county in which such person may reside or have a place of business, or be temporarily located, at the time of the assessment." And this statute cannot be construed to provide, even by the remotest implication, for the taxation of mortgages as such. In fact, the very language of the statute excludes this idea, by fixing the situs of the property enumerated in the county "in which person may reside or have a place of business, or be temporarily located, at the time of the assessment." It is clear that the framers of this law not only gave full recognition to the universally accepted rule that the taxing power of a state can only be exercised upon subjects within its jurisdiction, but were also familiar with the doctrine that "movables follow the person"; and, if properly construed, the statute itself contains nothing inconsistent with either of these well-established principles of law. Therefore I might well content myself with merely calling attention to the fact that it is nowhere alleged or shown that the appellant, in either of the cases now before the court, resided or had a place of business, or was temporarily located, in either Coahoma county or Copiah county at the time of the assessment in these counties, or ever had an agent in the state

of Mississippi.    This statute, however, has been already con-
strued by this court, and has been held in the clearest and most
unmistakable language not to render mortgages owned by non-
residents liable to taxation in the state of Mississippi.    Mr.
Justice Campbell, certainly the peer of any judge who ever sat
upon this bench, in the case of *State* v. *Smith,* 68 Miss., 79, 8
South., 294, which was identical in every particular with the
cases now before the court, said: "In the case before us the
creditor resides beyond the limits of this state, and has no agent
in this state and no place of business here.    The money
was not sent here to be loaned.    The evidence of the debt was
not here.    The business of lending money was not conducted in
this state.    The debt was secured by a mortgage on property in
this state, and the loan was obtained by the application of per-
sons in the state, transmitted to persons beyond its limits, who
forwarded the money from without the state.    It was not
embraced by section 497 of the code."    68 Miss., 83, 8 South.,
294.    It is unnecessary for me to add that section 497 of the
Code of 1880, then in force, is the same, word for word, as
section 3757 of the Annotated Code of 1892.

In my humble opinion, it would really be a great misfortune
if the law could be otherwise construed, as the taxation of mort-
gages securing money loaned by nonresidents to citizens of
Mississippi would inevitably be attended by one of three results:
Either it would drive foreign capital out of the state altogether,
or the lenders would exact the highest legal rate of interest in
every case, or the borrower would be required to pay the tax, in
addition to the interest contracted for.    I feel perfectly safe in
the assertion that no nonresident corporation has ever taken a
mortgage to secure a loan made to a citizen of this state that did
not contain a stipulation binding the mortgagor, not only to pay
the taxes assessed upon the land itself or his estate therein, but
also such as might be levied on the mortgage debt or the interest
of the mortgagee; and under the authorities such an agreement,

unless expressly forbidden by law, is perfectly valid and bind-
ing.    Although the mortgage may provide for the highest legal
rate of interest, the insertion of such an agreement does not
render the instrument obnoxious to the laws against usury.
*Common Council of City of Detroit* v. *Board of Assessors,* 91
Mich., 78, 51 N. W., 787, 16 L. R. A., 59; *Banks* v. *McClellan,*
24 Md., 62, 87 Am. Dec., 594; *Hammond* v. *Lovell,* 136 Mass.,
184.    Under the law as it now stands, however, I cannot see
how it is possible for such a misfortune to befall the good people
of the state of Mississippi.    The conclusion reached by the
lower court in each case, I submit, was correct, and should be
affirmed.

*H. R. Boyd,* for appellee.

First.   The first proposition is that there is no law or statu-
tory provision in the state of Mississippi for the collection of
taxes in cases of this kind.    Section 3757 of the Code of 1892
(section 497 of the Code of 1880) is the only provision in the
state of Mississippi that could, in our opinion, be relied upon
as a basis for the assessment and collection of this tax.    This
section provides that every person, resident or nonresident,
whether corporate or otherwise, and the agent of such nonresi-
dent, having money loaned at interest in this state, etc., shall
be taxable for the same in the county in which person may
reside or have a place of business, or be temporarily located, at
the time of the assessment, etc.    This section of the code has
already been construed by the supreme court of the state in the
case of *State of Mississippi* v. *Smith,* 68 Miss., 79, 8 South.,
294.   Judge Campbell, in delivering the opinion of the court,
says that section 497 of the Code of 1880 applies to money
loaned or employed in this state, where the person resides or has
a place of business, or a location, or an agent in this state.
There can be no doubt that where an agency is created in the
state for the loaning of money, and the business of loaning is

carried on here, this state being the locality in which the trans-
action is begun and completed, and the debt acquires a situs
here from the course of dealing between the lender and the
borrower through the agency established here, it is taxable;
but where the nonresident has no place of business, or location,
or agent in this state, and accomplishes a loan beyond the limits
of the state, the fact that the negotiations for a loan were made
by persons in this state, and were secured by mortgage on
property in this state, does not subject it to taxation here.    This
decision was rendered at the October term of the supreme court
of 1890, and has been, and now is, the settled law in the state
upon that subject, and has become, together with the statute, a
rule of property, and is the same as though the decision had
been itself incorporated into the statute by the legislature, so
that all money loaned as in the cases at bar is protected by this
statute and by this decision, which has become a rule of prop-
erty which will not be changed or altered by any subsequent
court, so as to change the contract liability heretofore entered
into between the garnishees in this case and the appellee.

    This honorable court, in the case of *Y. & M. V. R. R. Co., et
al.,* v. *Adams, Revenue Agent,* 81 Miss., 90, s. c., 32 South., 937,
on p. 946, say: "A 'rule of property' is a 'settled legal principle
governing the ownership and devolution of property.' This prin-
ciple can be settled only by the supreme court of the state, and
its utterances in cases pending before it, involving the title to the
property, construing statutes. or constitutional provisions, have
the effect of establishing a rule of property to the extent only
that the particular statute or constitutional provision was in
that case involved, or necesasrily considered and determined by
the court in the case then pending before it; and such rule of
property, when so established, becomes and remains the settled
legal principle governing the acquisition and title to property
to which construction is applicable, so long as such decision
remains unreversed by the supreme court giving such construc-

tion. . . . . All rights of property must be governed and protected by the laws existing and as they existed at the time of the vesting of the right. This principle, so manifestly in accordance with the plainest principles of justice, receives our fullest approval, and will be applied in all such cases coming within its scope. It is binding in proper cases upon the state as upon the individual. The state has not one law for the citizen and a different application of it to herself. It has received the sanction of the highest court of the land in many cases. In *Gelpcke* v. *City of Dubuque,* 1 Wall., 206, 17 L. Ed., 520, the supreme court of the United States say: 'The sound and true rule is that, if the contract when made was valid by the law of the state as then expounded by all of the departments of the government and administered in all its courts of justice, its validity and obligation cannot be impaired by any subsequent action of the legislature or decision of the courts altering the construction of the law.''

The decision was rendered on November 18, 1902, and, if the principles of law announced in that decision, so recently made, are adhered to, the principle here contended for in the cases at bar must be governed by it, and from this it would seem that there can be no escape.

Second. The second proposition, that a personal property tax cannot be assessed against a nonresident, neither can the property of a nonresident be taxed, unless it has an actual situs within the state, and the situs of a credit is the domicile of the owner, has been so frequently discussed and passed upon by the courts of the country, both state and federal, that it would seem almost idle to raise the question again under the laws of the state of Mississippi as they exist. There has been a great unanimity in the decisions of the courts with reference to this proposition. A number of cases have been examined and collected upon this proposition, and a brief outline of some of the decisions will be here given, for the benefit of the court.

In the case of *Graham* v. *St. Joseph Tp.,* 67 Mich., 652, 35 N. W., 808, it is shown that Graham was the owner of a certain amount of stock in the Graham & Morton Transportation Company, a corporation organized under the laws of the state of Illinois. He resided in the state of Michigan and in the township of St. Joseph. His stock in this corporation was assessed to him in this township, and he paid the taxes levied against him under this assessment, protesting against the same; and he brought his suit to recover the taxes thus paid. It was conceded in the case that, if the plaintiff's stock was properly assessable in St. Joseph, then the tax was legal, but, if not, he should be entitled to recover. The court say that "a tax is a portion of the property of the citizen required by the government for its support in the discharge of its various functions and duties, and may be imposed when either the person or the property is within its jurisdiction. A personal tax cannot be assessed against a nonresident, neither can the property of a nonresident be taxed unless it has an actual situs within the state, so as to be under the protection of its laws. . . . . It is unquestionably the general rule that personal property can only be assessed to the owner at the place where he resides, and if it is sought to tax it in another jurisdiction, because of its tangible character and its location being there, the authority so to do must be plainly written in the statute." The court held that, Graham being a resident of St. Joseph township and owning stock in the corporation, he was personally assessed, and the stock had its situs in the state of Michigan, and was properly taxed there; and the decision of the court was manifestly correct. The facts in that case are different from the case at bar in this: that neither the defendant nor the credits are in the state of Mississippi. It has no jurisdiction over the defendant, or over the notes and mortgages held by it outside of the state.

In the case of *City of Davenport* v. *Miss. & Mo. R. R. Co.,* 12 Iowa, 539, the city of Davenport attempted to assess and

tax the holder and owner of the mortgage bonds issued by the railroad company and held by nonresidents of the state of Iowa, and the supreme court, in discussing that case, held that a mortgage executed by a railroad company on its depot grounds, road, and rolling stock, situated in that state, is not subject to taxation, upon the failure of the mortgagee to list when the holder or owner of the mortgage is a nonresident of the state, and that mortgages, before foreclosure, are choses in action, and as such attach to the person of the holder, and are taxable at the place of his domicile. They are not taxable in this state, when the owners are nonresidents.

The case of *People* v. *Eastman,* 25 Cal., 601, presents a case where the owner of a judgment of foreclosure lived in the city of San Francisco. The mortgage and the judgment were liens upon land in another county, and were assessed and the taxes attempted to be collected in the county in which the land lay, and not at the residence of the owner of the judgment or the note and mortgage. The supreme court of California say: "The money at interest, debt, or obligation is the principal thing, and the mortgage is only a security, a mere incident to the debt or obligation. The mortgage has no existence independent of the thing secured by it. A payment of the debt discharges the mortgage. The thing secured is intangible, and has no situs distinct and apart from the residence of the holder. It pertains to and follows the person. The same debt may, at the same time, be secured by a mortgage upon the land in every county in the state; and, if the mere fact that the mortgage exists in a particular county gives the property in the mortgage a situs subjecting it to taxation in that county, a party without further legislation might be called upon to pay the tax several times, for the lien for taxes attaches at the same time in every county in the state, and a mortgage in one county may be a different one from that in another, although the debt secured is the same. The fact that the mortgage has been foreclosed, and

the lien carried into a judgment, does not, in our opinion, change the character of the property with reference to the question under discussion.     The principal thing is still a debt secured by a judgment lien, instead of a mere mortgage lien."

The case of *Board of Commissioners of Arapahoe County* v. *Cutter,* 3 Colo., 349, also presents a case where the board of commissioners had attempted to assess a note held by a resident of the state of California, secured by a trust deed upon real estate in Colorado, and the supreme court say "that personal property which has a locus here is without doubt subject to taxation under our revenue laws, which, while they in general can have no extraterritorial force, may reach all property within the state, without reference to the residence of the owner.     A herd of cattle, a flock of sheep, a stock of merchandise owned by a nonresident, but kept within the state, are proper subjects of taxation; but debts due from a resident of California are in no legitimate sense the property of the debtor.     They belong to the creditor.     They have no situs apart from the residence of their owner, although the situs of the real estate by which the notes were secured was within the jurisdiction of the taxing power.     The debts evidenced by the notes were the principal things, and the trust deeds securing them were mere incidents, depending for their very existence upon what they secured, and the liquidation of the debt would at once cancel the trust deeds. A trust deed itself is but a chose in action, attached to the person of its owner.     A debt is invisible and intangible, following the creditor's domicile, and wherever that may be is within reach of the taxing power; but, as the domicile of the owner of the choses in action upon which taxes were paid was in California, it cannot be said that they constituted property within the law of the territory of Colorado, and were therefore the subject of taxation here"— citing *Railroad Co.* v. *Pennsylvania,* 15 Wall., 300, 21 L. Ed., 179, and many other cases.

In the case of *Worthington* v. *Sebastian,* 25 Ohio St., 10,

the supreme court of Ohio, in discussing the question of the right of the state of Ohio to tax stock in foreign corporations held by a citizen of Ohio, say that "intangible property has no actual situs.    If, for purposes of taxation, we assign a legal situs, surely that situs should be the place where it is owned, and not the place where it is owed.    It is incapable of a separate situs, and must follow the situs either of the debtor or the creditor.    To make it follow the residence of the former is to tax the debtor, and not the creditor — to tax poverty, instead of wealth.    That it is the creditor, and not the debtor, that is to be taxed, and that the tax is to be imposed by the law of the creditor's place of residence, and not by the law of the debtor's place of residence, seems to be quite well settled by authority" — citing *R. R. Co.* v. *Pa.,* 15 Wall., 300, 21 L. Ed., 179.

In the case of *Grant* v. *Jones,* 39 Ohio St., 506, there was an attempt made by the treasurer of Butler county, Ohio, to recover of Grant certain taxes upon notes and mortgages held by him in Lemon township, Ohio, where he had loaned a large sum of money to citizens of that township; but he was born in the county of Down, Ireland, and was a British subject, and never was a householder in the state of Ohio or in the United States of America.    The supreme court, reaffirming the doctrine in *Worthington* v. *Sebastian, supra,* said that, "as to this class of property, the situs of the creditor, and not of the debtor, is to determine where the credits, investments in bonds, etc., are to be taxed, and that the tax is to be imposed by the law of the creditor's place of residence, and not by the law of the debtor's citing *Bradley* v. *Bauder,* 36 Ohio St., 28, 38 Am. Rep., 547, and a number of other cases on pages 514 and 515, 36 Ohio St., 38 Am. Rep., 547.

In the case of *Goldgart* v. *People,* 106 Ill., 25, the supreme court of Illinois held that, "if the owner be resident in the state, there is jurisdiction over his person and over the credits also, which, in legal contemplation, in the absence of anything

showing they have a situs elsewhere, accompany him. If the owner is absent, but the credits are in fact here in the hands of an agent for renewal or collection, with a view of reloaning the money by the agent as a permanent business, they have a situs here for the purpose of taxation, and there is jurisdiction over the thing; but it is to be borne in mind it is credits, and not debts, that are the subject of taxation. The debtor cannot be taxed, and is not presumed to be by the statute, on what he owes. . . . . And so, in the case of a nonresident creditor not having parted with his credit, there is nothing here to tax; nothing here to which jurisdiction can attach. This is well settled by adjudicated cases"— citing cases. And this must be peculiarly so in the case of negotiable instruments. They are the subject of larceny, and their indorsement transfers the credits of which they are evidence. They are regarded as property, and, of course, this must be property having its situs where they are lawfully held.

In the case of *Gallatin Co.* v. *Beattie*, 3 Mont., 173, it was attempted to enforce a collection of a tax on a mortgage and note in one county of Montana, when the holder and owner of the note and mortgage was a resident of another county; and the supreme court held that the mortgages and notes were not properly assessed in the county in which the property lay, but that it could only be assessed to the owner in the county in which he lived.

In the case of *Barber* v. *Farr*, 54 Iowa, 57, 6 N. W., 134, the supreme court of Iowa held that the taxation of money and credits in the county other than the one in which the owner resides is without authority and void, and that he may maintain an action in equity to enjoin the collection of a tax. In the case of *Hunter* v. *Board of Supervisors*, 33 Iowa, 376, 11 Am. Rep., 132, the supreme court of Iowa held that, where a resident of that state had deposited for safe-keeping in Illinois some promissory notes that had never been brought by him into

the state, they were subject to taxation, and that the notes in such cases are merely evidences of the debts or rights represented, and these follow the person of the owner.

The supreme court of Missouri, in the case of *State* v. *County Court of Howard County,* quote from the opinion of Justice Field in *Railroad Co.* v. *Pennsylvania,* 15 Wall., 323, 21 L. Ed., 179, that it is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of the owner, will in many cases determine the state in which it may be taxed; citing *St. Louis* v. *Wiggins Ferry Co.,* 40 Mo., 580, sustaining the same doctrine.

The supreme court of Maryland, in the case of *Latrobe, Trustee,* v. *Mayor of Baltimore,* 19 Md., 15, have held that the recording of a mortgage in another county or district than that of a creditor's residence cannot have the effect of locating the debt where the mortgage is recorded.

In the case of *People* v. *Smith,* 88 N. Y., 576, the court of appeals of New York held that where a resident of this state was assessed for personal property which consisted of mortgage securities in the hands of his agents, residing in another state, who retained the custody of the securities from the time they were taxed, and received and re-invested the interest paid thereon, and upon payment of any security, under authority given them by their principal, discharged such security and reinvested the sums paid, without submitting the proposed loans to him for approval, and until the funds were invested, and kept them in their own names, and where, by the laws of the state, such securities were so taken and held, they were there subject to taxation in the hands of the agents, such securities were not personal estate within this state, within the meaning of the statute in relation to taxation, and were not liable to taxation in this state, and therefore the assessment was erroneous.

In the case of *Senour, Treasurer,* v. *Ruth,* 140 Ind., 318, 39

N. E., 946, the supreme court of Indiana held that credits in favor of a nonresident, which are debits against citizens of this state, such credits resulting from loans evidenced by promissory notes held by such nonresidents in another state, and secured by mortgages on real estate in this state, are not within the jurisdiction of the state, nor subject to taxation here; that, the property not being within the jurisdiction of this state, the county board of review had no power to assess it, and, the board's act in that regard being void, it was subject to collateral attack.    In the case of *Herron, Treasurer,* v. *Keeran,* 59 Ind., 472, 26 Am. Rep., 87, the supreme court of Indiana held that "promissory notes and other choses· in action, placed in the hands of an attorney in this state for collection, and municipal bonds, placed temporarily on deposit in a bank in this state, merely for safe-keeping, and belonging to a *bona fide* resident of another state, are not liable for taxation; and such property, belonging to and in the possession of a resident of another state, who is traveling through or temporarily sojourning in this state, are not liable for taxation."

In the case of *Boyd* v. *City of Selma* (Ala.), 11 South., 393, 16 L. R. A., 729, the supreme court of Alabama held that negotiable promissory notes for money loaned are personal property, and that the domicile of the creditor is the situs for the purpose of taxation of negotiable promissory notes given for money loaned.    In the report of this case the editor has added very valuable notes, referring to a great many decisions upon this proposition, and the court's attention is especially directed to this case and also the notes thereunder.

In the case of *Kingman County* v. *Leonard,* 46 Pac., 960, 34 L. R. A., 810, it was attempted to assess for taxation judgments rendered by the courts of Kansas in favor of and owned by citizens of other states, and it was decided that the situs of the debt is the residence of the owner, and that it is not taxable in any other place.

The supreme court of Michigan, in *Village of Howell* v. *Gordon,* 86 N. W., 1042, has decided the same proposition.

The case on appeal from the chancery court of Copiah county proceeds upon the theory that the appellee has an interest in the real estate itself upon which the mortgage rests, and that this interest can be subjected to the payment of the taxes by an equitable proceeding. We submit that this bill has been filed upon an erroneous view of the law of Mississippi relative to mortgages. The condition of the law in Mississippi is so admirably stated in 1 Jones on Mortgages (4th ed.), sec. 38, that I quote the whole section: "In Mississippi, upon a breach of the condition of the mortgage, the legal title becomes absolute in the mortgagee, who thereupon becomes entitled to the possession of the property as an incident of the title (citing *Hill* v. *Robertson,* 24 Miss., 368, and *Harmon* v. *Short,* 8 Smedes & M., 433). The code now provides that, before a sale under a mortgage or deed of trust, the mortgage or grantor shall be deemed the owner of the legal title of the property conveyed, except as against the mortgagee and his assigns, or the trustee after breach of the condition of the mortgage or deed (citing Code 1880, sec. 1204; *Carpenter* v. *Bowen,* 42 Miss., 28; sec. 1204 of the Code of 1880 is sec. 2449 of the Code of 1892). The debt is considered as the principal and the mortgage as an incident only. The mortgagee, notwithstanding the form of the conveyance, has but a security. The principles long established in chancery have under the code become naturalized in the courts of common law, so that, under foreclosure, the mortgagee is regarded as having a chattel interest only. Even after the mortgagee has taken possession, the mortgaged real estate is regarded as a pledge only (citing *Buckley* v. *Daley,* 45 Miss., 338, 345). As respects third persons, and the mortgagee, also, until after the forfeiture, the mortgagor is the owner of the legal estate, and the mortgagee has only a security for the debt. 'The legal title,' says Chief Justice

Simrall in a recent case (citing *Buck* v. *Payne,* 52 Miss., 271), 'may be asserted by the mortgagee, but only for the protection of his debt, and to make the security available for its payment.' " This is settled law in the state of Mississippi, and how the appellant could hope, by chancery proceedings, to reach anything tangible, is certainly shrouded in great doubt.

Third. The third proposition is that if the state of Mississippi had attempted, by legislative enactment, to tax notes, mortgages, and other credits owned by nonresidents of the state, such legislation would be contrary to the provisions of the constitution of the United States, as depriving the defendants of their property without due process of law. This question has been settled by the supreme court of the United States in the case of *Railroad* v. *Pennsylvania,* 15 Wall., 300, 21 L. Ed., 179, known as the *"State Tax on Foreign-Held Bonds,"* and that the court has held, where the officer of the railroad company was required to retain and pay to the state of Pennsylvania a certain tax or assessment levied on the interest accruing on bonds held by nonresidents, that it was an interference on the part of the state with the contract rights between the railroad company and its bondholders, and that it impaired the obligation of the contract, and was unconstitutional and void. The same question was raised in the case of *Erie R. R. Co.* v. *Pennsylvania,* 153 U. S., 168, and the supreme court reaffirmed the doctrine in *State Tax on Foreign-Held Bonds,* in 15 Wall., 300, 21 L. Ed., 179. In the case of *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174, the supreme court of the United States has again passed upon this question under the Louisiana statute, and has again reaffirmed the doctrine herein contended for by the defendant. There is a collection of cases in this opinion to which Justice Brewer refers, and it would seem that a sufficient citation to these cases, with authorities therein discussed, is entirely sufficient to cover all of the propositions raised in this case.

We respectfully submit that the decision in both of the above-entitled causes, of the inferior court, should be affirmed.

*Smith, Hirsh & Landau,* for appellee.

We have clients interested in the solution of the questions involved in this suit, and have been kindly permitted by the counsel for the defendant to file a brief, and for that reason, among others, we will make it brief.    The amount claimed in this case, $163.25, based upon a levy of 13 mills for the county and state, is comparatively insignificant; but the principle involved affects transactions aggregating millions of dollars, and upon the decision, we respectfully submit, depends the credit, the good faith, and the fair name of this state.    If this suit can be maintained, then the case of *State* v. *Smith,* 68 Miss., 79, 8 South., 294, will be overruled, and a large proportion of the money loaned in this state, upon the faith of said case, could be subjected to proceedings for confiscation in the guise of taxation.    Every dollar the commission merchant in Memphis or New Orleans loaned to a struggling farmer to enable him to make a crop, every dollar that some nonresident widow or orphan sent here to be invested in mortgages at low rate of interest, every dollar that a nonresident mortgage company has loaned here in good faith, would be liable to a similar tax, and the credit of the people of this state, as well as of the state herself, would be practically extinguished.    And for what purpose?    Simply to impose upon the borrower additional burdens; for ultimately the borrower must pay a large proportion of the tax upon money.    If a nonresident enters into a contract with the state of Mississippi for the building of a public structure, and it is known in advance that the capital employed by him is to be taxed, the people of Mississippi must, after all, really pay it.    And so, if an individual contracts for a loan of money, the lender will base the rate of interest upon the tax chargeable thereon, so that any plan providing that

money must pay its just proportion of the taxes, when it becomes visible and amenable to taxation, will not be found, as a rule, feasible in its execution.

There are certain unwritten laws that neither legislatures nor courts can thwart or repeal. Money not loaned, in the pockets of the owner, cannot ordinarily be reached by the assessor or collector, and when it emerges into daylight, and has assumed a concrete, taxable form, the man who gets it temporarily, and upon the condition to return it, not only pays the lender for its use, but the state, which is possibly seeking to relieve him from a part of the burden of taxation, by reposing responsibility upon the owner of the money loaned, fails in its purpose. It is a trite saying that "prohibition don't prohibit," and it may also be said, in the light of experience, that "money can't be successfully taxed, so as to reach the owner or lender." In fact, in all finite undertakings, there is seldom good without evil; but it also follows that there is rarely evil without good. If a failure to pay the full amount of taxes for which a person is liable entitles him to be designated and denounced as a "tax-dodger," who can escape? It is almost a question of who can cast the first stone. The courts must, of course, enforce the law as it is written, but they cannot accomplish the impossible; and we offer these suggestions to show that there can be no perfect system of taxation devised by human minds, as carried into practice by human exertion. If a local money lender will hide his earnings, and no longer make it available for commercial uses, and the nonresident capitalist will be driven from our borders by discriminating or unjust taxation, how can we expect the state to thrive or prosper? It must be admitted that any tax levied upon money at its face value is discriminating, when the real estate, and such personal property as mules and horses, are based upon an assessment of perhaps one-half, or 60 per cent, of its value, as is a matter of common knowledge. Some of the language of the court in *San Francisco* v. *Mackey*

(C. C.), 21 Fed., 539, is pertinent here: "The obvious tendency of discrimination, . . . . and double, unequal, and unjust taxation, . . . . is to drive our citizens, having a large amount of personal property, out of the state to escape that kind of oppression. . . . . A policy that recognizes the principle stated (in the opinion) cannot fail to be inimical to the best interests of the state, and to discourage investments by both resident and nonresident capitalists, thereby greatly retarding the future development of its resources."

But a leading, and, we submit, a controlling, consideration is the fact that a large proportion of the money loaned in this state was invested here with the assurance and belief that, by virtue of the principle announced in *State* v. *Smith, supra,* an immunity from taxation would be enjoyed. We think it proper to state here that, prior to the rendition of the opinion in *State* v. *Smith,* an organization engaged in the business of loaning money on mortgage, before entering this state, applied to the renowned jurist, the late Chief Justice James Z. George, for his opinion concerning the taxability of nonresidents for money loaned in this state. General George, in an elaborate opinion, dated Jackson, April 26, 1887, held that money loaned in this state by such a nonresident mortgage company was not taxable. We append herewith a copy of certain portions of said opinion, and make the same a part of this brief. His opinion sounds like prophecy, when we read the decision of this court rendered three years later, at the October term, 1890, in *State of Mississippi* v. *Smith,* 68 Miss., 79, 8 South., 294, wherein it was held: "Section 497 of the Code of 1880, which provides for the assessment and taxation of money loaned or employed in this state, applies only where the person owning the same, and sought to be taxed therefor, resides or has a place of business or a location or an agent within the state, but not to a loan to a person in the state by a nonresident, who has no place of business, location, or agent in this state, that is secured by a mortgage on property

within this state." When this decision was rendered, sections 496 and 481, Code 1880, precisely the same as sections 3751 and 3761, Code 1902, were in force. And this ought to settle the whole question; and one is inclined to marvel at the industry and ability that seeks now to again overthrow or repeal the law of this state, as thus construed, which is just and equitable, and which has been acted upon in good faith many years. The *Smith Case* decided unequivocally and without ambiguity that the mortgage or the interest on a mortgage in this state of a non-resident mortgagee is not taxable in this state. There has been no change in the law; and as to all past transactions, we submit, under the decisions of the supreme court of the United States, there can be now no departure from the principle or rule therein pronounced and maintained.

We have not had an opportunity to hear the argument or read the brief of the opposing counsel, but we presume that they are now placing some reliance upon recent cases of the supreme court of the United States. The case of *Savings & Loan Co.* v. *Multnomah County,* 169 U. S., 421, 18 Sup. Ct., 392, 42 L. Ed., 803, does not touch the question here involved, and, if it had any effect at all, we submit, inferentially would be an authority in favor of the appellee. The court held "that the statute of Oregon of October 26, 1882, taxing mortgages of land in that state to the mortgagees in the county where the land lies, does not, as applied to mortgages owned by citizens of other states, and in their possession outside of the state of Oregon, contravene the fourteenth amendment of the constitution of the United States." Justice Gray said, referring to *State* v. *Smith,* 68 Miss., 79, 8 South., 294, and other cases, that in these cases "there was no statute expressly taxing mortgages at the situs of the land"; and we submit there is no statute in this state expressly taxing mortgages where the land is situated, or elsewhere. It will be noted that he says: "The statute of Oregon, the constitutionality of which is now drawn in ques-

tion, expressly forbids any taxation on the promissory note, or other instrument or writing, which is the evidence of the debt secured by the mortgage, and with equal distinctness provides for the taxation as real estate of the mortgage interest in the land." In this state the rule is exactly the converse. It is the debt which is taxable, and the mortgage is simply an incident thereto.    In *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174, an act of the state of Louisiana was involved. "Section 7 of chapter 106, p. 124, of the Louisiana statutes of 1890, after declaring 'that it is made the duty of the tax assessors throughout the state to place upon the assessment list all property subject to taxation,' contained the following provision: 'This shall apply with equal force to any person or persons representing in this state business interests that may claim a domicile elsewhere, the intent and purpose being that no nonresident, either through himself or through any agent, shall transact business here without paying to the state a corresponding tax with that exacted of its own citizens; and all bills receivable, obligations or credits arising from the business done in this state are hereby declared assessable within this state, and at the business domicile of said nonresident, his agent, or representative.'    The defendant in error, who was domiciled in the city of New York, was the owner of credits which were evidenced by notes largely secured by mortgages on real estate in New Orleans, in possession of an agent of the defendant in error, who collected the interest and principal as it became due, and deposited the same in a bank in New Orleans to her credit. Held, that under the act of 1890, as interpreted by the supreme court of the state, this property in the hands of the agent was subject to taxation in New Orleans, and that such taxation did not infringe any right secured by the federal constitution. The rule in such case is that the federal courts follow the construction placed upon the statute by the state courts, and in advance of such construction they should not declare property

beyond the scope of the statute, and exempt from taxation, unless it is clear that such is the fact. It is well settled that bank bills and municipal bonds are in such a concrete, tangible form that they are subject to taxation where found, irrespective of the domicile of the owner — are subject to levy or sale on execution, and to seizure and delivery under replevin. Notes, and mortgages are of the same nature."

Manifestly that case is radically different from the one at bar. The plaintiff, though a nonresident, "was the owner of credits which were evidenced by notes, largely secured by mortgage on real estate in New Orleans, and these notes and mortgages were in the city of New Orleans, in possession of her agent, who collected the interest and principal as it became due, and deposited the same in a bank in New Orleans to her credit." In the *Stemple Case*, therefore, the property was practically loaned and invested in the city of New Orleans, and the owner had acquired a residence there by reason of the fact that she had an agent there, who handled and controlled and invested the money just the same as she would or could. And therefore, for all practical intents and purposes, the principal was practically a resident of New Orleans, so far as her liability to taxation is concerned, and her property taxed was tangible, and was situate in New Orleans. The same principle is announced in *Bristol* v. *Washington County,* 177 U. S., 133, 20 Sup. Ct., 585, 44 L. Ed., 701, where the court held: "The personal property of a citizen of and resident of one state, invested in bonds and mortgages in another state, is subject to taxation in the latter state; and the amount of the tax is a claim against the property of the person taxed, which is a debt that may, in case of the death of the person taxed, be proved against his estate in the state where the mortgages and loans are contracted, subject to the statutes of limitations of the state." In the *Bristol Case* the court found, as a matter of fact, that "business of loaning money through the agency in Minnesota was con-

tinued through all these years just as it had been carried on before," and Mrs. Bristol, whose estate had been taxed, was bound to know that under previous decisions of the supreme court of Minnesota property held, managed, and controlled as her property was managed and controlled was liable to taxation in Minnesota. And it would be as difficult to understand how a person who is doing business in one state through an agent, knowing that the law of that state, as construed by its highest courts, made property employed in such state taxable, could thereafter escape taxation, as, it is now understood, how this court can be asked to deliberately repudiate and denounce a decision which has been relied upon for over a decade. It is clear, from the language used in the *Stemple Case,* that if the state court had held the property in controversy exempt from taxation, the federal court would have adopted the construction placed upon the statutes by that state court, and in fact could not, without overruling all of its previous decisions on the subject, have done otherwise. If a mortgage, without being so declared by statute, is an interest in land separate and apart from the debt thereby secured, then it will follow that the land is taxable, the mortgage is taxable, and the debt secured by the mortgage is taxable, and we thus have triple taxation, and then the burden of taxation, already oppressive, will be unbearable.

If the contention of appellant is correct, then mortgages upon railroads are taxable, mortgages on cotton factories and other manufacturing establishments are taxable, and, if such a principle is enforced, then practically all public improvements in this state will terminate, for railroads and manufactories cannot be built if such taxation is permissible. If the residence of debtor is the absolute test in determining the situs for taxation, then all debts due by any person in this state to nonresidents for money borrowed, goods purchased, or for any other reason, are taxable here, and all interstate commerce must cease. If the residence of the debtor determines the situs for

taxation, then what becomes of the doctrine that the debt, without reference to ownership, must pay the tax, and can be sold for that purpose? If the views of the appellant can be maintained, then it seems to us it may be likely that there will soon be but few available debts or recorded mortgages belonging to residents or nonresidents to be taxed in this state. To paraphrase the language of this court in *Adams* v. *Tombigbee Mills,* 78 Miss., 693, 29 South., 470: "Individuals and corporations would distrust as to the future if (a decision like *State* v. *Smith,* 68 Miss., 79, 8 South., 294, carefully considered, construing) the general law (and which law was re-enacted after the rendition of said decision), and on the faith of which appellee has invested its money, should be" overruled, and rights of property should be thus destroyed, which, of course, cannot be done under the constitution of the state of Mississippi and under the constitution of the United States. We also submit that this court could not, without violating certain provisions of the federal constitution and of the constitution of this state, hold liable for taxation nonresident taxpayers, who sent money into the state to be loaned under the faith of the decision in *State* v. *Smith, supra.* So far as the federal points are concerned, we refer to *City Railway Company* v. *Citizens' Street Railroad,* 166 U. S., 557, and the familiar case of *Illinois Central Railroad Company* v. *Adams,* 180 U. S., 28, 21 Sup. Ct., 251, 45 L. Ed., 410.

The following is the opinion of the late Chief Justice George, above referred to:

*Taxation of Nonresidents.*— I am asked: "How and to what extent will section 497 of the Revised Code of Mississippi of 1880 affect such loans made in the state of Mississippi?" And the request is made to have the question discussed in all its bearings in a written opinion for the guidance of the company. "Every person, resident or nonresident, whether corporate or otherwise, and the agent of such nonresident, having money

loaned at interest in this state, or employed in the purchase or discount of bonds, notes, bills, checks, or other securities for money, or employed in any kind of trade or business, shall be taxable for the same in the county where such person may reside or have a place of business, or be temporarily located, at the time of the assessment; and if any such person shall fail or refuse to give in such money on oath, or if the assessor shall have cause to believe that such person has not rendered a true account of all such money, he shall assess to such person such an amount as he shall have reason to believe correct, according to the best information he can procure," etc.   The section then proceeds to make provision to secure a return to the assessor of the amount of money so loaned or employed in business, and to impose penalties enforceable by civil suit for failure to make proper return.   The state constitution provided, in section 20, article 12, that: "Taxation shall be equal and uniform throughout the state.   All property shall be taxed in proportion to its value, to be ascertained as directed by law."

Said section 497 is a part of the chapter in the code regulating the assessment and collection of all state or county taxes, and providing, also, for the imposition of taxes on certain kinds of business, for the carrying on of which licenses are required. These are called "privilege taxes," and they are imposed on a great number of callings, trades, etc., among which are merchandising, selling by auction, peddling, cotton brokers, coal yards, inns and taverns, boarding houses, photograph galleries, transient venders of horses or mules, banks of deposit and of discount, insurance agents, real estate agents, etc.   Section 481, being a part of the same chapter, provides for a list of his taxable property, to be made out by each taxpayer, with the valuation of each item.   This is done in pursuance of the section of the constitution before quoted, so that taxes should be levied on "all property" according to its value, to be ascertained according to law.   In this list are the following (among

other) items: "Amount of capital employed in merchandise or manufacturing. Amount of money on hand, or on deposit, or loaned. Amount of indebtedness to the party assessed, which he regards as probably collectible. Amount of all other personal property not otherwise estimated." A uniform tax is imposed on all property so valued and assessed, as the constitution requires. Taxes on business, or privilege taxes, not being taxes on property, are levied in the discretion of the legislature; the amount of tax in each case being specified in the chapter thus: "On each hotel or tavern, . . . . $40." The above seems to be all of the state statutes on taxation necessary to be considered in examining said section 497. Before proceeding to consider the statute, it is well to set forth the general principles on which the power of taxation is to be regulated, so far as relates to nonresidents of the state imposing taxes.

In the case of *State Tax on Foreign-Held Bonds,* 15 Wall., on page 319, 21 L. Ed., 179, the supreme court of the United States says: "The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the state. These subjects are persons, property, and business. . . . . It is not possible to conceive of any other (subject), although, as applied to them, the taxation may be in a variety of ways. . . . . Unless restrained by the federal constitution, the power of the state as to the mode, form, or extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction. . . . . To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in the debts of corporations (or of any debtors) belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due." Again, on pages 323, 324, 15 Wall., 21 L. Ed., 179, the court says: "It is undoubtedly true that the actual situs of personal property

which has a visible or tangible existence, and not the domicile of the owner, will in many instances determine the state in which it may be taxed. The same thing is true of public securities, consisting of state bonds and bonds of municipal bodies, and circulating notes of banking institutions. The former by general usage have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner. The latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly none when the instruments, as in the present case, constituting the evidence of the debt, are not separated from the possession of the owner." And on this reasoning the supreme court of the United States decided a tax levied by the state of Pennsylvania on a debt created and due by a railroad company in that state to a foreign creditor was beyond the power of the state to tax, though secured by a mortgage on real estate in that state.

The same court, in *Kirtland* v. *Hotchkiss*, 100 U. S., 491, 25 L. Ed., 558, affirmed the same principle, and held, also, that a debt held by a citizen of Connecticut, contracted in and secured by mortgage in the state of Illinois, was taxable in and had its situs at the domicile of the owner in Connecticut; stating that the bond (for the debt), wherever actually held or deposited, is only evidence of the debt, and, if destroyed, the debt, the right to demand payment of the money loaned, with stipulated interest, remains. And Judge Cooley, in his work on taxation (pages 14 and 15), says: "But a personal tax cannot be assessed against a nonresident. Neither can the property of a nonresident be taxed, unless it has an actual situs within the state, so as to be under the protection of its laws. The right of a foreign creditor to secure from his debtors within the state the payment of his demand cannot be subjected to taxation within the state. It is a right that is personal to the

creditor, where he resides, and the place of business of his
debtor is immaterial." Burroughs takes the same view. See
his work on taxation, p. 41. The supreme court of Missis-
sippi, in *Horne* v. *Green,* 52 Miss., 454, affirmed the same prin-
ciple, in holding that a debt due a citizen of Mississippi by a
nonresident was taxable here, saying that the situs of the debt
follows the domicile of the owner, and consequently is taxable
in this state. There seems to be no doubt of the correctness of
this principle. In the light of this, I will proceed to examine
section 497.

The first observation to be made in reference to this section
is that it provides solely for a tax on property, and in no way
relates to the taxation of business, or of "privileges," as they
are called, all of which last are provided for in subsequent
sections of the same act, commencing at section 585. The
taxation which section 497 provides for is a taxation on val-
uation of property — a certain percentum on the dollar's worth.
This is so clear and manifest that argument in support of it is
not needed. I now proceed to consider the meaning of section
497, and its legal effect, conceding it to be constitutional. It
proposes to tax all exactly alike, whether "resident or non-
resident," having money loaned at interest in this state or
employed in any kind of business here. This section is singu-
larly inaccurate, not to say absurd, if construed according to its
literal meaning; for it will be noted that it taxes "money
loaned," and not the debt created by the act of lending or the
security therefor. This inaccuracy exists, also, in section 481,
before partially set out, where the taxpayer is required to
return in one item the amount of money he has "on hand, on
deposit, or loaned," for taxation on the amount so stated, and
in another distinct item he is required to return, in addition,
"the amount of indebtedness due to him which he regards as
probably collectible," also for taxation. Both of these pro-
visions seem to proceed on the idea that "money loaned,"

exactly as "money on hand or on (special) deposit," remains the property of the lender.     And this view is strengthened by the provision, before quoted, that, in addition to the taxation of money loaned, the party is also taxed on the value of all the "indebtedness due him which is probably collectible."     Under this view, the "money loaned" is treated as a bailment of the kind called "commodatum" in the civil law, where the thing lent remains the property of the lender, and is to be returned, if it be money, in the identical bills and coins lent.     Probably a lending of money in that way was never seriously and in good faith made.     I never heard of but one such transaction, and that was when, during our "flush times" in 1837, the same kegs of silver, after being examined by the state examiners in one bank and counted as a part of its assets, were transported to another bank, to be there examined and counted as the property of that bank, and so through the whole number, and finally, after performing their office of deceiving the examiners, were returned to the owner.     Certainly that is not the way in which money is loaned in this day.     There is nothing of the idea of a bailment in the lending of money at interest.     If lent without interest or reward or hire, it might be a bailment called a "mutum"; but in that kind of a bailment the title to and property of the thing lent passes to the borrower.     So that "money loaned" is always the property of the borrower, and, if taxable at all as money, must be taxed against him.     No person can be taxed for the property of another, when he stands in no fiduciary relation to it; and, if he does, he is treated as, and is in law, the owner.     If this be the meaning of the statute, it is unconstitutional, for the reason just stated — *i. e.,* that it attempts to tax one person, the lender, for the property of another, the borrower.     But we are not to attribute a meaning to a statute which would make it absurd or unconstitutional, if any other is possible.     So we must conclude that the statute means to tax the property of the lender, which is, and can only

be, the debt due him for the money he has loaned to the borrower.

Having reached this conclusion, we next inquire whether the meaning of the statute is that all debts due by debtors in this state to nonresident creditors, where the consideration is money loaned, whether the transaction of lending took place in this state or outside of it, are to be taxed. This seems to be the meaning of the language. We have already shown that the tax is not on "money loaned," but on the debt due by the borrower of the money. That being so, it follows that the phrase in the statute, "having money loaned at interest in this state," means exactly, and no more or less than, "having a debt due by a debtor in this state on account of money lent." Under that heading the taxation would be on all nonresidents who had debts due by debtors residing in Mississippi, whenever and wherever such debts were created, if only they were for money loaned. If we limit, as to nonresidents, the meaning of the statute, so as to embrace only debts created by a lending in this state, then we must make the same limitations as to residents; for the language is the same—not similar only, but identical—as applied to both, viz.: "Every person, resident or nonresident, . . . . having money loaned in this state." Under this limited meaning, we would have a statute raising revenue for the state which exempted its citizens from taxation on debts created for loaned money, where the citizens would go out of the state to make their loans, but taxing them when the transaction of lending took place in this state. So absurd a result is not to be attributed in a statute; and no state is to be presumed to offer a premium for its citizens to go out of the state to transact a business entirely legitimate, and even favored by the laws and policy of the state. It is thus shown that the true meaning of the statute is to tax all debts due by citizens and residents of this state to nonresidents, when the consideration is "for money loaned," whenever and wherever contracted, whether contracted in the

state or outside of it, and beyond the power of the state, as has been shown.

But it may be insisted that, to avoid this conclusion, the meaning of the statute can be restrained, so as to embrace only loans made in the state. I deny, if such restriction would make the statute constitutional, it would be allowable. When the language of the statute is plain, and not subject to doubt, its unconstitutional effect in its true reading cannot be evaded by limiting its language and making the statute mean different from what was plainly intended by the legislature. The legislature has determined to tax all these debts alike, whether contracted within the state or out of it, and to put the lenders in both cases on the same footing; and we cannot change this by giving to the statute an effect which would work inequality. We cannot say that the legislature would enact the law at all, unless it would have effect as they intended it. See *U. S. v. Reese,* 92 U. S., 220, 221, 23 L. Ed., 563. But, suppose we construe the statute to mean only that debts due by citizens of the state for money loaned in the state are taxable; this does not help the matter as to debts due to nonresidents. It must be noted that the statute imposes taxes, or attempts to impose taxes, on property, and not on business. It taxes property, and property alone. The debt thus taxed is the property of the nonresident. Its situs is the domicile of the nonresident. It is taxable there, and nowhere else. It makes no difference when personal property was created or acquired; for, being removable, it may and often is, carried, in this commercial age, to a different jurisdiction, and it is taxable only in the place of its locality. The place of its origin has nothing to do with its taxability. This is determined alone by its situs. As above remarked, the situs is the domicile of the owner. See *State Tax on Foreign-Held Bonds,* 15 Wall., 300, 21 L. Ed., 179. So, under that construction, section 497 is unconstitutional in

attempting to impose taxes on property outside of the state. This would seem to end the case.

But, as I am requested to discuss the question in all its bearings, I proceed to notice some other views which possibly may be taken. It may be argued, in order to escape the unconstitutionality charged, that the true meaning of the statute is that any person, resident or nonresident, having money in this state, which he afterwards loans in this state to a resident herein, shall be taxable. This is manifestly not the meaning of the statute, as has been shown. But, in addition to that, such a construction would exempt all residents from the tax, if only they kept their money out of the state and then loaned it. Such an intention should not be attributed to the legislature, unless plainly expressed; and I have shown the plain meaning is not that. But suppose, after all, this is the meaning to be adopted. On this construction I submit the following:

First. It is undoubtedly in the power of the state to tax money actually in its borders. Money, including gold and silver, and even bank bills, has its situs where it happens to be, and is subject to the jurisdiction of that place. Mississippi may tax money in its jurisdiction belonging to nonresidents, where not merely in transitu, but engaged in business here. But this is subject to the following qualifications and limitations: Treasury notes of the United States are not taxable at all by any state, nor are national bank notes. So that money in either treasury notes or bank notes, if within the state as property of a nonresident, it is not taxable in that form; and, if he loans them, then a debt is created due to a nonresident, and that, as has been shown, is not taxable. The transaction would be such that, the instant he ceases to be the owner of that kind of money, which is not taxable in its nature, he becomes the owner of a debt, which is not taxable except in the place of his residence. If the company brings this kind of money here, and lends it, the company is not liable to taxation, either for

being the owner of the money, or for the debts created by lending it.   It could only be taxable for the transaction of converting the money into the debt, and, as we have seen, the statute does not attempt to tax that.

Second.   If the money brought here were gold and silver, and it were loaned for five or ten years, then the tax could only be levied once, viz.: on the money and in that place.   For the subsequent years there would be no money, but only the choses in action — debts belonging to a nonresident.

Third.   It would be necessary to taxation, even in the last case, that the money, the gold and silver, should have an actual situs in Mississippi as the property of the nonresident before he could be taxed.   It is only taxable here because of a transfer here, and its consequent subjection to the laws, and jurisdiction of the state, and the right of its owner to claim protection for it from the state against theft and robbery here.   It therefore follows that if a nonresident lend money to a citizen of a state, and should deliver it to him outside of it, or should give a check or draft for it, payable in another state, there could be no taxation of the nonresident on that.   The money could not be taxed, because it was not in the state; and the check or draft, though drawn in the state, could not be taxed, because it is not the property of the nonresident, but is only a debt due by him.   It would only be property of the borrower.   It might be taxed in the hands of the latter as his property, just as the money realized from it might be taxed when brought into the state by him or by any person to whom he may have paid it.   But with this sort of taxation your company has no concern, and, besides, such taxation is not provided for in the section we are considering.

So far our way is clear and plain.   I consider now the subsequent clauses of the section, "having money employed in the purchase or discount of bonds, notes, checks, or other securities for money, or employed in any kind of trade or business."

This part of the section evidently refers to the case of money in the business referred to and carried on in the state. This refers to the capital stock of money so employed. This capital is supposed to consist of a certain amount of money used in the state, which may be from time to time invested and collected, and invested and collected again. This operation may take place many times in the year, going out from and returning to the owner from day to day, or week to week. So the tax is levied on the money, capital so employed, and not on its proceeds — all checks, bills, etc. The clause under consideration, therefore, clearly means a taxation of the money, and implies necessarily that the money so taxed shall be subject to and within the jurisdiction of the state, and, of course, according to the principles heretofore established, would be taxable because its situs is here.

This might be sufficient to answer the inquiries propounded; but, in view of the fact that the company proposes to loan money here, it may be well to present the following considerations:

First. Your company, being a corporation, has no right to do business here, except by permission of the state, which permission is presumed, unless there be some statutes to the contrary. But neither this statute, nor any, shows any intention to prohibit such business.

Second. It is true that the state has the power to prescribe the terms and conditions on which alone your company can do business here, and can tax that business in its discretion. But the right has not been exercised, and no tax has been levied on the business. This has been heretofore fully shown. The state, so far as your company is concerned, undertakes to exercise a power it does not possess. That, therefore, fails. This failure does not give to the executive and fiscal officers of the state the power to levy other tributes upon you entirely different from the taxation attempted by the legislature. I will notice some authorities, which under certain circumstances hold that

debts to nonresidents are taxable in the state where the debtor lives. These are collected and referred to in Burroughs on Taxation, section 42. In the *Vermont Case,* the money was sent to the state, and placed in the hands of an agent resident there, who collected it and reloaned it as a permanent business. In that case, both the money first loaned and the proceeds of the loans, when collected, were kept in Vermont and reinvested. The securities of the money were also kept there. In the *New York Case,* the securities for the money lent were kept in New York, and so in the *Illinois* and *Kansas Cases.* In the *North Carolina Case,* the case applied to tangible personal property; was a fiction, not applicable to revenue and taxation. All these the court holding that the doctrine of situs for personal property cases, even if they are good law to the extent laid down in some of them, which I deny, are based on the idea that the security for the debt is within the jurisdiction of the state; the security being but the mere evidence of the debt, as was seen in *Kirtland* v. *Hotchkiss,* 100 U. S., 491, 25 L. Ed., 558, but not the debt itself, that being but the personal right of the debtor to demand payment. In Mississippi, in *Johnson* v. *Rascoe,* 62 Miss., 703, a decision has been made which ought to be noticed. There, for the purpose of distributing a dead person's estate, hotels and money actually in the state were subjected to the laws of the state. It will be noted (1) that the money loaned was always in the state; that it was loaned here, collected, and reloaned by an agent, who took the notes payable to the nonresident or his agent; that, for the purpose of distribution, the fund being in the possession of a Mississippi court, the court held it subject to our laws. It will be noticed, as to all these cases, they were state decisions; and the case of the *Foreign-Held Bonds,* 15 Wall., 300, 21 L. Ed., 179, was also a state decision, and was reversed by the supreme court of the United States.

I have gone into the details in the argument beyond what is

ordinarily required in the mere giving of an opinion as professional advice. But as my opinion was asked through the counsel of the company, and I was expressly requested to discuss the matter in all its details, I have deemed that I was expected to present the statute in all its various possible aspects, and to give the reasoning on which my conclusions were based. On the whole, I am of the opinion that the company may safely invest their money in real estate mortgages in this state, in the mode and by the instrumentalities approved in the foregoing opinion, without incurring any liability for taxation under our laws. I have made no special reference to the mortgage as a security for the loans, since it was well settled here that the mortgage is a mere security for the debt, and therefore makes no change in the rules I have laid down. Of course, the land mortgaged would be liable to taxation according to its value in the hands of the mortgagor; and, on his default in payment thereof, the company would be bound to advance the money to pay the taxes. But this obligation is only to itself, to protect its own interest, and could not be enforced against it by the state.

Argued orally by *D. A. Scott,* for appellant, and *Edward Mayes,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

One of these cases is here from the circuit court of Coahoma county; the other from the chancery court of Copiah county. The one from Copiah county presents the question whether the interest of a mortgagee is such an interest in the land itself, covered by the mortgage, as renders it liable to taxation. The one from Coahoma county presents the question whether the notes and mortgages, as "solvent credits," have a "business situs" in that county. There is a distinct line of decisions holding with our case (*Jahier* v. *Rascoe,* 62 Miss.,

699) that wherever a money lender has a local agent in another state, and permits that agent to control the evidences of debt, and the mortgages securing them, and to continue, for a long course of dealing, the business of lending, collecting, and relending money in the state of the agent's residence, such evidences of debt, and the mortgages securing them, have what has come to be known as a "business situs" for purposes of taxation and for other purposes. This principle is thus expressed in *Jahier* v. *Rascoe:* "Wherever it appears that the debt arose as an incident to a business conducted in this state," etc. However phrased, the principle is this: That wherever the money of a lender in one state is by the principal intrusted to the control of an agent in another state for the purpose of being kept in the latter state, and loaned out, collected, and reloaned, or habitually kept on deposit, for safety merely, as held in *Re Komaine* (N. Y.), 27 N. E., 759, 12 L. R. A., at page 408, so as thus to remain, through a course of dealing, so long as to become localized as a part of the whole mass of personal property in the latter state, such money acquires what is known as a "business situs" for the purpose of taxation, as well as for certain other purposes not necessary to be dealt with here.

The statement of facts in the Coahoma county case does not contain any stipulation that Mr. Glover was the agent of the appellee. But the facts as to his agency are practically the same with those as to the agency of Powell in the *Smith Case,* 68 Miss., 79, 8 South., 294, and it was there held, rightly or wrongly, that Powell was not the agent of the lender. The lender (the appellee) has its place of residence in England. It has a local agency in Memphis, Tenn.; but it is expressly agreed that it has no office or place of business in this state. The agreement does not set out that Mr. Glover secured all the loans. On the contrary, it was expressly agreed that loans were secured by other attorneys than Mr. Glover, and sometimes by the borrowers direct. It is further agreed that the notes and

the trust deeds were prepared by the appellee in Memphis, and forwarded to the applicant or his attorney for execution, and that the securities, when signed and acknowledged by the borrower, were delivered to his attorney, with the understanding that he was to transmit them to the appellee's office in Memphis. It is further agreed that the trust deeds and notes are immediately sent, after the contracts are consummated, to the appellee's home office in Hull, England, where they remain until they mature, when they are returned to the agent of the appellee at Memphis for collection. It is further agreed that David Houghton, the trustee in all the instruments involved, is a resident of Hull, England. It is further agreed that the applications sent to Mr. Glover were sent at his request, and that they would be sent to any one who would desire to make use of them, and that some of these very loans were made upon applications that came from other attorneys or from the borrowers direct. The agreed statement (which the reporter will set out in full) further expressly provides that this case "is to be tried in all the courts to which the same may come, by appeal or otherwise, upon the facts set out in the agreement, and none other."

We think on this statement of facts we are concluded by the case of *State* v. *Smith,* 68 Miss., 79, 8 South., 294, as to the Coahoma county case. This court said in that case: "There can be no doubt that, where an agency is created in this state for the loaning of money, and the business of loaning it is carried on here — this state being the locality in which the transaction is begun and completed — and the debt acquires a situs here, from the course of dealing between lender and borrower, through the agency established here, it is taxable; but where the nonresident lender has no place of business or location or agent in this state, and accomplishes the loan beyond the limits of the state, the fact that negotiations for the loan were made by persons in this state, and it was secured by mortgage on property in this state, does not subject it to taxation here.

In the case before us the creditor has no agent in this state, and no place of business here. The money was not sent here to be loaned. The evidence of debt was not here. The business of lending was not conducted in this state. The debt was secured by a mortgage on property in this state, and the loan was obtained by the application of persons in the state transmitted to persons beyond its limits, who forwarded the money from without the state. It was not embraced by section 497 of the Code of 1880."

The section of the Code of 1892, under which this tax is sought to be imposed, is the same with section 497 of the Code of 1880. *State* v. *Smith, supra,* is conclusive of this Coahoma county case. It has been too long recognized as the law, and business investments have been too long made upon the faith of it, to permit it to be questioned. The remedy is with the legislature, not with the courts. Counsel for appellant earnestly insist that the clause in the trust deeds, to wit: "The contract embodied in this conveyance and the notes secured hereby shall be construed according to the laws of Mississippi, where the same is made," localizes and domesticates the debts therein, and subjects the same to taxation in this state. The facts show where a contract is made, and the court held in the *Smith Case* that, although the negotiations were concluded in this state, and the contract made, as shown by the facts in that case — substantially identical with the facts here — yet it was not a contract "made" here, and that Powell was the agent of the borrower. As to the last propositions, dealt with in a very summary way in the *Smith Case,* we say nothing; but as to its interpretation of section 497, Code 1880, it seems to us sound. Whether one is an agent depends, not on paper recitals, but on the facts.

We are unable to see any difference between that case and this as to how the business of lending was conducted, and feel bound by that decision. The object of the clause in the con-

tract that it should be construed according to the laws of Mississippi undoubtedly was to enable this grasping corporation to secure the abnormally high rate of interest allowed in this state, 10 per· cent. The point made in the last brief filed for appellant—that the order of the board of supervisors is conclusive— is untenable. The board cannot fix situs by an order; the facts determine situs.

As to the Copiah county case, it has been too long settled in this state to admit of further debate that a mortgagee has no interest or estate in the land mortgaged. *Buckley* v. *Daley*, 45 Miss., 338; *Freeman* v. *Cunningham*, 57 Miss., 67; *Beckett* v. *Dean*, 57 Miss., 232. In *Buckley* v. *Daley*, *supra*, the court says: "The estate in the land is the same thing as the money due upon it. Under our decisions the extent of the mortgagee's right is to sell the property for the purpose of realizing his debt — a mere right to resort to the security for the payment of the debt. He has no title which is· vendible under execution. · It is held that, after breach of condition, he may maintain ejectment; but this he can do only as a means to the end of enforcing his security." It is expressly said that "his estate is neither legal nor equitable," and that he has no "interest in the property, or right to it, except as an incident to the chose in action secured by it." These decisions are conclusive in favor of appellee in the case from Copiah county; for the effort in that case is solely to tax the mortgages as if they were land, or, to phrase it a little differently, to tax the mortgagee's interest as real estate. This has not yet been done in this state; on the contrary, the very language of section 3757 in the Code of 1892, "shall be taxable for the same in the county in which such persons may reside, or· have a place of business, or be temporarily located at the time of the assessment," indicates clearly that the legislature, in this section, dealt with loans of this sort as following, according to the general rule of law, the person of the creditor, and as being taxable at his domicile. At the

time of the enactment of this statute the learned commissioners who framed this section, and the legislature which adopted it, must be presumed to have known of the rule announced in the *Smith Case, supra,* and of the maxim or legal fiction, *"Mobilia sequuntur personam,"* which we have referred to, and of the three cases which we have referred to, as to the quality of the mortgagee's interest in the land mortgaged, and hence to have intended, in re-enacting this section in the very words in which it had been enacted in the Code of 1880, sec. 497, and substantially in article 23, p. 76, of the Code of 1857 and in the Code of 1871, sec. 1682, to preserve and perpetuate the rule that loans of this character, unlocalized in this state, are to be taxed to the owner at his domicile.  That is the interpretation of this section in the *Smith Case,* and many sessions of the legislature have been held since with no change in the section.

There are other questions in these cases, upon which we desire to remark.  First, it is beyond controversy that the interest of a mortgagee in the lands mortgaged, whether it be, as here, a mere right to sell land to pay the debt — a chose in action only — or whether it be, as held by the United States supreme court and many state courts, an actual estate in the lands itself, is in either case a sufficient interest therein, in constitutional law, to empower the legislature to tax it, by express enactment, as an estate in land.  This is conclusively settled by the United States supreme court in the *Multnomah County Case,* 169 U. S., 429, 18 Sup. Ct., 392, 42 L. Ed., 803, and in *New Orleans* v. *Stemple,* 175 U. S., 321, 20 Sup. Ct., 110, 44 L. Ed., 174.  See, also, *Bristol* v. *Washington County,* 177 U. S., 133, 20 Sup. Ct., 585, 44 L. Ed., 701, and the *State Tax on Foreign-Held Bonds,* 15 Wall., 300, 21 L. Ed., 179; and *Walker* v. *Jack,* 31 C. C. A., 462, 88 Fed., 576, opinion by Judge Taft; and *Howell* v. *Gordon* (Mich.), 86 N. W., 1042; and *Allen, Treasurer,* v. *The Nat. Bank of Camden,* 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517.  In

the *Multnomah County Case,* the United States supreme court thus expresses it: "The state may tax real estate mortgaged, as it may all other property within its jurisdiction, at its full value. It may do this by taxing the whole to the mortgagor, or by taxing to the mortgagee the interest therein represented by the mortgage, and to the mortgagor the remaining interest in the land. And it may, for the purpose of taxation, either treat the mortgage debt as personal property to be taxed, like other choses in action, to the creditor at his domicile, or treat the mortgagee's interest in the land as real estate, to be taxed to him, like other real property, at its situs." The legislature of this state, therefore, has the undoubted power to pass a law subjecting the interest of every mortgagee in land in this state, though a nonresident of the state, to taxation here, legislatively fixing the situs of that interest in this state for the purpose of taxation by this state, which protects the mortgagee, and furnishes him the sole forum for enforcing his claim. And we wish to add, with all the emphasis which we can command, that the next legislature of this state ought to pass just such an act promptly. The record in these cases discloses the great necessity for such legislation. Strong insistence is placed by counsel for appellee on the proposition that it is not good public policy to enact such a law, for the reason that, in the absence of such taxation, the rate of interest will be made less to our people; and yet what are the facts shown by this record? First, that this mortgagee has charged the highest rate of interest allowed by our law — a rate so high as to be rarely allowed anywhere else in the United States; second, whilst doing this, it has not paid the state one cent in the way of taxes. In other words, it has charged the highest rate of interest, and paid no taxes here; and it may be safely assumed, from the history of such organizations, that it will always charge the highest rate of interest allowed by any state, whether it is required to pay any taxes or not. The proposition of counsel, therefore, does

not fit in with the facts of the case.    But this is not all this record shows.    It shows, third, that this mortgagee has not only paid no taxes here, whilst charging the highest rate of interest allowed, but has actually put into these mortgages a stipulation (a) that the mortgagor should pay all taxes on the land, and (b) should also pay all taxes which the law of the state might, in the future, compel the mortgagee to pay on the mortgage debt.    Surely, the legislature will need no further argument than these three propositions to convince it of the necessity and the propriety of compelling these foreign lenders of money to pay, just as all other citizens pay, their proper share of taxes for the protection afforded them by this state.

It is strongly urged that the *Smith Case,* 68 Miss., 79, 8 South., 294, is "antiquated and obsolete, and in plain conflict with the modern decisions" on the subject of taxation, especially the cases cited from the United States supreme court, relied on. We think the trouble is not so much with that decision — at least as to its interpretation of the statute — as with the statute itself.    Originating in 1857, at a time in this state when agriculture was everything, and commercial interests of slight comparative importance, the failure of the legislature to follow the advanced statutes of other states on the subject of choses in action, including mortgage debts, is to be attributed to the conditions, until quite recently obtaining in Mississippi, as to agriculture and commerce.

We have read critically all the cases cited from other state supreme courts and the United States supreme court, and the doctrine of these, the latest cases, on the power and propriety of the legislature's compelling the owners of the mortgage debts and other choses in action to pay taxes on the same in the state where they must be enforced or collected, and, to that end, of giving them all a "business situs" there, or, as to mortgages, of legislatively declaring the interest of the mortgagee to be an estate in the land for the purpose of taxation, and fixing its

situs in the state where the land lies, is by us most emphatically approved. We quote, to give it our special approval, the following from the masterly opinion of Mr. Justice Holmes in *Blackstone* v. *Miller, supra:* "What gives the debt validity? Nothing but the fact that the law of the place where the debtor is will make him pay. It does not matter that the law would not need to be invoked in the particular case. Most of us do not commit crimes, yet we are, nevertheless, subject to the criminal law, and it affords one of the motives for our conduct. So, again, what enables any other than the very creditor, in proper person, to collect the debt? The law of the same place. To test it, suppose New York should turn back the current of its legislation, and extend to debtors the rule still applicable to slander— *'actio personalis moritur cum persona'*— and should provide that all debts hereafter contracted in New York and payable there should be extinguished by the death of either party. Leaving constitutional considerations on one side, it is plain that the right of the foreign creditor would be gone. Power over the person of the debtor confers jurisdiction, we repeat. And this being so, we perceive no better reason for denying the right of New York to impose a succession tax on the debts owned by its citizens than upon the tangible chattels found within the state at the time of death. The maxim, *'Mobilia sequuntur personam,'* has no more truth in the one case than in the other. When logic and policy of the state conflict with a fiction, due to historical tradition, the fiction must give away." And also the following from the able opinion of the Maryland supreme court in *Allen* v. *State Nat. Bank of Camden,* 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517: "Conceding, for the present, that the interest of the mortgagees is in the nature of a chose in action, the general rule that its situs for taxation is the residence of the owner is a mere fiction of law, and yields, whenever it is necessary, for the purpose of justice, that the actual situs of the thing should be examined,

and whenever the legislative intent is manifested that this legal fiction should not operate."

We also call special attention to the following well-considered statements of the law, one from the supreme court of Pennsylvania and the other from the court of appeals of New York. Says the former in *Maltby* v. *Reading, Etc.,* 52 Pa., 140: "The principle of taxation as the correlative of protection, perfectly just in itself, is as applicable to a non-resident as to the resident owner, because civil government is essential to give value to any form of property without regard to ownership, and taxation is indispensable to civil government. . . . It is apparent that the intrinsic and ultimate value of the loan, as an investment, rests on state authority; *i. e.,* the state which made it property, and which preserves it as property. Then it would seem that this kind of property, more than any other, ought to contribute to the support of the state government. And I suppose it is upon this ground that the legislature discriminates between corporation loans and private debts as objects of taxation. The artificial debtor, itself a creative grant, is so dependent upon the government—it lives and moves and has its being so entirely by the favor of the government—that not only what it owns, but what it owes, is thought fit to be taxed." Says the court of appeals of New York, in *People* v. *Com'rs,* 23 N. Y., 224: "The fiction or maxim, '*Mobilia personam sequuntur,*' is by no means of universal application. Like other fictions, it has its special uses. It may be resorted to when convenience or justice so require. In other circumstances, the truth and not the fiction affords, as it plainly ought to afford, the rule of action. The proper use of legal fictions is to prevent injustice. 'No fiction,' says Blackstone, 'shall extend to work an injury; its proper operation being to prevent a mischief or remedy an inconvenience which might result from the general rule of law.' So, Judge Story, referring to the situs of goods and chattels, observes: 'The general doctrine is not contro-

verted, and although movables are for many purposes to be deemed to have no situs, except that of the domicile of the owner, yet, this being but a legal fiction, it yields whenever it is necessary, for the purpose of justice, that the actual situs of the thing should be examined.' He adds—quite pertinently, I think, to the present question: 'A nation within whose territory any personal property is actually situated has entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over immovable property situated there.' I can think of no more just and appropriate exercise of the sovereignty and jurisdiction of a state, or nation, over property situated within it, and protected by its laws, than to compel it to contribute towards the maintenance of the government and law."

It is earnestly insisted that these foreign money lending corporations have many millions of money loaned in this state on mortgages on land, and that they pay no taxes in return for the protection they get from the state whose courts and laws alone make their securities available. This is, beyond all controversy, a great wrong to the people of this state, whether such money lenders be nonresident persons or nonresident corporations. The constitution of the state makes it the duty of the legislature to tax all property not legally exempt; and when the present defect in the law, in this regard, is brought to its attention, it is not to be doubted that the legislature will promptly rectify the situation.

We make a closing observation: The Multnomah County Case is not applicable here because it was in construction of the act of Oregon authorizing such taxation. The case in 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517, has no application for the reason that in that state the statute of 1896 fixed the situs of the mortgagee's interest for taxation in the county where the land was located, and for the further reason that in Maryland the mortgagee's interest is more than a mere lien. And it will be found, upon examination, that the

other cases cited by learned counsel for plaintiff, in Oregon, in California, in Missouri, in Michigan, in Indiana, in Massachusetts, in New York, and in New Jersey, all depend either upon express statutory or constitutional provision. Indeed, in Missouri, in *Russell* v. *Croy,* 164 Mo., 69, 63 S. W., 849, the supreme court of Missouri actually held the third amendment to the constitution of Missouri adopted in 1890, which was taken literally from the constitution of California to be itself unconstitutional because of its discriminating against corporation mortgages. See, as showing that these cases rest on statutory or constitutional provisions, *Mumford* v. *Sewall,* 11 Or., 67, 4 Pac., 585, 50 Am. Rep., 462; constitution of California adopted in 1879, art. 13, sec. 4; *Common Council* v. *Asessors,* 91 Mich., 78, 51 N. W., 787, 16 L. R. A., 59; *Village of Howell* v. *Gordon,* (Mich.; decided in 1901), 86 N. W., 1042; *Allen* v. *State Nat. Bank of Camden,* 92 Md., 509, 48 Atl., 78, 52 L. R. A., 760, 84 Am. St. Rep., 517; *Ins. Co.* v. *Commonwealth,* 137 Mass., 80; *State* v. *Runyon,* 41 N. J. Law, 98; and *In re Blackstone's Estate.* v. *Miller,* 171 N. Y., 682, 64 N. E., 1118; *Blackstone* v. *Miller,* 188 U. S., 203, 23 Sup. Ct., 277, 47 L. Ed. ——. This last was a succession tax case, where the tax "was upon the transfer, not upon the deposit," and so not in point.

The case of *New Orleans* v. *Stemple,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed. 174, will be seen upon proper analysis, to fall within the principle of those cases defining what "a business situs" for the mortgages of this sort is. The supreme court of the United States in that case say, as pointed out by counsel for appellee: "First, that the property in question was clearly property arising from business done in Louisiana, being property of the deceased, a resident of New Orleans; second, that the same had never been out of the state, but that the money was still on deposit in New Orleans banks, and the notes and mortgages were still in New Orleans in the hands of the

agent of the plaintiff; and, third, that undeniably the moneys were to be kept in the state for reinvestment or other use, and that the credits were in the hands of a local agent for the same purpose;" and all that the court held was that under those .circumstances they were taxable under the Louisiana statute, which statute provided, amongst other things, that "all bills receivable, obligations, or credits arising from business done in this state, are hereby declared assessable within this state."

We have given these cases the most painstaking consideration, and our conclusions are: First, that the legislature has the power to fix the situs of a mortgagee's interest in land, whether it be an estate in the land or a mere chose in action in this state for the purpose of taxation, such legislation having been declared in the *Multnomah County Case* "not a deprivation of property without due process of law," and not a denial of "the equal protection of the laws"; second, that the legislature of this state has not yet passed such a statute; and, third, that we commend to the earnest consideration of the legislature, at its next session, the prompt passage of a duplicate of the Oregon law. The provisions of this statute tax the interest of the mortgagee to him as land, and the rest to the mortgagor, thus avoiding double taxation, and, having been upheld by the supreme court of the United States, will be unassailable.

We acknowledge ourselves greatly indebted to the very able briefs of counsel on both sides, and we direct the reporter to set them out in full.

*Affirmed.*